1  GARCIA RAINEY BLANK & BOWERBANK LLP
    A Limited Liability Partnership
2  JOHN E. BOWERBANK, Cal. Bar No. 211566
    ngarciaguillen@garciasullivanlopez.com
3  JEFFREY M. BLANK, Cal. Bar No. 217522
    jblank@garciasullivanlopez.com
4  NORMA V. GARCIA, Cal. Bar No. 223512
    ngarciaguillen@garciasullivanlopez.com
5  695 Town Center Drive, Suite 700
    Costa Mesa, California  92626-1993
6  Telephone:   714.382.7000
    Facsimile:    714.784.0031
7

8  Attorneys for Defendant
    Five Pawns, Inc.
9

10             UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  DUANE ROBERT GREENE, SHAWN         Case No. 8:15-cv-01859-DOC-DFM
    RANDALL THOMAS, JAMES
14  HIRTZEL, ANTHONY SWETALA, and      **MEMORANDUM OF POINTS AND**
    DR. SPRAGUE SIMONDS on behalf of   **AUTHORITIES IN SUPPORT OF**
15  themselves and all others similarly  **DEFENDANT FIVE PAWNS, INC.'S**
    situated,                          **MOTION TO DISMISS FIRST**
16                                     **AMENDED COMPLAINT**
                 Plaintiffs,
17
         v.
18                                     Date:        March 21, 2016
    FIVE PAWNS, INC.                   Time:        8:30 a.m.
19                                     Courtroom:   9D
                 Defendant             Judge:       Hon. David O. Carter
20

21

22

23

24

25

26

27

28

---

# **TABLE OF CONTENTS**

I.  INTRODUCTION…………………………………………..………..1

II.  BRIEF SUMMARY OF PLAINTIFFS ALLEGATIONS………………....3

III.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER FRCP 12(b)(1) BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER SUCH CLAIMS…………………………...……………………………….5

   A. None of The Plaintiffs Have Sufficiently Alleged A Causal Connection Between Their Alleged Injuries And The Alleged Deceptive Acts Of Five Pawns……………………………………………………………...6

   B. Plaintiffs Lack Standing To Obtain Injunctive Relief……………………8

IV.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER FRCP 12(b)(6) AND 9(b)……………………………..…………………………..9

   A.   Plaintiffs Have Failed To Satisfy FRCP 9(b)'s Heightened Pleading Requirement……………………………………………………………..11

      1.   General FRCP 9(b) Requirements………………………..11

      2.   Statutory Standing Requirements Under UCL, FAL, and CLRA Incorporate Actual Reliance Into The Elements Of The Claims When Based On Fraud……………………………………………11

      3.   None Of The Plaintiffs Have Pled the Circumstances Of Fraud, Including Reliance And Causation, With Particularity……...…13

   B.   PLAINTIFFS CONSUMER PROTECTION CLAIMS (COUNTS I-VI) FAIL TO STATE A CLAIM………………………………………17

      1.   Five Pawns, As A Matter Of Law, Owed No Duty To Disclose Whether Any Of Its Products Contained AP or DA…………...17

         a.   California Consumer Protection Claims…………....…17

         b.   Indiana Consumer Protection Claim………...………...19

i

c.     New York Consumer Protection Claim…………......…..19

d.     Vermont Consumer Protection Claim…………..…….19

2.    Plaintiffs Have Not Alleged Any Actionable Representations...20

3.    Plaintiffs Have Failed To Adequately Allege Any Conduct That Would Be Likely To Deceive The Reasonable Consumer…….21

C.    PLAINTIFFS' SEVENTH CLAIM FOR BREACH OF EXPRESS WARRANTY FAILS TO STATE A CLAIM………………………..23

1. Plaintiffs Failed To Provide Pre-Litigation Notice………………..23

2. Plaintiffs Have Failed To Adequately Allege Any Of The Elements Of Their Express Warranty Claim...………………………………23

D.    PLAINTIFFS CANNOT OBTAIN DISGORGEMENT OF PROFITS…………………………………………………………..24

V.    A MORE DEFINITE STATEMENT (FRCP 12(E)) IS NECESSARY…....25

VI.   CONCLUSION…………………………………………....……...25

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Asghari v. Volkswagen Grp. of Am., Inc.*,
     42 F. Supp. 3d 1306 (C.D. Cal. 2013)………………………………11, 23-24

*Balistreri v. Pacifica Police Dep't*,
     901 F.2d 696 (9th Cir. 1988)…………………………….……………………..10

*Bell Atl. Corp. v. Twombly*
     550 U.S. 544, 127 S. Ct. 1955 (2007)……………………………………….10

*Bronson v. Johnson & Johnson, Inc.,*
     No. C 12-04184 CRB, 2013 U.S. Dist. LEXIS 54029, 2013 WL 1629191
     (N.D. Cal. Apr. 16, 2013)………………………………………………………12

*Buller v. Sutter Health*,
     160 Cal. App. 4th 981 (2008)…………………………………………..17, 18, 22

*Burns v. Tristar Prods., Inc.*,
     No. 14-cv-749-BAS(DHB), 2014 U.S. Dist. LEXIS 102052, 2014 WL
     3728115 (S.D. Cal. July 25, 2014)……………………………………………5, 6

*Chapman v. Pier 1 Imps. (U.S.) Inc.*,
     631 F.3d 939 (9th Cir. 2011) …………………………………………………..8

*Cullen v. Netflix, Inc.*,
     880 F. Supp. 2d 1017 (N.D. Cal. 2012)……………………………………...19

*Daugherty v. Am. Honda Motor Co*.,
     144 Cal. App. 4th 824 (2006)………………………………………………..17

*Davis v. Chase Bank U.S.A., N.A.*,
     650 F. Supp. 2d 1073 (C.D. Cal. 2009)……………………………………...10

*Destfino v. Kennedy*,
     No. CV-F-08-1269 LJO DLB, 2009 U.S. Dist. LEXIS 18138, 2009 WL
     63566 (E.D. Cal. Jan. 8, 2009)………………………………………………25

*Dicuio v. Brother Int'l Corp.*,

No. CIV.A. 11-1447 (FLW)(TJB), 2015 U.S. Dist. LEXIS 68029, 2015 WL 3403144 (D.N.J. May 27, 2015)……………………………………………..19

*Feitelberg v. Credit Suisse First Boston, LLC*,

134 Cal. App. 4th 997 (2005)…………………………………………..24

*Fieldstone Co. v. Briggs Plumping Products, Inc.*,

54 Cal. App. 4th 357 (1997)…………………………………………23

*Fink v. Time Warner Cable*,

810 F. Supp. 2d 633 (S.D.N.Y. 2011)…………………………………20

*Fisher v. Monster Bev. Corp.*,

No. EDCV 12-02188-VAP (OPX), 2013 U.S. Dist. LEXIS 188973, 2013 WL 10945131 (C.D. Cal. Nov. 12, 2013)………………10, 11, 12, 21

*Germain v. J.C. Penney Co.*,

No. CV 09-2847 CAS (FMOx), 2009 U.S. Dist. LEXIS 60936, 2009 WL 1971336 (C.D. Cal. July 6, 2009)…………………………………12

*Gomez-Jimenez v. New York Law Sch.*,

36 Misc. 3d 230, 943 N.Y.S. 2d 834 (N.Y. Sup. Ct. 2012)………………21

*Heath v. Palmer*,

2006 VT 125, 181 Vt. 545, 915 A.2d 1290 (2006)…………………………20

*Henry v. Rehab Plus, Inc.*,

404 F. Supp. 2d 435 (E.D.N.Y. 2005)…………………………………19

*Hodgers-Durgin v. de la Vina*,

199 F.3d 1037 (9th Cir. 1999)…………………………………………..8

*In re 5-hour ENERGY Mktg. & Sales Practices Litig.*,

No. MDL 13-2438 PSG (PLAx), 2014 U.S. Dist. LEXIS 149732, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014)…………………………………9

*In re Actimmune Mktg. Litig.*,

No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408, 2009 WL 3740648

(N.D. Cal. Nov. 6, 2009) ……………………………………………10, 12, 14

*In re Actimmune Mktg. Litig.*,

No. C 08-02376 MHP, 2010 U.S. Dist. LEXIS 90480, 2010 WL 3463491

(N.D. Cal. Aug. 31, 2010)…………………………………………………...17

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,

No. MDL 08-1934 PSG(AGRx), 2009 U.S. Dist. LEXIS 58697, 2009 WL

1703285 (C.D. Cal. June 17, 2009)……………………………………… 18

*In re Facebook PPC Adver. Litig.*,

No. 5:09-CV-03043-JF, 2010 U.S. Dist. LEXIS 87769, 2010 WL 3341062

(N.D. Cal. Aug. 25, 2010)…………………………………………………...11

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,

966 F. Supp. 1525 (E.D. Mo. 1997)………………………………………24

*In re Hydroxycut Mktg. & Sales Practices Litig.*,

801 F. Supp. 2d 993 (S.D. Cal. 2011)……………………………………15

*In re iPhone 4S Consumer Litig.*,

No. C 12-1127 CW, 2013 U.S. Dist. LEXIS 103058, 2013 WL 3829653

(N.D. Cal. July 23, 2013)……………………………………………………14

*In re iPhone Application Litig.*,

6 F. Supp. 3d 1004 (N.D. Cal. 2013)……………………………………6, 7

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,

No. 05 C 2623, 2009 U.S. Dist. LEXIS 97594,

2009 WL 3460218 (N.D. Ill. Oct. 20, 2009)……………………………...13

*In re Tobacco II Cases*,

46 Cal. 4th 298 (Cal. 2009)………………………………………………11-12

*Kane v. Chobani, Inc.,*
  973 F. Supp. 2d 1120 (N.D. Cal. 2014)……………………………………...12

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009)…………………………………………...14, 16

*Keegan v. Am. Honda Motor Co.,*
  838 F. Supp. 2d 929 (C.D. Cal. 2012)…………………………………………10

*Kesling v. Hubler Nissan, Inc.,*
  997 N.E.2d 327 (Ind. 2013)……………………………………………………20

*Lavie v. Procter & Gamble Co.,*
  105 Cal. App. 4th 496 (2003)…………………………………………………21

*Lawson v. Hale,*
  902 N.E.2d 267 (Ind. Ct. App. 2009)…………………………………………..19

*Lierboe v. State Farm Mut. Auto Ins. Co.,*
  350 F.3d 1018 (9th Cir. 2003)…………………………………………………...6

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)………………...5, 6, 9

*Marolda v. Symantec Corp.,*
  672 F. Supp. 2d 992 (N.D. Cal. 2009)…………………………………………11

*Maya v. Centex Corp.,*
  658 F.3d 1060 (9th Cir. 2011)……………………………………………………5

*McCormick Piano & Organ Co. v. Geiger,*
  412 N.E. 2d 842 (1980)…………………………………..…………...24-25

*Moss v. U.S. Secret Serv.,*
  572 F.3d 962 (9th Cir. 2009)…………………………………………………...10

*One Source Envtl., LLC v. M + W Zander, Inc.,*
  No. 2:12-CV-145, U.S. Dist. LEXIS 157338,
  2015 WL 7428572 (D. Vt. Nov. 20, 2015)………………………………21

*Pence v. Andrus*,

    586 F.2d 733 (9th Cir. 1978)……………………………………………………….6

*PH W. Dover Prop., LLC v. Lalancette Engineers*,

    2015 VT 48, 120 A.3d 1135 (Vt. 2015)………………………………13, 20

*Quinn v. Walgreen Co.*,

    958 F. Supp. 2d 533 (S.D.N.Y. 2013)………………………………………….23

*Sateriale v. R.J. Reynolds Tobacco Co.*,

    697 F.3d 777 (9th Cir. 2012)…………………………………………………..11

*Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*,

    858 F.2d 1095 (5th Cir. 1988)……………………………………………………24

*Smith v. LG Elecs. U.S.A., Inc.*,

    No. 13-cv-04361-PJH, 2014 U.S. Dist. LEXIS 31577, 2014 WL 989742

    (N.D. Cal. Mar. 11, 2014)………………………………………………………...23

*Sollberger v. Wachovia Sec.*, LLC,

    No. SACV 09-0766AGANX, 2010 U.S. Dist. LEXIS 66233, 2010 WL

    2674456 (C.D. Cal. June 30, 2010)…………………………………………….25

*Stock West, Inc. v. Confederated Tribes*,

    873 F.2d 1221 (9th Cir.1989)……………………………………………………..5

*Stutman v. Chem. Bank*,

    95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000)………………….13

*Tait v. BSH Home Appliances Corp.*,

    No. SACV 10-711 DOC AN, 2011 U.S. Dist. LEXIS 54456, 2011 WL

    1832941 (C.D. Cal. May 12, 2011)………………………………................13

*Vess v. Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003)…………………………………………10, 11, 16

*Vitt v. Apple Computer, Inc.*,

    469 Fed. Appx. 605 (9th Cir. 2012)………………………………………….20

*Whittlestone, Inc. v. Handi-Craft Co.,*

   618 F.3d 970 (9th Cir. 2010)…………………………………………………...25

## CODES, STATUTES AND REGULATIONS

### Federal Regulations

21 CFR §172.515…………………………………………………………………………1

21 CFR §184.1278…………………………………………………………………………..1

### California

California Consumer Legal Remedies Act ("CLRA")…..6, 10, 11, 12, 14, 17, 19, 21

California False Advertising Law ("FAL")………………………10, 11, 12, 14, 19, 21

California Unfair Competition Law "UCL")……………6, 10, 11, 12, 14, 17, 19, 21

Cal. Comm. Code § 2607(3)(A)………………………………………………………23

### Indiana

Indiana Deceptive Consumer Sales Act ("IDCSA")…………………….2, 19, 21, 24

Ind. Code § 26-1-2-607(3)(a)…………………………………………………………23

### New York

New York General Business Law ("NYGBL")……………………………13, 19, 21

N.Y. U.C.C. § 2-607(3)(a)……………………………………………………………23

### Vermont

Vermont Consumer Protection Act ("VCPA")…………………………………20, 21

9A V.S.A. § 2-607(3)…………………………………………………………………23

### Federal Rules Of Civil Procedure ("FRCP")

FRCP 8(a)……………………………………………………………………………16, 17

FRCP 9(b)……………………………………….1, 2, 3, 9, 10, 11, 12, 13, 14, 15, 16, 17, 25

FRCP 12(b)(1)……………………………………………………………...1, 2, 3, 5, 25

FRCP 12(b)(6)………………………………………………………1, 2, 3, 9, 10, 25

FRCP 12(e)…………………………………………………………………………3, 25

# MEMORANDUM OF POINTS & AUTHORITIES

## I.     INTRODUCTION

The First Amended Complaint ("FAC") largely consists of an avalanche of an indecipherable hodgepodge of general allegations regarding e-liquids and e-cigarettes.  Buried in this avalanche are scant general allegations against Defendant Five Pawns, Inc. ("Five Pawns"), none of which are specifically linked to named plaintiffs Duane Robert Greene, Shawn Randall Thomas, James Hirtzel, Anthony Swetala, and Dr. Sprague Simonds ("Plaintiffs").  In a chaotic attempt to impose liability upon Five Pawns, Plaintiffs incorporate the general allegations into each claim and combine them with general conclusory allegations.  Not surprisingly, this "shotgun" pleading suffers from numerous fatal flaws and should be dismissed.

Plaintiffs desperately attempt to create a lawsuit around their allegation that Five Pawns, in June 2015, released test results showing the presence of diacetyl ("DA") and acetyl propionyl ("AP") in its e-liquids. (FAC, ¶15.)  No laws or regulations require Five Pawns to disclose the presence of DA or AP, two flavorings "responsible for the buttery and creamy taste of many foods and beverages[,]" including popcorn, beer, and coffee, and approved by the FDA for use in food. (FAC, ¶¶9, 72, 76; 21 CFR §184.1278, 21 CFR §172.515.)  Moreover, Five Pawns never publicly disseminated any statements regarding the absence of DA or AP. Incredibly, regarding omissions, Plaintiffs allege that by providing Proposition 65 and other warnings regarding nicotine, including its presence in Five Pawns' products and its harmful effects, consumers would take the giant leap and form the belief that there must be no DA or AP in the products and that such belief materially affected their decision even though they were already purchasing a product with nicotine. (FAC, ¶65-68.) Regarding alleged affirmative misrepresentations concerning the presence of DA or AP in Five Pawns' products, the vague allegations consist of two statements made solely to three individuals, and not of any statements disseminated by Five Pawns to the general public or to Plaintiffs. (FAC, ¶¶52-53.)

- 1 -

Conspicuously absent from the 176-paragraph manifesto are any allegations by any of the named Plaintiffs concerning what they view or saw before their purchase; what statements, if any, they relied on in making their purchase; where they would have expected to see disclosures concerning the presence of AP or DA, whether such disclosures would have been material to them; and how they would have acted differently if such disclosures were made.

Because Plaintiffs have failed to allege the required causation between their alleged injuries and the alleged acts of Five Pawns, Plaintiffs lack Article III standing, requiring dismissal of the FAC for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(1).  Because Plaintiffs have not alleged they intend to purchase Five Pawns' products in the immediate future despite such knowledge, Plaintiffs lack Article III standing to pursue injunctive relief, requiring dismissal of such claims under FRCP 12(b)(1).

Further, dismissal is required under FRCP 9(b), applicable to all of Plaintiffs' claims, since they are all premised on a unified course of fraudulent conduct, because Plaintiffs have failed to allege actual reliance and causation and the other circumstances of fraud with particularity.

Moreover, Plaintiffs have failed to state any claims upon which relief can be granted, requiring dismissal under FRCP 12(b)(6).

First, Plaintiffs have not alleged any actionable omissions. To be actionable under California law, an omission must be required by law or contrary to an actual representation made.  Plaintiffs have not alleged that Five Pawns was required by law to make disclosures concerning AP or DA.  Under the Indiana Deceptive Consumer Sales Act ("IDCSA"), omissions are simply not actionable.

Second, Plaintiffs have not alleged any actionable affirmative misrepresentations. The only alleged misrepresentations regarding the presence of AP or DA in Five Pawns' products were made to three individuals (not to Plaintiffs).  The scant allegations concerning statements in a radio interview

regarding "top-notch ingredients" and statements in a news post after Five Pawns released its test results showing DA and AP in some of its e-liquids and after Plaintiffs Greene, Thomas and Hirtzel stopped purchasing Five Pawns' products, are not actionable because they constitute permissible opinions and puffery.

Third, Plaintiffs have not alleged any deceptive conduct that would be likely to mislead a reasonable consumer. A reasonable consumer reading a warning concerning nicotine would not make the giant leap that because AP and DA are not listed in the warning, such ingredients are not in the product.

Fourth, concerning Plaintiffs' express warranty claim, Plaintiffs have failed to allege they provided the required pre-litigation notice, nor have they alleged any of the required elements of this claim, which cannot be based upon an omission.

Lastly, Plaintiffs seek disgorgement of profits to the extent available. Such relief, however, is not available under any of Plaintiffs' claims.

Five Pawns respectfully requests that this Court dismiss Plaintiffs' baseless lawsuit under FRCPs 12(b)(1), 12(b)(6), and 9(b). Alternatively, Five Pawns moves for a more definite statement under FRCP 12(e) because the FAC is so vague and ambiguous that Five Pawns cannot reasonably respond.

## II.   BRIEF SUMMARY OF PLAINTIFFS' ALLEGATIONS

Plaintiff alleges that Five Pawns manufactures e-liquids, which are used in electronic cigarettes, an alternative to tobacco smoking. (FAC, ¶¶8, 36.)

Plaintiff Greene alleges that he is an Indiana resident who, in or about May 2014, purchased three of Five Pawns' e-liquids from its website, from another online store, and from a local store in Indiana, and that he thereafter additional products intermittently. (FAC, ¶¶20, 27.) Plaintiff Thomas alleges that he is a New York resident and purchased Five Pawns' e-liquids at a New York store in March 2015. (FAC, ¶¶21, 28.) Plaintiff Hirtzel alleges that he is a California resident who, in or around November 2013, purchased one bottle of Five Pawns product from a California store, and that he intermittently purchased additional Five Pawns liquids.

(FAC, ¶¶22, 29.)  Plaintiff Swetala alleges that he is a California resident who, around January 2015, purchased Five Pawns' e-liquids from a California store. (FAC, ¶¶23, 30.)  Plaintiff Simonds alleges that he is a Vermont resident who, in or around August through October 2015, purchased approximately seven bottles of Five Pawns' e-liquids online and from a store in Maine.  (FAC, ¶¶24, 31.)

Plaintiffs Greene, Thomas, and Hirtzel allege that they stopped purchasing Five Pawns' products when the Cloud 9 test results were posted on the Internet on June 28, 2015.  (FAC, ¶¶27-29, 48, 57.)

Plaintiffs allege that in June 2015, Five Pawns disclosed test results showing the presence in its products of AP and DA, two flavorings, which Plaintiffs contend are hazardous, that are "responsible for the buttery and creamy taste of many foods and beverages, most famously, popcorn." (FAC, ¶¶8, 9.)

Plaintiffs allege that Five Pawns' packaging, inserts, and website fail to disclose the presence of AP and DA and that this is misleading because Five Pawns discloses the amount of nicotine and other substances and provides warnings on its packaging and website, including Proposition 65 warnings, concerning risks related to nicotine. (FAC, ¶¶61-69.)  Plaintiffs further allege that Five Pawns lists the other ingredients as "Natural and Artificial Flavors" and that this is misleading because Five Pawns does not disclose what those flavors are.  (FAC, ¶76.)  Plaintiffs further allege that Five Pawns does not disclose research and studies that allegedly raise significant concerns about DA and AP.  (FAC, ¶69.)

Plaintiffs allege that Five Pawns made certain statements that were misrepresentations or misleading: (1) two unidentified customers (not any of the named plaintiffs) asked Five Pawns if their products contain DA or AP and Five Pawns denied this (FAC, ¶52.); (2) Mr. Russell Wisthtart, a podcast host, during a July 1, 2015 episode, broadcasted a recorded (Plaintiffs have not alleged that Five Pawns consented to the recording) conversation wherein a Five Pawns' employee allegedly represented that two of Five Pawns' products contained non-detectable

levels of AP (FAC, ¶53.); (3) Five Pawns' CEO allegedly stated that Five Pawns uses "top notch ingredients" and uses "natural ingredients" that are "sourced locally" (¶FAC, 43.); and (4) that on June 29, 2015, Five Pawns' website stated that while AP "is not banned by the FDA or any International body, its relative safety or harm is unknown" and that "Five Pawns does not feel there is any concern with diacetyl or AP in our e-liquids at current levels."  (FAC, ¶¶70-71.)

In conclusory fashion, Plaintiffs allege that had Five Pawns made disclosures concerning AP and DA, Plaintiffs would not have paid as much for Five Pawns' products, or would not have purchased such products.  (FAC, ¶26.)

## III.  **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER FRCP 12(b)(1) BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER SUCH CLAIMS.**

"Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction."  *Burns v. Tristar Prods., Inc.*, No. 14-cv-749-BAS(DHB), 2014 WL 3728115, at *1 (S.D. Cal. July 25, 2014).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *Id.*, quoting *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989).  "Article III of the Constitution confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'"  *Id.*, quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 590, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "Consequently, a 'lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'"  *Id.*, quoting *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis from original omitted).

"[T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal

connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan, supra*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992), internal quotations and citations omitted.

Furthermore, "[s]tanding must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Burns, supra*, 2014 WL 3728115, *2, internal citation omitted.

## A. <u>None of The Plaintiffs Have Sufficiently Alleged A Causal Connection Between Their Alleged Injuries And The Alleged Deceptive Acts Of Five Pawns</u>.

"[I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978).  If a named representative cannot satisfy the Article III standing requirement, then he cannot maintain any claims on behalf of himself or any other putative class member.  *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

In the case of *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013), the District Court concluded that the plaintiffs must demonstrate that they actually relied on Apple's alleged misrepresentations to establish standing under Article III, the Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL").  "For the Plaintiffs' harm to be 'fairly traceable' to Apple's misrepresentations, Plaintiffs must have seen the misrepresentations and taken some action based on what they saw—that is, Plaintiffs must have actually relied on the misrepresentations to have been harmed by them. *Id.*

1    Plaintiffs allege certain misrepresentations and omissions by Five Pawns

2 concerning the presence of AP and DA in its products, but allege no specific link

3 between these alleged misrepresentations/omissions and their alleged injuries.

4 Rather, in conclusory fashion, Plaintiffs as a whole allege that had Five Pawns made

5 disclosures concerning AP and DA, Plaintiffs would not have paid as much for Five

6 Pawns' products or that they would not have purchased such products.  (FAC, ¶26.)

7 Similar to the plaintiffs in *In re iPhone Application Litig., supra*, none of the

8 Plaintiffs allege which, if any, of the alleged misrepresentations, they relied on when

9 purchasing the product.  None of the Plaintiffs allege what they viewed or heard

10 before purchasing Five Pawns' products, where they would have expected to see

11 disclosures concerning the presence of AP or DA, whether the presence of AP or

12 DA in e-liquids was material to them, and whether suck disclosures would have

13 affected their decision given that the disclosures concerning nicotine in the products.

14    In fact, Plaintiffs allege that in June 2015, Five Pawns disclosed, on its

15 website, its test results showing the presence of AP and DA in its products.  (FAC,

16 ¶15.)  Plaintiff Simonds alleges that he did not purchase Five Pawns' products until

17 October 2015. (FAC, ¶31.)  Thus, it was either not material to him that Five Pawns'

18 products contained AP or DA, or he never viewed Five Pawns' website before

19 making his purchases.

20    Concerning the response to the two unidentified customers (FAC, ¶52),

21 Plaintiffs do not allege that they were the customers who received the response.

22 Further, Plaintiffs do not even allege the dates of these responses to determine if the

23 products Plaintiffs purchased were before or after such emails were sent.

24    Concerning the telephone conversation between Mr. Wishtart (not a named

25 plaintiff) and a third party, and with no alleged consent to record as required by

26 Penal Code Section 632, which aired on a July 1, 2015 podcast, Plaintiffs were not

27 participants in the conversation.  Further, Plaintiffs Greene, Thomas, Hirtzel, and

28 Swetala all allege they purchased their products from Five Pawns before July 1,

2015 and Plaintiffs Greene, Thomas, and Hirtzel all allege they stopped purchasing Five Pawns' products when the Cloud9 testing results were posted on the Internet on June 28, 2015. (FAC, ¶¶27-30, 48, 51, 57.)

Concerning comments allegedly made during a radio interview by the Five Pawns' CEO regarding "top notch ingredients" and "natural ingredients", none of the Plaintiffs allege they listened to the interview or that it had any effect on their decision to purchase Five pawns' products.  Further, Plaintiffs allege that that the interview was conducted on May 31, 2013 (FAC, ¶43, f.n. 12), well before any of the Plaintiffs purchased Five Pawns' products.  Plaintiffs allege that Five Pawns discloses that it uses both "Natural and Artificial Flavors" (FAC, ¶76), so even if Plaintiffs were alleging that they believe AP or DA are artificial and that they heard the "natural ingredients" comment and interpreted it to mean no AP or DA, there is no link to their alleged injury with the disclosure they alleged.

Concerning the June 29, 2015 comments, allegedly in response to the Cloud9 test results, on Five Pawns' website regarding the safety of AP and DA, Plaintiffs Greene, Thomas and Hirtzel all allege they stopped purchasing Five Pawns' products when the Cloud9 results were posted.  (FAC, ¶27-29. 48, 51, 57.)  Plaintiff Swetala alleges he made his purchase of Five Pawns' products in or around January 2015, six months before the June 29, 2015 comments.  (FAC, ¶30.)

Accordingly, Plaintiffs lack Article III standing to pursue their claims.

**B.** <u>**Plaintiffs Lack Standing To Obtain Injunctive Relief**</u>.

To have standing to seek prospective injunctive relief, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imps. (U.S.) Inc*., 631 F.3d 939, 946 (9th Cir. 2011) (internal quotations marks omitted).  In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). Plaintiffs cannot establish Article III standing with respect to their request for

1   injunctive relief, because their alleged injuries will not be redressed by a favorable

2   decision.  *Lujan, supra*, 504 U.S. 560-561.  Because Plaintiffs allege that they are

3   aware of Five Pawns' allegedly deceptive practices, and because they have not

4   alleged that they intend to purchase Five Pawns' products in the future, they have

5   not alleged "a real and immediate threat of repeated injury in the future."  *Id*.

6       In a recent case in this district, the District Court explained that while some

7   courts have created a "public policy exception" to the Article III standing

8   requirement to allow plaintiffs to pursue injunctive relief, it agreed with the courts

9   that have held otherwise.  *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No.

10  MDL 13-2438 PSG (PLAx), 2014 WL 5311272, at*10 (C.D. Cal. Sept. 4, 2014).

11  "***The federal courts are not empowered to set aside the standing requirements of***

12  ***Article III in the name of public policy, even when that policy is laudable***.  If

13  Plaintiffs do not intend to purchase 5-hour ENERGY in the future, Defendants'

14  alleged misrepresentations cannot do them any injury, and injunctive relief will not

15  provide them with any redress."  *Id*., emphasis added.

16      Plaintiffs, by filing the FAC, are aware of the alleged deceptive practices.

17  Further, they have not alleged that they intend to purchase Five Pawns' products in

18  the near future.  In fact, Plaintiffs Greene, Thomas, and Hirtzel have specifically

19  alleged that they stopped purchasing Five Pawns' products based on a UK

20  company's test results posted (since removed) on their website, and Plaintiffs allege

21  that Five Pawns contacted the few customers who received the isolated private

22  communication regarding AP and/or DA and offered a refund. (FAC, ¶¶27-29, 48-

23  49, 85.)

24      Accordingly, none of Plaintiffs' alleged injuries will be addressed by

25  injunctive relief; thus, Plaintiffs lack Article III standing to pursue such relief.

26  **IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER**

27       **FRCP 12(b)(6) AND 9(b).**

28

A motion to dismiss pursuant to FRCP 12(b)(6) tests the legal sufficiency of
claims asserted in a complaint.  A claim should be dismissed where there is either a
"lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a
cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th
Cir. 1988).  A plaintiff must do more than allege "labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).  "[F]or a complaint to
survive a motion to dismiss, the non-conclusory factual content, and reasonable
inferences from that content, must be plausibly suggestive of a claim entitling the
plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 959 (9th Cir. 2009).
The heightened pleading requirement set forth in "Rule 9(b) applies when (1) a
complaint specifically alleges fraud as an essential element of a claim, (2) when the
claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent
conduct, but the claim itself does not contain fraud as an essential element, and (3)
to any allegations of fraudulent conduct, even when none of the claims in the
complaint 'sound in fraud.'" *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d
1073, 1089-90 (C.D. Cal. 2009), citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d
1097, 1102-06 (9th Cir. 2003).  When a plaintiff's claims are based upon a unified
course of fraudulent conduct, district courts have routinely applied FRCP 9(b) to not
only UCL, CLRA, and California's False Advertising Law ("FAL") claims, but also
to claims brought under non-California consumer protection statutes.  *See e.g.
Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 957-58 (C.D. Cal. 2012); *In
re Actimmune Mktg. Litig.,* No. C 08-02376 MHP, 2009 WL 3740648, at *6 (N.D.
Cal. Nov. 6, 2009) *aff'd*, 464 F.App'x 651 (9th Cir. 2011).  Courts have also applied
FRCP 9(b) to express warranty claims.  *Fisher v. Monster Bev. Corp.*, No. EDCV
12-02188-VAP (OPX), 2013 WL 10945131, at *12 (C.D. Cal. Nov. 12, 2013).

All of Plaintiffs' claims, including their claims under all three prongs of the
UCL, are all premised on fraud itself or on fraudulent conduct. (FAC, ¶19, 105, 111,

-10-

113, 119, 121, 123, 133, 144, 153, 166, 175.) Thus, FRCP 9(b) is applicable to all of Plaintiffs' claims and allegations.

**A.**   **Plaintiffs Have Failed To Satisfy FRCP 9(b)'s Heightened Pleading Requirement.**

**1. General FRCP 9(b) Requirements**

FRCP 9(b) demands that "averments of fraud … be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess*, *supra,* 317 F.3d at 1106.  For alleged misrepresentations, a plaintiff must allege that "the misrepresentation was an immediate cause of the injury-producing conduct.'" *Fisher*, *supra,* 2013 WL 10945131, at *12*, quoting *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793-94 (9th Cir. 2012).  To satisfy FRCP 9(b), "a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity."  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013). "[T]o plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should have or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information. *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). *See also In re Facebook PPC Adver. Litig.*, No. 5:09-CV-03043-JF, 2010 WL 3341062, at *10 (N.D. Cal. Aug. 25, 2010) (plaintiffs' failure to allege the specific policies and representations they reviewed fails to satisfy the FRCP 9(b) pleading requirement for an omission claim).

**2. Statutory Standing Requirements Under UCL, FAL, and CLRA Incorporate Actual Reliance Into The Elements Of The Claims When Based On Fraud**

The California Supreme Court, concluded in the *In re Tobacco II Cases,* 46 Cal. 4th 298, 326 (2009) that Proposition 64's changes to the standing requirement

1  for unfair competition claims imposed a reliance requirement on plaintiffs under the

2  UCL's fraud prong.  Following the *Tobacco II Cases*, courts have held that claims

3  under the UCL (all 3 prongs), the CLRA, and FAL require actual reliance if the

4  underlying conduct is deceptive conduct or if the claims sound in fraud.  *Kane v.*

5  *Chobani, Inc.,* 973 F. Supp. 2d 1120, 1129 (N.D. Cal. 2014).  Thus, "[f]or fraud-

6  based claims under all three consumer statutes the named Class members must

7  allege actual reliance to have standing."  *Fisher, supra*, 2013 WL 10945131, at *12,

8  internal citation omitted.

9       The California Supreme Court in the *Tobacco II Cases,* cases involving a

10  decades-long advertising campaign where it would be difficult to identify every

11  specific advertisement relied upon, articulated a slightly relaxed pleading standard

12  for reliance, in such long-term advertising cases, where the plaintiff is not required

13  to plead with an "unrealistic degree of specificity that the plaintiff relied in

14  particular advertisements or statements." 46 Cal.4th at 328.  In federal court,

15  however, FRCP 9(b) always trumps this slightly relaxed pleading standard and

16  "mandates that the causation elements announced in *Tobacco II* be pled with

17  specificity."  *Actimmune Mktg. Litig., supra*, 2009 WL 370648, *13.  *See also*

18  *Germain v. J.C. Penney Co.,* No. CV 09-2847 CAS (FMOx), 2009 WL 1971336, at

19  *4 (C.D. Cal. July 6, 2009).  Even if the case at bar were in state court, the slightly

20  relaxed pleading standard only applies if Plaintiffs allege "an advertising campaign

21  that is similarly extensive and lengthy."  *Bronson v. Johnson & Johnson, Inc.,* No. C

22  12-04184 CRB, 2013 WL 1629191, at *3 (N.D. Cal. Apr. 16, 2013) (finding slightly

23  relaxed pleading standard inapplicable because the "marketing campaign began in

24  2012, which is substantially less than the 'long-term' campaign at issue in *Tobacco*

25  *II* that lasted at least seven years.")  Plaintiffs have not alleged any false

26  advertisements since Five Pawns launched products in 2012 (FAC, ¶33), let alone a

27  decades-long ubiquitous advertising campaign.  Thus, Plaintiffs, when pleading the

28  circumstances of fraud, must plead actual reliance with particularity.

**3.**     <u>None Of The Plaintiffs Have Pled The Circumstances Of Fraud, Including Reliance And Causation, With Particularity.</u>

Plaintiffs' conclusory allegations do not come close to satisfying FRCP 9(b).

In *Tait v. BSH Home Appliances Corp.*, No. SACV 10-711 DOC AN, 2011 WL 1832941, at *3 (C.D. Cal. May 12, 2011), Judge Carter held:

> The CAC includes repeated references to misstatements that allegedly appear on Defendant's website and/or in the machine's operating instructions, *see, e.g.* CAC, ¶¶ 33, 34, 40, 42, 44, 46, 49, 50, 52, 54, but Plaintiffs offer no information regarding **when,** or even **if,** each of the named Plaintiffs viewed the website and/or operating instructions. Without such facts, these conclusory allegations do not come within a county mile of satisfying Rule 9(b).

In *Tait, supra,* after dismissing the California consumer protection claims for failure to allege reliance, Judge Carter explained that "[l]ike the consumer protection statutes discussed above, Section 349 of the New York General Business Law includes a causation requirement." *Id.* at *7. "There can be no allegation of causation or reliance absent allegations plausibly asserting that Plaintiffs saw a given advertisement or marketing item of Defendant's." *Id.*

The Indiana, New York, and Vermont consumer protection statutes all contain reliance or causation requirements.[1]

---

[1] See e.g. *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,* No. 05 C 2623, 2009 WL 3460218, at *5 (N.D. Ill. Oct. 20, 2009) ("In . . . Indiana, the elements, of a consumer fraud claim include reliance upon a misrepresentation and injury proximately caused by the reliance."); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) (Under New York's General Business Law, a plaintiff must allege that he or she "suffered injury as a result of the deceptive act."); *PH W. Dover Prop., LLC v. Lalancette Engineers*, 2015 VT 48, ¶ 20, 120 A.3d 1135, 1141 (Vt. 2015) ("Vermont's consumer protection statute provides a private cause of action for a consumer 'who contracts for goods or services in reliance upon false or fraudulent representations or practices ... or who

In *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1123 (9th Cir. 2009), the Ninth Circuit affirmed the District Court's dismissal of the Third Amended Complaint based on the plaintiff's failure to satisfy FRCP 9(b).

> Nowhere in the TAC does Kearns specify what the television advertisements or other sales material specifically stated. ***Nor did Kearns specify when he was exposed to them or which ones he found material. Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle.***

*Id.* at 1126, internal citation omitted, emphasis added.

In the case of *Actimmune Mktg. Litig.*, *supra*, 2009 WL 3740648, at \*1, the plaintiffs alleged that InterMune fraudulently marketed Actimmune to individuals afflicted with and to doctors who treat patients suffering from idiopathic pulmonary fibrosis ("IPF") even though Actimunne was not approved by the FDA and the defendants knew it was not effective to treat IPF.

The District Court held that "[w]ithout some link connecting the doctors' alleged beliefs that Actimmune was efficacious for the treatment of IPF to some fraudulent representation or omission made by InterMune, the plaintiffs' allegations cannot satisfy Rule 12(b)(1), Rule 12(b)(6) or Rule 9(b)." *Id.* at \*11. As such, the District Court dismissed the plaintiffs' claims under the UCL (all three prongs), CLRA, and FAL. *Id.* at \*14-15.

In the case of *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at \*13 (N.D. Cal. July 23, 2013), the District Court dismissed the plaintiffs' UCL, FAL, CLRA, and common law fraud claims under FRCP 9(b) for the failure "to allege with specificity which commercials or other misleading advertisements they each relied upon in purchasing their devices."

---

sustains damages or injury *as a result of* [such] representations or practices.'" (quoting 9 V.S.A. § 2461(b).)

In the case of *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1006-07 (S.D. Cal. 2011), the District Court dismissed the plaintiffs' consumer protection claims for failing to satisfy FRCP 9(b) because, "[t]he FAC does not consistently allege that each Plaintiff saw or read the advertising claims before purchasing the product and purchased the product in reliance on the advertising representations[]" and "[n]o facts are alleged as to the timing of the purchase in relation to the Plaintiff's exposure to the advertising claims ...."

The only alleged misrepresentations in the FAC concerning DA or AP are that there were three isolated communications not directed to the public by Five Pawns that consist of: (1) two unidentified customers (not Plaintiffs) asking Five Pawns if their products contain DA or AP and receiving a response that the products did not contain DA or AP (FAC, ¶52), and (2) Mr. Wisthtart, during a July 1, 2015 episode, broadcasting a recorded telephone conversation wherein a Five Pawns employee allegedly represented to Mr. Wisthart that two of Five Pawns' products (Absolute Pin and Bowden's Mate) contain non-detectable levels of AP (FAC, ¶53). Plaintiffs do not allege that they were the customers who received the private isolated communication nor do they even allege when the communication was made, or that they saw or heard the communication before purchasing their products, or that they purchased Absolute Pin or Bowden's Mate.  In fact, the two named plaintiffs who list the specific products they purchased did not purchase these two products.  (FAC, ¶27 (Hirtzel), ¶29 (Greene)).  Further, Plaintiffs Greene, Thomas, Hirtzel, and Swetala all allege they purchased their products from Five Pawns before July 1, 2015 and Plaintiffs Greene, Thomas, and Hirtzel all allege they stopped purchasing Five Pawns' products when the Cloud9 testing results were posted on the Internet on June 29, 2015. (FAC, ¶¶27-29, 48, 57.)

Plaintiffs further allege that Five Pawns' CEO allegedly stated in an interview that Five Pawns uses "top notch ingredients" and uses "natural ingredients" that are "sourced locally." (¶FAC, 43.)  Plaintiffs have not alleged that they discovered the

-15-

interview before purchasing Five Pawns' products or that they relied on the CEO's statements when making their purchases.  In fact, Plaintiffs allege that the interview was conducted on May 31, 2013 (FAC, ¶43, f.n. 12), which was well before any Plaintiffs allege they first purchased Five Pawns' products.

Plaintiffs further allege that on June 29, 2015, Five Pawns stated on its website that while AP "is not banned by the FDA or any International body, its relative safety or harm is unknown" and that "Five Pawns does not feel there is any concern with diacetyl or AP in our e-liquids at current levels."  (FAC, ¶70-71.) As discussed in Section III-A above, Plaintiffs Greene, Thomas, and Hirtzel all allege they ceased purchasing Five Pawns' products before this post (FAC, ¶¶14, 27-29, 48. 57), and Plaintiff Swetala alleges his purchase of Five Pawns' products was six months before this post. (FAC, ¶30.)

In sum, similar to *Kearns, supra*, Plaintiffs have not alleged what allegedly deceptive statements they saw or heard; which ones, if any, they found material; when they saw or heard the allegedly deceptive statements; or what statements, if any, they each relied on in making their purchasing decisions.  Nor does the FAC contain any allegations concerning what, if any, of the alleged omitted information, each Plaintiff would have seen before making his purchase if such information was disclosed, and how each Plaintiff would have acted differently if he had seen or heard such information.  Further, no facts are alleged as to the timing of Plaintiffs' purchases in relation to any statements they saw or heard.  Plaintiffs either fail to allege the dates of the alleged deceptive statements or allege such statements were mad after their purchases.

Thus, "the pleading . . . as a whole" fails to satisfy FRCP 9(b) for failing to allege all the circumstances of fraud, including actual reliance and causation, with the required particularity. *Kearns, supra*, 567 F.3d at 1125.  When FRCP 9(b) is not satisfied, dismissal is required. *See Vess, supra*, 317 F.3d at 1107.  Plaintiffs' general allegations are even insufficient under FRCP 8(a) and would require

1  dismissal under FRCP 12(b)(6) if FRCP 9(b) was inapplicable.  *In re Actimmune*

2  *Mktg. Litig.*, *No. C 08-02376 MHP,* 2010 WL 3463491, *10 (N.D. Cal. Sept. 1,

3  2010) aff'd, 464 F.App'x 651 (9th Cir. 2011) (generalized allegations of exposure to

4  alleged misrepresentations insufficient to plead actual reliance under Rule 8(a)).

**B.**     **PLAINTIFFS CONSUMER PROTECTION CLAIMS (COUNTS I-
           VI) FAIL TO STATE A CLAIM.**

    **1.**  **Five Pawns, As A Matter Of Law, Owed No Duty To Disclose
        Whether Any Of Its Products Contained AP or DA.**

      **a**.     **California Consumer Protection Claims**

10  Under California law, to be actionable, an "omission must be contrary to a

11  representation actually made by the defendant, or an omission of a fact the

12  defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co*., 144 Cal.

13  App. 4th 824, 835 (2006), as modified (Nov. 8, 2006). *See also Buller v. Sutter*

14  *Health*, 160 Cal. App. 4th 981, 988 (2008). "This is because a consumer is not likely

15  to be deceived by the omission of a fact that was not required to be disclosed in the

16  first place." *Id.* Many courts have dismissed CLRA and UCL claims for the failure

17  to allege a duty to disclose.

18  In *Daugherty, supra,* the plaintiff alleged that American Honda Motor

19  Corporation ("Honda") failed to disclose that its engines had a defect that, over

20  time, resulted in dislodgment of an oil seal, and Honda misled consumers by not

21  disclosing the defect in its partial product update campaign or press releases.  144

22  Cal. App. 4th at 827, 833-34, 838.  The appellate court, however, found the trial

23  court properly sustained the demurrer to the plaintiff's CLRA claim because the

24  plaintiff did not allege facts showing that Honda had a duty to disclose the alleged

25  defect in its F22 engine or that Honda made affirmative representations regarding

26  the alleged defect. *Id.* at 836. Further, the court held: "We cannot agree that a failure

27  to disclose a fact one has no affirmative duty to disclose is 'likely to deceive'

28  anyone within the meaning of the UCL." *Id.* at 838.

In *Buller, supra*, the plaintiff alleged that the defendant failed to disclose the availability of a prompt-pay discount.  The appellate court, however, held that "Appellant's complaint does not allege the respondents have an affirmative duty to disclose the availability of a prompt-pay discount." 160 Cal. App. 4th at 988. The Appellate Court explained that patients are not likely be expecting a discount and thus the "alleged failure to reveal their discount policy is not conduct that is 'likely to deceive' patients."  *Id.* As such, the appellate court held that the trial court properly sustained the defendant's demurrers to the UCL claim.  *Id*. at 992.

In the case of *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, No. MDL 08-1934 PSG (AGRx), 2009 WL 1703285, *6, (C.D. Cal. June 17, 2009) *aff'd sub nom.*, *United Food & Commercial Workers Cent. Pennsylvania & Reg'l Health & Welfare Fund v. Amgen, Inc.,* 400 F.App'x 255 (9th Cir. 2010), the plaintiff alleged that Amgen failed to disclose the results of two studies, with adverse findings concerning its drug despite having knowledge of such studies.  The District Court held: "Plaintiffs have failed to state a claim for fraud because they have not alleged that Amgen had a duty to disclose these study results, much less such a duty to Plaintiffs."  *Id*.  The Court explained that "[t]o survive a motion to dismiss, Plaintiffs must show that Amgen's actions went beyond presenting its drugs in the best light possible and crossed the line into actionable fraud."  *Id*.

Similar to the defendants in *Daugherty, Buller*, and *Amgen*, Five Pawns owes no duty under any statute or regulation to disclose whether AP or DA is in any of its products, much less such a duty to Plaintiffs.  Further, unlike the plaintiffs suing Amgen, Plaintiffs do not even allege that Five Pawns was aware of the various articles and so-called studies referenced in the FAC.  Apparently, Plaintiffs' position is that Five Pawns should be required to ascertain whenever AP or DA are mentioned in any article or study and then immediately disclose such article or study.  Such an onerous burden is certainly not required by the law.  Five Pawns is entitled to present its products "in the best light possible."

-18-

1   Moreover, Five Pawns never made any representations contrary to the alleged

2   omission.  As discussed above in Section IV(A)(3), the only alleged representations

3   regarding AP and DA were made to unidentified customers (not the named

4   plaintiffs) at an unidentified time.

5   For these reasons, Plaintiffs have failed to state a claim under the UCL[2],

6   CLRA, or FAL based on alleged omissions by Five Pawns.  The same is true of the

7   out of state consumer protection claims.

8   **b.  Indiana Consumer Protection Claim**

9   In support of their claim under the IDCSA, Plaintiffs merely allege in the

10  FAC that Five Pawns engaged in a deceptive act (FAC ¶ 143.)  The acts or

11  representations constituting "deceptive acts" under the IDCSA are specifically-

12  enumerated in Indiana Code sections 24–5–0.5–34 and 24–5–0.5–10.  The FAC fails

13  to identify any of these specifically-enumerated sections.  Notably, Plaintiffs' claim

14  under the IDCSA is that Five Pawns omitted certain information concerning DA

15  and/or AP.  The IDCSA, however, does not apply to non-disclosures.  *Lawson v.*

16  *Hale*, 902 N.E.2d 267, 273-74 (Ind. Ct. App. 2009); *Dicuio v. Brother Int'l Corp.*,

17  No. CIV.A. 111447(FLW)(TJB), 2015 WL 3403144, at *27 (D.N.J. May 27, 2015).

18  **c.  New York Consumer Protection Claim**

19  Similar to California law, under the New York General Business law, "an

20  omission becomes a misrepresentation only in a situation in which it renders other

21  statements made by a defendant misleading."  *Henry v. Rehab Plus, Inc.*, 404 F.

22  Supp. 2d 435, 445 (E.D.N.Y. 2005).  As discussed above, Plaintiffs have not alleged

23  Five Pawns made any such statements.

24  **d.  Vermont Consumer Protection Claim**

25

26

27  _____

[2]   Plaintiffs' claims under the unfair and unlawful prongs of the UCL are

derivative of their other fatally defective claims and as such much be dismissed.

28  See e.g. *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1028 (N.D. Cal. 2012)

-19-

Under the Vermont Consumer Protection Act ("VCPA"), the omitted facts must be known to the defendant and material to the plaintiff.  *PH W Dover Prop., supra*, 120 A.3d at 1141-42.  Plaintiffs have not alleged that Five Pawns was aware of any omitted facts.  Moreover, Plaintiffs have not alleged that the non-disclosed information was material to them.

## 2.  <u>Plaintiffs Have Not Alleged Any Actionable Representations.</u>

To the extent Plaintiffs are asserting any claims based solely on alleged misrepresentations, Plaintiffs have not alleged any actionable misrepresentations.

Plaintiffs allege that Five Pawns' CEO allegedly stated in an interview that Five Pawns uses "top notch ingredients" and uses "natural ingredients" that are "sourced locally." (¶FAC, 43.)  Plaintiffs further allege that on June 29, 2015, Five Pawns stated on its website that while AP "is not banned by the FDA or any International body, its relative safety or harm is unknown" and that "Five Pawns does not feel there is any concern with diacetyl or AP in our e-liquids at current levels[]" and that Five Pawns impermissibly draws a parallel between DA in e-liquids and beer and fruit. (FAC, ¶¶70-71.)

All these statements are non-actionable under all the consumer protection statutes at issue because such statements do not "make a specific and measureable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Computer, Inc.,* 469 Fed. Appx. 605, 607 (9th Cir. 2012) (California law); *Kesling v. Hubler Nissan, Inc*., 997 N.E.2d 327, 333 (Ind. 2013) (puffing is not deceptive under the IDCSA); *Fink v. Time Warner Cable,* 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011), on reconsideration, No. 08 CIV. 9628 LTS KNF, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011) (statements that do not provide any concrete representations are not actionable under New York law); *Heath v. Palmer*, 2006 VT 125, ¶ 14, 181 Vt. 545, 549-50, 915 A.2d 1290, 1296 (2006) (only objectively verifiable statements of fact are actionable in Vermont).

Further, if Plaintiffs are contending that the term "natural" was false because Five Pawns uses artificial flavors, Plaintiffs also allege that Five Pawns discloses that it uses "Natural and Artificial Flavors[.]" (FAC, ¶76.)

Thus, Plaintiffs have not stated a claim under any of the consumer protection statutes based on affirmative misrepresentations by Five Pawns.

### 3.  **Plaintiffs Have Failed To Adequately Allege Any Conduct That Would Be Likely To Deceive The Reasonable Consumer.**

Under all the state consumer protection statutes, the alleged wrongful conduct must be likely to deceive a reasonable consumer.[3]

"Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

Plaintiffs have not alleged any statements where it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.  As discussed above in Section III-A, the only statements Plaintiffs allege were on Five Pawns' website were those

---

[3] See *Fisher, supra,* 2013 WL 10945131, at *10 (CLRA, FAL, UCL claims); *Gomez-Jimenez v. New York Law Sch.*, 36 Misc. 3d 230, 240, 943 N.Y.S. 2d 834, 842-43 (Sup. Ct.) aff'd, 103 A.D. 3d 13, 956 N.Y.S. 2d 54 (2012) (plaintiffs, to maintain a NYGBL claim must plead that the defendant "has engaged in an act or practice that is deceptive or misleading in a material way to a reasonable consumer."); *One Source Envtl., LLC v. M + W Zander, Inc.,* No. 2:12-CV-145, 2015 WL 7428572, at *12 (D. Vt. Nov. 20, 2015) (VCPA consists "of three elements: (1) the representation or omission at issue was likely to mislead consumers; (2) the consumer's interpretation of the representation was reasonable under the circumstances; and (3) the misleading representation was material in that it affected the consumer's purchasing decision.")

from a 2013 video interview and those posted in a news section on June 29, 2015, all of which constitute non-actionable truthful statements and/or permissible opinions and puffery.  Moreover, it is not probable that a significant portion of the general consuming public or of targeted consumers could be misled into believing that "top notch ingredients" or "natural flavors" means that there is no AP or DA in the product, especially when Plaintiffs allege that Five Pawns discloses the presence of nicotine in its products and nicotine's harmful effects and discloses that artificial flavors are used. (FAC, ¶¶62, 65-68, 76.)  Further, concerning the June 29, 2015 "News" section posts, it is not probable that a significant portion of the general consuming public or of targeted consumers could be misled by any of the statements in question.  A consumer would not be misled into believing that AP and DA "carry no risk and are safe as used for inhalation" (FAC, ¶73) as Plaintiffs allege when Plaintiffs also allege that as part of that post, Five Pawns stated that "its relative safety or harm is unknown."  (FAC, ¶70)

The gravamen of Plaintiffs' lawsuit is that because Five Pawns made certain Proposition 65 and other disclosures concerning *nicotine* in its liquids, a reasonable consumer would believe that Five Pawns would have disclosed DA or AP, despite the fact that neither Proposition 65 nor any other law require such disclosure.  (FAC, ¶¶65-68.)  A reasonable consumer would not make this giant leap.  In any event, courts have held that as a matter of law, "a consumer is not likely to be deceived by the omission of a fact that was not required to be disclosed in the first place." *Buller, supra*, 160 Cal. App. 4th at 988.  Plaintiffs' allegations are particularly illogical because they are premised on the contention that a reasonable consumer would be aware of DA and AP and find the presence of such ingredients material to their purchase even though they are already purchasing a product with nicotine.  It is telling that none of the Plaintiffs have made any specific allegations concerning how they interpreted anything they saw or heard and what, if anything, they found

1   material.  Plaintiffs want this Court to expand the scope of Proposition 65 and

2   regulate e-liquid ingredient disclosures in three states, regardless of any deception.

3   **C.**   **PLAINTIFFS' SEVENTH CLAIM FOR BREACH OF EXPRESS**

4   **WARRANTY FAILS TO STATE A CLAIM.**

5   **1.  Plaintiffs Failed To Provide Pre-Litigation Notice.**

6    A buyer who intends to seek recovery from a seller for a claimed breach of

7   warranty must give the seller prompt notice of the claim. Cal. Comm. Code §

8   2607(3)(A); IC §26-1-2-607(3)(a); N.Y. U.C.C. § 2–607(3)(a); 9A V.S.A, 2-607(3).

9   Plaintiffs have failed to plead that this notice requirement was satisfied.  Courts have

10  routinely held that a breach of express warranty claim cannot be maintained if

11  proper pre-litigation notice was not provided.  *See e.g. Quinn v. Walgreen Co.*, 958

12  F. Supp. 2d 533, 544 (S.D.N.Y. 2013); *Fieldstone Co. v. Briggs Plumping Products,*

13  *Inc.*, 54 Cal. App. 4th 357, 370 (1997).

14  **2.  Plaintiffs Have Failed To Adequately Allege Any Of The Elements Of**

15  **Their Express Warranty Claim**.

16  Under California law, to state a claim for breach of express warranty, a

17  plaintiff must allege three elements.  *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361

18  PJH, 2014 WL 989742, at *4 (N.D. Cal. Mar. 11, 2014).  The first element is "that

19  the defendant's statements constituted an affirmation of fact or promise or a

20  description of one of the goods[.]" *Id.*  "[T]o constitute a warranty and be

21  actionable, the statement must be 'specific and unequivocal.'" *Id.*  Second, a

22  plaintiff must allege "that the statement was part of the benefit of the bargain[.]"  *Id.*

23  "For a statement to form the basis of the bargain, the plaintiff must allege facts

24  showing that she was exposed to the alleged statement prior to making the decision

25  to purchase the product." *Smith, supra*, 2014 WL 989742, *4.  Third, the plaintiff

26  must allege that "the warranty was breached." *Id.*

27  The elements under New York, Indiana, and Vermont law are very similar.

28  Several courts in California and New York have held that reliance is part of the

"basis of the bargain" requirement. *See e.g. Asghari, supra*, 42 F. Supp. 3d at 1335 (dismissed express warranty claim under California and New York law for failure to allege reliance).

Plaintiffs have not alleged any of these required elements.  First, Plaintiffs have failed to allege any "specific and unequivocal" statements by Five Pawns that constitute a promise or description of its goods. The only "statements" alleged in the FAC constitute opinions and permissible puffery.  Instead, Plaintiffs allege a breach of the express warranty contending that Five Pawns failed to provide "e-liquids that offered a product free of DA and AP (or similar variations) and otherwise omitted material information about potential health risks associated with the product." (FAC, ¶175.)  "A breach of express warranty claim, however, cannot be premised on an omission." *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1531 (E.D. Mo. 1997) *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999).  This is because omissions "are not affirmative representations of any sort, and thus cannot support a warranty claim, because express warranties must be explicit." *Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1099 (5th Cir. 1988). Second, none of the Plaintiffs have alleged exposure to the statement before purchasing, let alone any reliance.  Third, Plaintiffs have not alleged the breach of any "specific or unequivocal statement."

### D.  PLAINTIFFS CANNOT OBTAIN DISGORGEMENT OF PROFITS.

The prayer for relief in the FAC seeks disgorgement of profits "under each cause of action where such relief is permitted[.]"  However, none of Plaintiffs' causes of action allow for disgorgement of profits.  In California, disgorgement of profits is not available for consumer protection claims in a class action. *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1013 (2005).  Under the IDCSA, only "damages actually suffered" are allowable.  I.C. 24-5-0.5-4(a).  This means "the difference in value between that which the plaintiff parted with and that which he received." *McCormick Piano & Organ Co. v. Geiger*, 412 N.E. 2d 842,

-24-

850 (1980).  Under the New York General Business Act, only actual damages are available in a private action (see Section 349(h)).  Restitution is only available in an action brought by the Attorney General (see Section 349(b)).  Under the VCPA, a consumer is limited to returning the goods to the seller and receiving a refund.  9 V.S.A. §2451(a). The Attorney General can seek direct restitution and a civil penalty.  9 V.S.A. §2458(b).

For these reasons, dismissal of Plaintiffs' claims for disgorgement of profits is appropriate.  *See e.g. Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 972 (9th Cir. 2010) (argument concerning inability to recover damages as a matter of law is more properly advanced on a motion to dismiss than on a motion to strike).

## V.    A MORE DEFINITE STATEMENT (FRCP 12(E)) IS NECESSARY.

"Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at *4-5 (C.D. Cal. June 30, 2010).  In attacking a "shotgun pleading," a "defendant has an obligation to move for a more definitive statement" under FRCP 12(e).  *Destfino v. Kennedy*, No. CV-F-08-1269 LJO DLB, 2009 WL 63566, at *4 (E.D. Cal. Jan. 8, 2009) *aff'd sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011).  The FAC consists of a hodgepodge of general allegations, including studies and articles unrelated to vaping, and such allegations are not linked to any particular plaintiff. As such, a more definite statement is necessary to the extent the FAC is not dismissed in its entirety.

## VI.   CONCLUSION

For the reasons explained herein, Five Pawns respectfully requests that the Court dismiss each of Plaintiffs' claims under FRCPs 12(b)(2), 12(b)(6), and 9(b).  Alternatively, Five Pawns moves for a more definite statement under FRCP 12(e).

1  DATED:  January 12, 2016

2                              GARCIA RAINEY BLANK & BOWERBANK LLP

3

4                              By      /s/ John E. Bowerbank

5
                                          JOHN E. BOWERBANK
6                                          JEFFREY M. BLANK
7                                          NORMA V. GARCIA
                                           Attorneys for Defendant
8                                          Five Pawns, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT FIVE PAWNS INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT