BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile: 619/234-4599

JANINE L. POLLACK (*pro hac vice*)
pollack@whafh.com
MICHAEL JAFFE (*pro hac vice*)
jaffe@whafh.com
GLORIA KUI MELWANI (*pro hac vice*)
melwani@whafh.com
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:   212/545-4653

[additional counsel on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| DUANE ROBERT GREENE, SHAWN RANDALL THOMAS, JAMES HIRTZEL, ANTHONY SWETALA, and SPRAGUE SIMONDS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIVE PAWNS, INC.,<br><br>Defendant. | Case No. 8:15-cv-01859-DOC-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT FIVE PAWNS, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   March 21, 2016<br><br>Time:   8:30 a.m.<br><br>Courtroom:  9D<br><br>Judge:   Hon. David O. Carter |

# <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page(s)</u></div>

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT .......................................................................................... 3

    A.  Pleading Standards on a Motion To Dismiss ................................. 3

    B.  The Complaint Plausibly Alleges Claims Under the Consumer
        Protection Statutes Of California, Indiana, New York and
        Vermont ......................................................................................... 4

        1.  The FAC Alleges Violations of California Consumer
            Protection Statutes (Counts I-III) ....................................... 4

        2.  The FAC Plausibly Alleges Violations of the Indiana
            Deceptive Consumer Sales Act (Count IV) ......................... 6

        3.  The FAC Plausibly Alleges a Violation of the
            New York General Business Law (Count V) ......................... 7

        4.  The FAC Plausibly Alleges a Violation of the
            Vermont Consumer Protection Act (Count VI) ................... 7

    C.  Defendant's Arguments For Dismissal of the Consume
        Protection Claims Are Unavailing ................................................. 8

        1.  Plaintiffs Have Sufficiently Alleged Article III Standing .......... 8

        2.  Defendant Had A Duty to Disclose ...................................... 10

        3.  The FAC Alleges Conduct that Would Be
            Likely to Deceive A Reasonable Consumer ......................... 13

        4.  Rule 9(b) Has Been Satisfied ............................................... 15

    D.  A Breach of Express Warranty Claim Has Been
        Plausibly Alleged ......................................................................... 19

III. CONCLUSION ..................................................................................... 20

1
2

# TABLE OF AUTHORITIES

## CASES

3
4

*In re 5-hour Energy Mktg. & Sales Practices Litig*, *Litig.*,
No. MDL 13-2438 PSG (PLAX),
2014 WL 531272 (C.D. Cal. Sept. 4, 2014) ...................................................... 10

5

*Aguilar v. Boulder Brands, Inc.*,
No. 3:12 CV 01862 BTM, 2014 WL 4352169 (S.D. Cal. Sept. 2, 2014) ........... 13

6
7

*Arroyo v. TP-Link USA Corp.*,
No. 5:14-cv-04999-EJD, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ........... 20

8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 3-4

9
10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................... 3

11

*Bracco Diagnostics, Inc.*,
627 F. Supp. 2d 384 (D.N.J. 2009) .................................................................. 15

12
13

*In re Brazilian Blowout Litigation*,
CV 10-8452, 2011 U.S. Dist. LEXIS 40158 (C.D. Cal. Apr. 12, 2011) ............. 21

14
15

*Bronson v. Johnson & Johnson*,
No. C 12-04184 CRB,
2013 U.S. Dist. LEXIS 151842 (N.D. Cal. Oct. 22, 2013) ........................... 16, 18

16

*Bruton v. Gerber Products Co.*,
No. CV 12-02412 LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ............... 15

17
18

*Captain & Co. v. Stenberg*,
505 N.E.2d 88 (Ind. Ct. App. 1987) ............................................................. 6, 19

19

*In re Carrier IQ, Inc. Consumer Privacy Litigation*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......................................................*passim*

20
21

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999) ...................................................................................... 5

22

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010) ........................................................... 15

23
24

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App. 4th 663 (Cal. App. 2d Dist. 2006) ............................................... 4

25

*Corbett v. Superior Court*,
101 Cal. App. 4th 649 (Cal. App. 1st Dist. 2002) ............................................ 21

26
27

*Cortina v. Goya Foods, Inc.*,
94 F. Supp. 3d 1174 (S.D. Cal. 2015) .................................................... 2, 4, 11

28

*Destfino v. Kennedy*,
   No. CV-F081269-LJO-DLB, 2009 WL 63566 (E.D. Cal. Jan. 8, 2009) ............ 18

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ......................................................... 12

*Goldsmith v. Allergan, Inc.*,
   No. CV 09-7088 PSG (Ex), 2011 WL 290913 (C.D. Cal. May 25, 2011) ......... 14

*Henderson v. Gruma Corp.*,
   CV 10-04173, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ....... 6, 10

*Johnson v. General Mills, Inc.*,
   No. CV10-00061 CJC (Anx),
   2011 U.S. Dist. LEXIS 154213 (C.D. Cal. Mar. 3, 2011) ................................. 15

*Juarez v. Arcadia Financial, Ltd.*,
   152 Cal. App. 4th 889 (Cal. App. 4th Dist. 2007) ............................................ 21

*Kabbash v. The Jewelry Channel, Inc., U.S.A.*,
   CV 15-4007, 2015 U.S. Dist. LEXIS 150675 (C.D. Cal. Nov. 2, 2015) ............ 10

*Khasin v. Hershey Co.*,
   No. CV 13- 1862 EJD, 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) ............... 15

*Kraus v. Trinity Management Services, Inc.*,
   23 Cal. 4th 116 (2000) .................................................................................... 21

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................... 9

*Marilao v. McDonald's Corp.*,
   632 F. Supp. 2d 1088 (S.D. Cal. 2009) ............................................................ 10

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*,
   6 Cal. Ap. 4th 603 (1992) ................................................................................ 13

*Moore v. Kayport Package Express*,
   885 F.2d 531 (9th Cir. 1989) ........................................................................... 17

*Mui Ho v. Toyota Motor Corp.*,
   No. 12-2672 SC, 2013 WL 1087846 (N.D. Cal. Mar. 14, 2013) ........................ 5

*Naevus International v. AT&T Corp.*,
   283 A.D.2d 171 (1st Dep't 2001) ....................................................................... 7

*Opperman v. Path*,
   87 F. Supp. 3d 1018, 1038 (N.D. Cal. 2014) ...................................................... 9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) .................................................................................... 7, 12

-iv-

*Parent v. MillerCoors LLC,*
   No. 3:15-cv-1204-GPC-WVG,
   2015 U.S. Dist. LEXIS 145071 (S.D. Cal. Oct. 26, 2015) ...................... 16-17, 18

*Paulus v. Bob Lynch Ford, Inc.,*
   139 Cal. App. 4th 659 (Cal. App. 6th Dist. 2006) ................................... 5

*Ries v. Arizona Beverages USA LLC,*
   287 F.R.D. 523 (N.D. Cal. 2012) ........................................................ 11

*Roddenberry v. Roddenberry,*
   44 Cal. App. 4th 634 (Cal. App. 2d Dist. 1996) ................................... 13

*Shahinian v. Kimberly-Clark Corp.,*
   CV 14-8390, 2015 U.S. Dist. LEXIS 92782 (C.D. Cal. July 10, 2015) .............. 11

*Shroyer v. New Cingular Wireless Services, Inc.,*
   622 F.3d 1035 (9th Cir. 2010) ............................................................. 3

*Sollberger v. Wachovia Securities, LLC,*
   No. SACV 09-0766AGANX, 2010 WL 2674456 (C.D. Cal. Jun. 30, 2010) ...... 18

*Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ....................................................................... 20

*In re Toyota Motor Corp.,*
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ................................................ 9

*Vastano v. Killington Valley Real Estate,*
   929 A.2d 720 (Vt. 2007)...................................................... 8, 12, 15, 19

*Vega v. Jones, Day, Reavis & Pogue,*
   121 Cal. App. 4th 282 (Cal. App. 2d Dist. 2004)................................... 13

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ...................................................... 16, 17

*Warner Construction Corp. v. Los Angeles,*
   2 Cal. 3d 285 (1970) .......................................................................... 13

*Williams v. Gerber Products Co.,*
   552 F.3d 934 (9th Cir. 2008) ............................................................... 5

**Statutes & Rules**

Cal. Bus. & Prof. Code
   § 17200 ............................................................................................ 5
   § 17201 ............................................................................................ 5
   § 17203 ............................................................................................ 5
   § 17500 ............................................................................................ 5

California Civ. Code
   § 1770(a) ............................................................................................... 4
   § 1770(a)(5) ......................................................................................... 4
   § 1770(a)(7) ......................................................................................... 4

California Consumer Legal Remedies Act ("CLRA") ....................................... 4, 5

California False Advertising Law ("FAL") ....................................................... 5

California Unfair Competition Law ("UCL") .................................................... 5

Federal Rule of Civil Procedure
   8 ............................................................................................................ 3
   9(b) .................................................................................................... 3, 16
   12(b)(6) ............................................................................................. 3, 15

Federal Trade Commission Act ...................................................................... 11

New York General Business Law § 349 ............................................................ 7

Plaintiffs Duane Robert Greene, Shawn Randall Thomas, James Hirtzel, Anthony Swetala, and Sprauge Simonds (collectively, "Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in Opposition to Defendant Five Pawns, Inc.'s ("Defendant") Motion to Dismiss the First Amended Complaint (the "FAC").

# I.    INTRODUCTION

Through retailers and its own website, Defendant sells some of the most expensive e-liquids for use in electronic cigarettes on the market, touting its products as containing only "top-notch natural ingredients" that are "sourced locally" to make for a "high-end experience." ¶¶ 12, 43.[1]  Unfortunately, that "high-end experience" comes with significant health risks.  Specifically, Defendant's products expose users to extremely hazardous toxins known as diacetyl ("DA") and acetyl propionyl ("AP") at levels that far exceed recommended intake and at levels beyond what has been seen in other e-liquids products on the market.  ¶¶ 8-9, 41-42, 44, 53, 56.

Defendant has known about the dangerous levels of DA and AP in its products, *from its own internal studies*, since no later than September 2014.  ¶¶ 51, 54, 113.  Nonetheless, Defendant has never disclosed this on the packaging of its products or on the website through which online purchases are made.  ¶¶ 11, 26, 61, 64-65, 68.  Indeed, Defendant only released its test results on June 28, 2015, after a retailer conducted its own tests and reported that Defendant's products contained extremely high levels of DA and AP (after Defendant had refused to provide the retailer with Defendant's test results).[2]  And even that "disclosure,"

---

[1]    Paragraphs of the FAC are referred to as "¶ _".

[2]    According to the retailer, known as Cloud 9 Vaping ("Cloud 9"), both its and Defendant's test results showed that if someone inhales 2ml of Defendant's e-liquid "Absolute Pin," he or she will be over the National Institute for Occupational Safety and Health's recommended intake for DA as well as more than 36 times over the recommended intake for AP.  ¶ 56.  After conducting its tests, Cloud 9 removed Defendant's products from its inventory, and other retailers

- 1 -

made on a blog, was surrounded by other statements indicating that no health risks are posed by Defendant's products. ¶¶ 14-15, 51, 66, 68, 0, 74, 76, 82.

Plaintiffs' claims are predicated on Defendant's failure to disclose – on any of packaging or on its website page for online sales -- that its products contained DA and AP at potentially dangerous levels, which caused consumers to pay a higher price than they would have if they had known the truth. Plaintiffs' claims are also based on the representation on its packaging and website concerning nicotine levels and the risks of nicotine use, which was highly misleading in that it indicated that no other toxins were present in the product or other health risks inherent in the product. Based on these allegations, Plaintiffs have plausibly alleged violations of the consumer protection statutes of California, New York, Indiana and Vermont. *See, e.g.*, *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015) (finding defendant had duty to disclose defect in its products); *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174 (S.D. Cal. 2015) (finding duty to disclose potentially dangerous substance in defendant's products).

Defendant's arguments for dismissal are based, in large part, on a fundamental mischaracterization of the FAC. Defendant argues throughout its brief (1) that it made no actual "misrepresentations" about the presence or dangers of DA or AP; (3) that statements that its products contained "top notch ingredients" and that there is no concern with DA or AP levels are not actionable; and (3) that any misleading statements are limited to conversations with two unidentified customers and a podcast host. (*See*, *e.g.*, Def. Mem. at 7-8, 20-22.) This then leads Defendant to a series of strawman arguments, including an argument that Plaintiffs lack Article III standing because their injuries are not specifically

---

soon followed suit. ¶¶ 15, 48, 50, 56. Moreover, on June 30, 2015, the Electronic Cigarette Trade Association of Canada ("ECTA") notified its members, vendors of e-liquids, to ***cease sales of Defendant's e-liquids***. ¶¶ 15, 57, 59. Another trade association in the United Kingdom took similar measures. ¶ 59.

traceable to any of Defendant's statements, and an argument that their claims have not been sufficiently pled under Rule 9(b), and an argument that none of their statements could have possibly been misleading.  However, while the statements made by Defendant may be relevant to proof regarding reasonable reliance and materiality and knowledge at a later stage in the case, the claims in the FAC are not based on such statements. Rather, the claims in the FAC are predicated on omissions in the sale of Defendant's products, which were underscored by misleading representations concerning nicotine in those products.  When Defendant finally addresses those actual claims (Def. Mem. at 17-23), Defendant's arguments are no more persuasive.  Defendant argues that it had no legal duty to disclose and that the omissions could not have mislead consumers.  But, as discussed below, the applicable law is otherwise.

## II.        ARGUMENT

### A.        Pleading Standards on a Motion To Dismiss

A court may grant a dismissal under Rule 12(b)(6) only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2011)).  To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Cor. V. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  So long as the plaintiff alleges facts to support a theory that is facially "plausible," the court should deny a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Cortina*, 94 F.Supp.3d at 1191-93 (S.D. Cal. 2015) (finding that plaintiffs adequately pled plausible claims of UCL, FAL and CLRA violations based on allegations that defendant failed to disclose that its products contained carcinogens).  In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B.    The Complaint Plausibly Alleges Claims Under the Consumer Protection Statutes Of California, Indiana, New York and Vermont**

**1.    The FAC Alleges Violations of California Consumer Protection Statutes (Counts I-III)**

The CLRA prohibits unfair methods of competition and unfair or deceptive acts or practices likely to mislead a reasonable consumer undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer. *See* Cal. Civ. Code § 1770(a). Section 1770(a)(5) prohibits "[r]epresenting that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." Section 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."

The CLRA is "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Conduct that is "likely to mislead a reasonable consumer" violates the CLRA.  *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 680 (Cal. App. 2006). A "reasonable consumer" is an "ordinary consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture . . . ."  *Id.* (citing consumer protection treatise).

Under the CLRA, deceptive conduct can include deceptive *omissions* as well as deceptive representations.  *See Mui Ho v. Toyota Motor Corp.*, No. 12-2672 SC, 2013 WL 1087846, at *6 (N.D. Cal. Mar. 14, 2013).  Moreover, "[w]ether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."  *Williams v. Gerber Prods. Co.*, 551 F.3d 934, 938 (9th Cir. 2008).

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of

- 4 -

competent jurisdiction.  CAL. BUS. & PROF. CODE §§ 17201, 17203.  "Unfair competition" includes "any unlawful, unfair or fraudulent business act of practice and unfair, deceptive, untrue or misleading advertising." *Id.*, § 17200.  The California Supreme Court has construed "unfair competition" broadly. *See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). *See also Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 676-77 (Cal. App. 6th Dist. 2006) ("The purpose of the UCL 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services . . . .'  Thus, the scope of the UCL (Bus. & Prof. Code, § 17200 *et seq.*) is 'broad.'  It 'covers a wide range of conduct'" (citations and footnote omitted)).

The FAL prohibits any statement made in connection with the sale of goods that is known or reasonably should have been known to be untrue or misleading. *See* Cal. Bus. & Prof. Code § 17500.  A violation of the FAL necessarily violates the UCL. *See Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008).

While the CLRA, UCL and FAL require that the plaintiff "relied" on the deceptive practice, "an inference of reliance arises when it is shown that a reasonable person would attach importance to a misrepresentation's existence or nonexistence in determining his choice of action." *Henderson v, Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, at *8 (C. D. Cal. Apr. 11, 2011) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 328 (2009)) (finding that plaintiffs sufficiently alleged reliance under the CLRA, UCL and FAL because they read and relied upon defendant's products' misleading labels each time they made their purchases and would not have paid as much or purchased product at all if they knew the representations were not true).

In Counts I-III, the FAC alleges that Defendant failed to disclose that its products contained dangerous levels of DA and AP, and that by representing its nicotine levels it mislead a reasonable consumer into believing that this was the only potential danger in connection with its products.  As discussed below, courts

have consistently upheld that these types of allegations as sufficient to withstand a motion to dismiss.

### 2.      The FAC Plausibly Alleges Violations of the Indiana Deceptive Consumer Sales Act (Count IV)

The Indiana Deceptive Consumer Sales Practices Act prohibits acts or representations made orally or in writing by a supplier that a consumer transaction has "sponsorship, approval, performance, characteristics, accessories, uses or benefits it does not have which the supplier knows or should reasonably know it does not have. . . ." I.C. 24-5-0.5-3. This section is to be liberally construed to protect the consumer. I.C. 24-5-0.5-1; *Captain & Co. v. Stenberg*, 505 N.E.2d 88, 95 (Ind. Ct. App. 1987) (plaintiffs presented sufficient evidence of defendants' violation of the Act because they knew or reasonably should have known that reconstruction of a home was not economically feasible but failed to disclose this to plaintiffs in order to induce them to go forward with the transaction).

Defendant's failure to disclose the presence of DA and AP in its products, even though Defendant specifically knew that its products contained those toxins at dangerous levels, plausibly alleges a violation of the IDCSPA.

Defendant argues that the IDCSPA does not apply to non-disclosures. Def. Mem. at 19 (*citing Lawson v. Hale*, 902 N.E.2d 267 (Ind. Ct. App. 2009). However, *the statute was amended in 2014* to expressly prohibits the commission of an "unfair, abusive, or deceptive act, *omission*, or practice in connection with a consumer transaction." Ind. Code Ann. § 24-5-0.5-3(a). In addition, failure to disclose a material fact is a basis for a common law fraud claim. *Id.* at 275-276 (failure to disclose a cracked engine block is a material fact that is a "textbook case of fraud"). Defendant also cites *Dicuio v. Brother Int'l Corp.*, No. CIV A. 111447 (FLW (TJB), 2015 WL 3403144 at *27 (D.N.J. May 27, 2015), for the same assertion. But *Dicuio* specifically noted that the ICDSPA was amended in 2014 "to provide liability for omissions." *Id.*

### 3. The FAC Plausibly Alleges a Violation of the New York General Business Law (Count V)

New York General Business Law § 349 has three elements: 1) the challenged act or practice was consumer-oriented; 2) it was misleading in a material way; and 3) the plaintiff suffered injury as a result of the deceptive act. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26 (1995) (denying motion for summary judgment where plaintiffs alleged bank failed to disclose information); *Naevus Intl. v. AT&T Corp.*, 283 A.D.2d 171, 173-74 (1st Dep't 2001) (denying motion dismiss claim under GBL § 349 alleging defendant made falsely advertised its service and concealed material information about its reliability, which consumers relied upon, and failed to credit subscribers for making repeat calls after involuntary disconnections). The representation or omission must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers*, 85 N.Y.2d at 26. While reliance and intent to defraud or mislead are not elements of a section 349 claim, a plaintiff must show that the defendant engaged in a material deceptive act or practice that caused actual harm. *Id.*

Under the GBL, a duty to disclose arises when "a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty…." *Woods v. Maytag Co.*, No. 10-0559-ADS-WDW, 2010 U.S. Dist. LEXIS 116596, at *43 (E.D.N.Y. Nov. 2, 2010). Here, the FAC alleges that Defendants knew that its products contained DA and AP, as evidenced by its own testing for DA and AP levels on September 2014. The presence of these hazardous chemicals is something a reasonable consumer would want to know but could not discover without difficulty, *i.e.*, conducting independent and costly testing of the Five Pawns e-liquids. (¶¶ 153-158).

### 4. The FAC Plausibly Alleges a Violation of the Vermont Consumer Protection Act (Count VI)

The Vermont Consumer Protection Act prohibits "unfair or deceptive acts or practices in commerce" and requires allegations of: (1) a representation, practice or

omission that is likely to mislead plaintiffs; (2) that a plaintiff interpreted the message reasonably under the circumstances; and (3) misleading effects that were "material," that is, "likely to affect [their] conduct or decision with regard to a product." *See Vastano v. Killington Valley Real Estate*, 929 A.2d 720, 722-23 (Vt. 2007) (citing *Greene v. Stevens Gas Serv.*, 858 A.2d 238 (Vt. 2004) and 9 V.S.A. § 2453(a)-(b)). The question of whether an omission is material is "generally measured by an objective standard, premised on what a reasonable person would regard as important in making a decision." *Id.* (ruling in favor of plaintiffs on their claim under the Act when defendant agent did not disclose to them material information regarding an underground gasoline leak and ongoing monitoring when they purchased their home).

As stated above, the FAC alleges a material omission, namely, the dangerous levels of AP and DA, the presence of which is likely to affect consumers' conduct or decision to purchase the e-liquids, which gives rise to liability under Vermont law. (¶¶ 166-168).

## C.   Defendant's Arguments For Dismissal of the Consumer Protection Claims Are Unavailing

### 1.   Plaintiffs Have Sufficiently Alleged Article III Standing

As a threshold matter, Defendant argues that Plaintiffs have not alleged any "specific links between [the] alleged misrepresentations/omissions and their alleged injuries" (Def. Mem. at 7-8), and therefore lack Article III standing. Defendant's argument is misguided and is based on a mischaracterization of Plaintiffs' allegations. Plaintiffs do not seek to trace their injury to representations made the various third parties or specific statements made on Defendant's website. Rather, Plaintiffs allege that they were injured because they would not have purchased Defendant's products or would not have paid the premium price for them if they had known that those products contained dangerous levels of DA and AP. ¶¶ 18, 26. The FAC therefore alleges an injury that is not only "concrete and particularized," but which is "fairly traceable" to Defendant.

No more is required for Article III standing.  Indeed, on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  *See*, *e.g.*, *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1038 (N.D. Cal. 2014) (finding that plaintiffs had standing where they alleged that Apple mislead them through its advertising and failure to disclose material information that they relied upon in overpaying for products). Furthermore, where a plaintiff plausibly pleads a safety defect, standing is sufficiently established by the economic losses resulting from overpayment for the defective product.  *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1161-65 (C.D. Cal. 2011) (holding that plaintiffs had standing where Toyota failed to disclose a safety defect, even though the defect had not yet manifested, based on the theory that they would not have purchased the vehicles or would have paid less for them if they had been aware of the defect); *Henderson v. Gruma*, No. CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077, at *18-19 (C.D. Cal. Apr. 11, 2011) (finding plaintiffs satisfied the standing required by Article III, CLRA, UCL and FAL where they alleged they relied on misleading labels on products that failed to disclose trans fat and would not have purchased the products but for that misrepresentation); *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1088, 1023 (S.D. Cal. 2009) (a plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has, *inter alia*, "expended money due to the defendant's acts of unfair competition.")

Defendants also argue that Plaintiffs do not have standing to enjoin future conduct since they are now aware of the alleged deception and can no longer personally be harmed.  (Def. Mem. at 8-9.)  For this theory, Defendant relies on *In re 5-hour Energy Mktg. & Sales Practices Litig*, Litig. No. MDL 13-2438 PSG (PLAX) 2014 WL 53127 (C.D. Cal. Sept. 4, 2014), but even that case recognizes that numerous other courts have held that a class action plaintiff need not continue to personally be subject to harm in order to seek injunctive relief for the putative class.

1

2

Indeed, in *Kabbash v. The Jewelry Channel, Inc., U.S.A.*, 2015 U.S. Dist.
LEXIS 150675 (C.D. Cal. Nov. 2, 2015), the court stated:

3

4

5

6

7

8

9

> While it implausible to believe that Plaintiffs will
> continue to purchase products from Defendant so long as
> it continues the challenged conduct, to construe that as a
> lack of redressability here would render California
> consumer protection laws ineffectual . . . This point rings
> especially true in class actions, in which plaintiffs seek to
> represent broader interests than [their] own.

10

11

12

13

14

15

*Id.* at 16-17 (citations omitted).  *See also Henderson*, 2011 U.S. Dist. LEXIS
41077, at \*19-20 ("If the Court were to construe Article III standing for FAL and
UCL claims as narrowly as the Defendant advocates, federal courts would be
precluded from enjoining false advertising under California consumer protection
laws . . . ."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533-34 (N.D.
Cal. 2012) (plaintiffs have standing for injunctive relief where defendants'
misrepresentations continue and other plaintiffs may be misled).

16

### 2.    Defendant Had A Duty to Disclose

17

18

19

Defendant's main argument for dismissal is that it had no legal duty to
disclose the presence of AP and DA and the potential health risks posed by those
toxins.  (Def. Mem. at 17-20.)  Defendant's argument is erroneous.

20

21

22

23

24

25

26

27

28

A duty to disclose exists in four different circumstances: 1) when the
defendant is the plaintiff's fiduciary; 2) when the defendant has exclusive material
facts not known or reasonably accessible to the plaintiff; 3) when the defendant
actively conceals a material fact from the plaintiff; *or* 4) when the defendant makes
partial representations that are misleading because some other material fact has not
been disclosed.  *In re Carrier IQ*, 78 F. Supp. 3d at 1112-14 (finding that plaintiffs
sufficiently allege material omission regarding Carrier IQ Software where
defendants' had exclusive knowledge of material fact giving rise to duty to
disclose).  *See also Cortina v. Goya Foods, Inc*. 94 F. Supp. 3d 1175, 1192-93

(S.D. Cal. 2015) (denying defendant's motion to dismiss claims under the UCL, FAL and CLRA, based on plaintiff's allegations that defendant had a duty to disclose potential dangerous substance in their beverages and warn of its health risks); *Shahinian v. Kimberly-Clark Corp.*, 2015 U.S. Dist. LEXIS 92782, at *20 (C.D. Cal. July 10, 2015) (denying a motion to dismiss where it was alleged that defendant knew of test results but "took affirmative steps to conceal, not disclose and cover-up their knowledge of the true condition of the [product] . . . and purposely avoid and/or delay the disclosure of the truth.")

Central to the analysis of whether a defendant has a duty to disclose is whether the undisclosed information was "material" to a consumer. An omission is considered material if it would cause a reasonable consumer to behave differently if he or she was aware of it. *Carrier IQ*, 78 F. Supp. 3d at 1112, 1114. Under Vermont and New York law, omissions are presumptively material "if they significantly involve *health*, safety, or other areas with which the reasonable consumer would be concerned." *See Vastano*, 182 Vt. at 552; *Oswego*, 85 N.Y.2d at 26 (upholding plaintiffs' claim finding omissions were material regarding bank's interest and were in exclusive knowledge of bank).

Here, Plaintiffs allege that Defendant had a duty to disclose the presence of a dangerous substance and warn of its potential health risks, based on its exclusive knowledge of the presence of AP and DA and the significant health risks to the user. ¶¶ 14, 26, 54, 113. *See, e.g.*, *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096-97 (N.D. Cal. 2007) (finding that defendant had exclusive knowledge of a product defect because it had access to significant data that was not available to the public, and because "customers only became aware of the problem if they actually experienced it first-hand"). Defendant also had a duty to disclose because it actively concealed the presence of AP and DA and the significant health risks to users. ¶¶ 52-54, 70, 71, 74, 82, 83. Indeed, for almost a year, Defendant failed to disclose its own test results indicating that its products contained dangerous levels of AP and DA, and only did so after Cloud 9 conducted its own tests and publicly

1  released the results. ¶¶ 48, 50, 51, 54.

2         The materiality of the omission has also been sufficiently alleged.  Indeed,

3  as alleged, the presence of DA and AP in Defendant's products was so important to

4  retailers that they refused to sell them to their customers, and so important to trade

5  associations that they notified members to stop selling Defendant's products.

6         In addition, California recognizes that making "partial representations" can

7  give rise to a duty to disclose when the defendant "does not disclose facts which

8  materially qualify the facts disclosed, or which render his disclosure likely to

9  mislead."   *Warner Constr. Corp.*, 2 Cal 3d 285, 294 (1970); *Roddenberry v.

10 Roddenberry*, 44 Cal. App. 4th 634, 666 (1996).  In other words, a defendant may

11 not "suppress or conceal any facts within his knowledge which materially qualify

12 those stated." *See Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. Ap. 4th 603,

13 613 (1992). *See also Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282,

14 292 (2004).

15        The recent holding of Judge Morrow in *In re NJOY, Inc. Consumer Class

16 Action Litig.*, No. 14-00428-MMM (JEMX) (C.D. Cal. May 27, 2015) (attached

17 hereto as Exhibit A) ("*NJOY* Order"), is instructive.   Judge Morrow held that

18 because the defendant disclosed the fact that its e-cigarettes contained nicotine, and

19 listed the health and safety-related risks associated with using nicotine (disclosures

20 that are literally true), the packaging was deceptive in that it "implied that those are

21 the only significant health-related risks related to NJOY E-Cigarettes." *Id.* at *34.

22 Thus, "[a] reasonable jury could find that disclosing nicotine-related risks while

23 not disclosing other health-related risks was a half truth that could mislead a

24 reasonable consumer.  Consequently, plaintiffs have adequately alleged a partial

25 representation giving rise to a duty to dispose." *Id.* (citing *Goldsmith v. Allergan,

26 Inc.,* No. CV 09-7088 PSG (Ex), 2011 WL 2909313, at *5 (C.D. Cal. May 25,

27 2011)).  *See also Aguilar v. Boulder Brands, Inc.*, No. 3:12 CV 01862 BTM, 2014

28 WL 4352169, at *4 (S.D. Cal. Sept. 2, 2014) ("Even if Plaintiff has abandoned

literal falsity in favor of implied misrepresentation and deception in her proposed

- 12 -

Second Amended Complaint, such claims still fall within the ambit of the UCL and CLRA" (citing *Lima v. Gateway*, 710 F. Supp. 2d 1000, 1008 (C.D. Cal. 2010)) .[3] Here, the partial representation at issues is the product packaging that states that there are certain risks associated with the produce because it contains nicotine. This half-truth implied that this was the sole toxin in Defendant's product and the sole health risk. *See Goldsmith v. Allergan, Inc.*, No. CV 09-7088 PSG (Ex), 2011 WL 290913, at *5 (C.D. Cal. May 25, 2011) (representations were "literal[ly] true, but "withheld facts that 'materially qualified' such representations and that a reasonable physician would want to know.")

### 3. The FAC Alleges Conduct that Would Be Likely to Deceive A Reasonable Consumer

Defendant also argues that Plaintiffs fail to allege conduct that is likely to deceive reasonable consumers. (Def. Mem. at 21-22.) However, here Plaintiffs plausibly allege that the omitted information, together with representations concerning the quality of Defendant's products and that the products contained nicotine, deceived a reasonable consumer into thinking that no health risks were posed by the products other than those from nicotine.  ¶¶ 18, 26, 62-88.

Whether Plaintiffs were actually deceived by Defendant's omissions and misleading statements is a question of fact that cannot be determined on a motion to dismiss. *See*, *e.g.*, *Johnson v. General Mills, Inc.*, No. CV10-00061 CJC (Anx), 2011 U.S. Dist. LEXIS 154213, at *4-6 (C.D. Cal. Mar. 3, 2011) (denying summary  judgment finding triable issue of fact on whether advertising campaign implying that Yo-Plus promoted digestive health more than other yogurt was likely

---

[3]  In *NJOY*, the plaintiffs also alleged that a representation on NJOY's website stated that the substances in its e-cigarettes were safe *for use in food*, which misled consumers to believe that the substances were also safe when inhaled since an e-cigarette product is obviously designed to be inhaled.  The *NJOY* court held that this "safe for use in food" representation could mislead a reasonable consumer. *Id.* at *35-36.  Here, Defendants made similar representations about DA and AP (¶¶ 71, 72, 76).  Whether or not those representations rise to the level of an actionable claim, they will be part of the mix of facts with respect to issues of reliance, materiality and knowledge at a later stage of the litigation.

- 13 -

to deceive the public).  Indeed, a claim may only be dismissed under Rule 12(b)(6) if there is no possibility that a consumer would likely be deceived.  *See*, *e.g.*, *Bruton v. Gerber Products Co.*, No. CV 12-02412 LHK, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014) ("[T]he Court cannot conclude as a matter of law that no consumer would rely on Gerber's Health' label statements.  The issues of reliance and how Gerber's statements would be understood by a reasonable consumer are questions of act ill-suited for resolution on a motion to dismiss.").  *See also Khasin v. Hershey Co.*, No. CV 13- 1862 EJD, 2012 WL 5471153, *7 (N.D. Cal. Nov. 9, 2012) ("the issues Defendant raise[s] ultimately involve questions of act as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b) motion").  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 1125-26 (N.D. Cal. 2010) (whether statement such as "wholesome" and "smart choices made easy" constituted puffery was not amenable to resolution on a motion to dismiss).

Moreover, because health and safety risks are inherently material to consumers, courts find "allegedly false claims that explicitly or implicitly address product attributes of importance to consumers . . . ."  *Bracco Diagnostics, Inc.*, 627 F. Supp. 2d 384, 464 (D.N.J. 2009)) (citing *Castrol v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)).  *See also Vastano*, 182 Vt. at 552 (recognizing health and safety representations and omissions as material).

Defendant cites three cases (Def. Mem. at 17-18) in support of its argument that it had no legal duty to disclose the DA and AP content in the products and the significant health risks related thereto.  But in those cases, the court merely found that the alleged omission was not sufficiently material.  In *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), the court did not find the alleged defect that caused dislodgement of an oil seal over time to be sufficiently material so as to require disclosure, and pointedly stated that it did not want to open the door to a theory of liability that products should last forever.  In *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 988 (2008), the court merely held that

- 14 -

disclosure of an available discount was not required, particularly since the discount was not expected by a consumer in the first place.  In *United Food Commercial Workers Cent. Pennsylvania Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255 (9th Cir. 2010), the court merely found that two clinical trials were not of sufficient significance so as to require disclosure.  These cases are therefore distinguishable from the instant case, in which the presence of DA and AP are of extreme importance to consumers.  Moreover, the cases are contrary to settled law holding that nondisclosures are actionable if the concealed information would be material to a reasonable consumer.  In addition to the cases cited above, *see, e.g., Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002).

### 4.    Rule 9(b) Has Been Satisfied

Under Rule 9(b), which applies to claims alleging fraud, a complaint must plead with specificity "the who, what, when, where," of the misconduct, and set forth what is false and misleading about a statement.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  *See also Bronson v. Johnson & Johnson*, No. C 12-04184 CRB, 2013 U.S. Dist. LEXIS 151842, at *18-21 (N.D. Cal. Oct. 22, 2013) (finding that complaint satisfied Rule 9(b) pleading standard when plaintiffs alleged they relied on the package when purchasing defendant's product, and set forth what was misleading and why); *Parent v. MillerCoors LLC*, No. 3:15-cv-1204-GPC-WVG, 2015 U.S. Dist. LEXIS 145071, at *30 (S.D. Cal. Oct. 26, 2015) (citing *Clancy v. The Bromley Tea Company*, 308 F.R.D. 564 (N.D. Cal. 2013)) (complaint satisfied Rule 9(b) where it alleged that the plaintiff was misled into believing Blue Moon is a craft beer by omitting any reference to defendant's name on the Blue Moon website and describing the beer as "artfully crafted").

A pleading satisfies Rule 9(b) when it is "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess*, 317 F.3d at 1106

1   (internal quotation marks and citation omitted); *accord Moore*, 885 F.2d at 540

2   ("A pleading is sufficient under rule 9(b) if it identifies the circumstances

3   constituting fraud so that a defendant can prepare an adequate answer from the

4   allegations."). In a case alleging omissions, it is sufficient for plaintiff to plead that

5   plaintiffs would not have purchased a product if the disclosure were made. *In re*

6   *Carrier IQ,* 78 F. Supp. 3d at 1112-1113.[4]

7           Defendant argues that the FAC fails to satisfy Rule 9(b) because it does not

8   allege, *inter alia*, what deceptive statements they relied on, or when Plaintiffs made

9   their purchases, or how Plaintiffs would have acted differently if they had known

10  the information. (Def. Mem. at 16.) Defendant's argument, however, is simply

11  based on a mischaracterization of the FAC. Plaintiffs' claims are based on the

12  omission of the presence and risk of DA and AP from their packing and website,

13  not representations made to scattered individuals in scattered places. In connection

14  with those actual claims, the FAC unquestionably provides notice to Defendant of

15  the "who, what, when, where and how" of the claims. The allegations of the FAC

16  identify that the packaging, inserts to the packaging and shipping materials, as well

17  as Defendant's website, all of which failed to disclose the presence of DA and AP

18  or any warning of their health risks. ¶¶ 20-31, 61-76. The FAC further alleges that

19  Plaintiffs would not have bought Defendant's products or paid as much for them if

20  they had known the truth about the dangerous levels of DA and AP contained in

21  them, thereby identifying *how* Plaintiffs were damaged. ¶ 26. These allegations

22  easily meet the heightened pleading requirements of Rule 9(b). *See, i.e.*, *Bronson*

23  *v. Johnson & Johnson, Inc.,* No. C 12-04184 CRB, 2013 WL 5731817, at *6-7

24  (N.D. Cal. Oct. 22, 2013) (upholding under Rule 9(b) claims of misrepresentations

25  based on plaintiffs' reliance on defendant's website and product packaging);

26  *Parent v. MillerCoors LLC*, No. 3:15-cv-1204-GPC-WVG, 2015 WL 6455752, at

---

[4]        It is not altogether clear whether Rule 9(b) applies to omission-based claims, such as the claims here. *See Gold v. Lumbar Liquidators, Inc.*, 2015 U.S. Dist. LEXIS 165264, at *30-31 (N.D. Cal. Nov. 30, 2015).

*11 (S.D. Cal. Oct. 26, 2015) (upholding claims alleging specificity under Rule 9(b) for failure to disclose material information).[5]

The numerous Rule 9(b) cases cited by Defendant (Def. Mem. at 13-15) involved allegations of *misrepresentations* that caused injury to the Plaintiff, *Tait* (plaintiffs did not allege when and if they viewed defendant's website in making their purchase and the products operating instructions); *Kearns* (plaintiff did not specify when and what advertisements he relied upon in making his purchase); *Actimmune* (involved a third party doctor's representations about drug for patients to purchase); *In re iPhone 4S* (plaintiffs failed to allege the advertisements they relied on in making their purchases); *In re Hydroxycut* (plaintiffs failed to allege they relied on advertising claims and when they made their purchases). By contrast, Plaintiffs allege the precise "who, what, where and when" relating to their purchases, and the precise "how" in that they relied to their detriment and would not purchase Defendant's products or would have paid less for them had they known the truth about them.

Defendant's Rule 9(b) argument is really that reliance has not been "plausibly" alleged, not that they do not have sufficient "notice" under Rule 9(b).

---

[5]     In the same vein as their Rule 9(b) argument, Defendants argue that they are entitled to a  more definite statement under Rule 12(e) (Def. Mem. at 25.) However, Defendant does not point to any area that requires further detail so as to enable it to respond to the claims.  Defendant asserts that the FAC consists of allegations relating to various studies and articles that are "not linked to any particular plaintiff," but such linkage is not necessary.  The cases they cite are inappropriate.  In *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, *4-5 (C.D. Cal. Jun. 30, 2010), the complaint not only suffered from procedural issues but lumped together numerous defendants without any attempt to specify their misconduct.  In *Destfino v. Kennedy*, No. CV-F081269-LJO-DLB, 2009 WL 63566, at *4 (E.D. Cal. Jan. 8, 2009), multiple misrepresentations were allegedly made by different defendants and there was likewise no identification as to who said what.  In contrast, the allegations here relate to one defendant and specifically identify the packaging and the website as the source of the actionable omissions..

Where the omission or misrepresentation is material, there is a presumption or at least an inference of reliance. *See*, *e.g.*, *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997); *Vastano*, 929 A.2d at 722-23 (Vermont); *Oswego Laborers*, 85 N.Y.2d at 26 (New York); *Captain*, 505 N.E.2d at 95 (Indiana). "[R]eliance can be proved in a fraudulent omission case by establishing that had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently." *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F.Supp.3d 1051, 1114-15 (N.D. Cal. 2015) (citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F.Supp.2d 942, 988 (S.D. Cal. 2014) (finding that plaintiffs sufficiently alleged Sony omitted material information about security of its products that should have been disclosed that caused them to lose money or property as a result)).[6]  Moreover, in order to show reliance, a plaintiff need not prove that the omission was the sole cause of the injury. *See*, *e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).  Finally, courts hold that whether or not reliance was justified is a question of fact for the fact finder to decide. *See Chapman v. Skype Inc.*, 220 Cal App. 4th 217, 231, 162 Cal. Rptr. 3d 863 (2013) (citing *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239, 44 Cal. Rptr. 2d 352, 900 P.2d 601 (1995) ("Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is a question of fact.")).

///

---

[6]     In a situation involving the advertising of tobacco cigarettes that concealed the health risks of its products despite the growing consensus linking cigarette smoking and lung cancer, the California Supreme Court addressed the issue of reliance.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327-28 (2009). The Court held that a plaintiff was not required to plead and prove individualized reliance on specific misrepresentations where they were part of an extensive and long-term advertising campaign. *Id*. at 328.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.     A Breach of Express Warranty Claim Has Been Plausibly Alleged**

Under California law, a breach of express warranty claim is stated where it is alleged that: 1) a seller made an affirmation of fact or a promise relating to goods or a description of goods; 2) the statement of the seller was part of the basis of the bargain; and 3) the warranty was breached. *See Arroyo v. TP-Link USA Corp.*, No. 5:14-cv-04999-EJD, 2015 WL 5698752, at *10-11 (N.D. Cal. Sept. 29, 2015).

Here, Plaintiffs' claim for breach of express warranty is based on Defendant's statement that its products contained only natural ingredients, as well as its statements that they contained nicotine and their only health risk was from that and from inhaling non-vaporized substances.  These were, indeed, "specific and unequivocal statements," and were the basis of the bargain because Plaintiffs would not have purchased Defendant's products or would not have paid as much for them if they had known of their dangerous risks posed by DA and AP.  ¶¶ 18, 26, 171-76.[7]  *See In re Brazilian Blowout Litig.*, 2011 U.S. Dist. LEXIS 40158 (C.D. Cal. Apr. 12, 2011) (upholding an express warranty claim where the defendant did not reveal that the product contained a dangerous substance).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[7]     Defendant complains that it did not receive sufficient pre-litigation notice for the breach of warranty claim, as is required under the law of each of the four states (Def. Mem. at 23).  However, on July 9, 2015, immediately after the publication of the Cloud 9 test results, Plaintiffs made a pre-litigation demand and later provided Defendant with a draft complaint (which included the breach of warranty claim).  ¶¶ 77, 87, 103, 147.

1    **III.   CONCLUSION**

2         For all of the foregoing reasons, Plaintiffs respectfully request that the Court

3    deny Defendant's motion to dismiss in its entirety.[8]

4    DATED:  February 22, 2016          **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ LLP**
5

6                              By:      ___/s/ Rachele R. Rickert___
                                        RACHELE R. RICKERT
7
                                        BETSY C. MANIFOLD
8                                       manifold@whafh.com
                                        RACHELE R. RICKERT
9                                       rickert@whafh.com
                                        BRITTANY N. DEJONG
10                                      dejong@whafh.com
                                        750 B Street, Suite 2770
11                                      San Diego, CA 92101
                                        Telephone:  619/239-4599
12                                      Facsimile:   619/234-4599

13                                      **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ LLP**
14                                      JANINE L. POLLACK (*pro hac vice*)
                                        pollack@whafh.com
15                                      MICHAEL JAFFE (*pro hac vice*)
                                        jaffe@whafh.com
16                                      GLORIA KUI MELWANI (*pro hac vice*)
                                        melwani@whafh.com
17                                      270 Madison Avenue
                                        New York, New York 10016
18                                      Telephone:  212/545-4600
                                        Facsimile:  212/545-4653
19
20                                      **ANDERSEN SLEATER LLC**

---

21    [8]    In their "Prayer for Relief," Plaintiffs seek the remedy of disgorgement to

22    the extent permitted by law.   While Defendants seek to dismiss this remedy,

23    Plaintiff submits that the extent to which it is available should await a later stage in

      the proceedings.   The remedy of restitutionary disgorgement appears to be

24    available, at least in California.   *See Juarez v. Arcadia Financial, Ltd.*, 152

25    Cal. App. 4th 889, 915 (2007) (recognizing that disgorgement is available to

      plaintiff for "any profits [the defendant] may have gained through interest or

26    earnings on the plaintiffs' money that [the defendant] wrongfully withheld");

27    *Kraus v. Trinity Mgt. Services, Inc.*, 23 Cal. 4th 116, 137 (2000) ("the Legislature .

      . . has authorized disgorgement into a fluid recovery fund in class actions");

28    *Corbett v. Superior Court*, 101 Cal. App. 4th 649, 655 (2002) (same).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JESSICA J. SLEATER (*pro hac vice*)
jessica@andersensleater.com
1345 Avenue of the Americas
2nd Floor, Suite 2100
New York, New York 10105
Telephone: 212/878-3697

*Counsel for Plaintiffs Duane Robert Greene,*
*Shawn Randall Thomas, James Hirtzel,*
*Anthony Swetala and Dr. Sprague Simonds*

785425/9