# EXHIBIT A

1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          CENTRAL DISTRICT OF CALIFORNIA

9

10                                                    )  CASE NO. CV 14-00428 MMM(JEMx)
                                                      )
11                                                    )
      IN RE NJOY, INC. CONSUMER CLASS                 )  ORDER GRANTING IN PART AND
12    ACTION LITIGATION                               )  DENYING IN PART DEFENDANT'S
                                                      )  MOTION TO DISMISS
13                                                    )
                                                      )
14                                                    )
                                                      )
15    _____        )

16

17         On January 17, 2014, Ben Z. Halberstam filed this putative class action on his own behalf and

18    on behalf of a class of similarly situated Californians against NJOY, Inc., and Sottera, Inc. (collectively,

19    "NJOY").[1]  On April 29, 2014, pursuant to the parties' stipulation,[2] the court consolidated Halberstam's

20    action with *Eric McGovern v. NJOY, Inc., et al.*, Case No. CV14-00427 MMM (RZx).[3]  Halberstam and

21    McGovern filed a first amended consolidated complaint on May 30, 2014.[4]  Thereafter, on July 9, 2014,

22    they filed a second amended consolidated complaint, joining Kathryn Thomas and Paula Kolano as

23    _____

24         [1]Complaint, Docket No. 1 (Jan. 17, 2014).

25         [2]Joint Stipulation to Consolidate Cases as to 14-00428, 14-00427, Docket No. 41 (Apr. 25,
26    2014).

27         [3]Order Consolidating Actions, Docket No. 50 (Apr. 29, 2014).

28         [4]First Amended Consolidated Complaint ("FAC"), Docket No. 58 (May 30, 2014).

named plaintiffs (collectively "plaintiffs").[5]  Thomas seeks to represent a Florida class, while Kolano seeks to represent a New York class.  On August 11, 2014, NJOY filed a motion to dismiss the second amended complaint,[6] which the court granted on October 20, 2014.[7]  On November 10, 2014, plaintiffs filed a third amended consolidated complaint omitting certain claims and dropping Kolano as a plaintiff.[8]  On December 10, 2014, NJOY filed a motion to dismiss the third amended complaint,[9] which plaintiffs oppose.[10]

On March 23, 2015, the court held a hearing on NJOY's motion to dismiss the third amended complaint, and took the matter under submission.  On May 20, 2015, while the motion to dismiss was still under submission, plaintiff Eric McGovern filed a notice of voluntary dismissal of his individual claims pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.[11]

# I.  FACTUAL BACKGROUND

## A.    Background Concerning Electronic Cigarettes

An electronic cigarette ("e-cigarette") is a device that simulates a traditional tobacco cigarette.[12] E-cigarettes use a battery-operated heating mechanism to convert a cartridge containing glycerin, glycol, natural and artificial flavors, and usually nicotine, into vapor, which the user inhales as he or she would

---

[5]Second Amended Consolidated Complaint ("SAC"), Docket No. 66 (July 9, 2014).

[6]Motion to Dismiss Second Amended Consolidated Complaint, Docket No. 72 (Aug. 11, 2014).

[7]Order Granting Defendant's Motion to Dismiss, Docket No. 81 (Oct 20, 2014).

[8]Third Amended Consolidated Complaint ("TAC"), Docket No. 82 (Nov. 10, 2014).

[9]Motion to Dismiss Third Amended Consolidated Complaint ("Motion"), Docket No. 84 (Dec. 10, 2014) at 1.

[10]Opposition to Motion to Dismiss Third Amended Consolidated Complaint ("Opposition"), Docket No. 98 (Feb. 13, 2015).

[11]Notice of Dismissal by Eric McGovern, Docket No. 114 (May 20, 2015).

[12]TAC, ¶ 25.

a traditional cigarette.[13]  Since 2011, e-cigarettes have grown in popularity among smokers in the United States.[14]  NJOY is the most popular brand of e-cigarette in the nation, and has captured more than forty percent of the e-cigarette market.[15]  This action concerns NJOY e-cigarettes marketed under the trade names "NJOY," "NJOY Kings,"  "OneJoy," and "NPRO."[16]

As a result of the increasing popularity of e-cigarettes among consumers, government agencies and research facilities have conducted several studies regarding their potential health impacts and risks.[17]  These studies have concluded, among other things, that: (1) e-cigarettes contain measurable amounts of carcinogens, toxins, and other contaminants that are, or potentially are, disease-causing; (2) e-cigarettes have potentially harmful side effects; and (3) more studies are needed to determine the full range of health dangers associated with the use of e-cigarettes.[18]

In 2009, for example, the United States Food and Drug Administration ("FDA") conducted a study of two brands of e-cigarettes, one of which was NJOY.[19]  The FDA study concluded that NJOY e-cigarettes contained detectable levels of known carcinogens and toxic chemicals, and that the quality control processes used to manufacture the e-cigarettes were  inconsistent or non-existent, as evidenced by varying levels of nicotine inhaled with each puff.[20]  Following the study, the FDA released a consumer health brochure and safety alert reflecting the study's findings.[21]  In June 2012, a study published in the Journal of the American College of Chest Physicians concluded that e-cigarettes have

---

[13] *Id.*

[14] *Id.*, ¶¶ 26-29.

[15] *Id.*, ¶ 29.

[16] *Id.*, ¶ 24.

[17] *Id.*, ¶ 32.

[18] *Id.*

[19] *Id.*, ¶ 33.

[20] *Id.*, ¶ 34.

[21] *Id.*, ¶ 35.

"immediate adverse physiologic effects after short-term use that are similar to some of the effects seen in tobacco smoking," and urged that there be further research concerning the health effects of e-cigarettes.[22]

In 2013, the German Cancer Research Center published a comprehensive report on e-cigarettes that reviewed studies and literature in the field.[23]   The report concluded, *inter alia*, that e-cigarettes could not currently be "rated as safe"; that consumers typically do not have access to reliable information concerning product quality; that e-cigarettes have technical flaws (e.g., leaking cartridges, accidental intake of nicotine when replacing cartridges, and the possibility of unintended overdose); and that manufacturers provide insufficient information about the ingredients used in e-cigarettes.[24]   The report also noted that the liquids in e-cigarettes contain harmful substances and ingredients that irritate a user's airways and can lead to allergic reactions; that adverse health effects for third party bystanders could not be excluded; and that continuing health effects on users were unknown given the lack of studies concerning the effects of long-term use of e-cigarettes.[25]

The World Health Organization ("WHO") expressed concerns respecting the presence of carcinogens and other toxic chemicals in e-cigarettes in May and July 2013,[26] concerns which were raised again in August 2013 in a separate French report on the subject.[27]   The University of California at Riverside also published a study in 2013, reporting that there were "harmful and potentially harmful chemicals," as well as metal and silicate particles, in e-cigarette aerosols inhaled by users.[28] Additionally, two studies published at the end of 2013 concluded that e-cigarettes may pose health risks

---

[22]*Id.*, ¶ 44.

[23]*Id.*, ¶ 42.

[24]*Id.*

[25]*Id.*, ¶¶ 42-43.

[26]*Id.*, ¶¶ 39-40.

[27]*Id.*, ¶ 45.

[28]*Id.*, ¶¶ 46-47.

not associated with the use of traditional cigarettes,[29] and that they may not significantly reduce the risk for heart disease associated with traditional cigarettes.[30]

**B.    Allegedly Misleading Advertisements and Representations During the Class Period**

Plaintiffs allege that, during the class period, NJOY has engaged in a continuous, widespread campaign deceptively to promote NJOY e-cigarettes as "everything you like about smoking without the things you don't."[31]    Plaintiffs contend the advertisements convey the message that using NJOY e-cigarettes is known to be safer than smoking traditional cigarettes.[32]    Specifically, they assert that, given the multiple studies concluding that e-cigarettes contain carcinogens, toxins, and other potentially harmful impurities also found in traditional cigarettes, the advertisements are false and misleading.[33]    Plaintiffs also contend NJOY's marketing message is false and misleading because there is insufficient research respecting the long-term effects of e-cigarettes for NJOY to assert that they do not pose the same health risks as traditional cigarettes.[34]    NJOY made the purportedly false and misleading statements: (1) on e-cigarette packaging; (2) in inserts to product packaging and on shipping materials; (3) in press releases; (4) in print advertisements; (5) in television advertisements; (6) in radio advertisements;  and (7) on the NJOY website.[35]    Some of plaintiffs' specific allegations concerning each of these forms of advertising are detailed below.

In December 2012, NJOY purportedly introduced a new product – NJOY Kings.[36]    Plaintiffs allege that NJOY designed Kings to look like traditional cigarettes in order to capitalize on consumers'

---

[29]*Id.*, ¶ 48.

[30]*Id.*, ¶ 49.

[31]*Id.*, ¶ 60.

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]*Id.*

[36]*Id.*, ¶ 67.

desire to smoke, but avoid the health dangers of traditional tobacco.[37]  NJOY purportedly launched this product in a widespread marketing campaign whose core message was that a consumer would "get to keep all the things [he] like[d] about smoking while losing the things [he didn't]."[38]

Packaging: Plaintiffs assert that the warnings on NJOY's product packaging omit material information – e.g., a list of product ingredients – and in this way conceal the health risks associated with the chemicals the product contains.[39]  They contend that by omitting reference to carcinogens, toxins, and impurities, and warning only of risks from nicotine and swallowing the concentrated contents of the cartridge, the packaging implies that these are the only health-related risks associated with use of the product.[40]  Plaintiffs assert that NJOY also utilized small print on the back of its packaging, which was difficult for consumers to read.[41]

Plaintiffs also contend that these material omissions are reinforced by misleading statements on NJOY packaging inserts, such as "The NJOY King provides everything you like about smoking without the things you don't," "Be sure to tell your friends and family about the positive impact that NJOY products are having on your life," and "the NJOY King gives you everything you love about the smoking experience."[42]

NJOY's Advertising Campaigns: Plaintiffs allege that, beginning in December 2012 and January 2013, NJOY circulated advertisements that were false and misleading because they highlighted the positive aspects of e-cigarettes without referencing the negative side effects and health consequences associated with their use.[43]  Specifically, plaintiffs contend that the following NJOY advertisements and

---

[37]*Id.*

[38]*Id.*, ¶¶ 68-69.

[39]*Id.*, ¶ 61.

[40]*Id.*, ¶ 65.

[41]*Id.*, ¶ 64.

[42]*Id.*, ¶¶ 83-84.

[43]*Id.*, ¶ 76.

statements on the company website were misleading: (1) an advertisement stating that "[t]he most amazing thing about this cigarette . . . [is that] [i]t isn't one," and that NJOY Kings allow users "to keep all the things [they] like about smoking while losing the things [they] don't";[44] (2) an advertisement stating that "[f]inally, smokers have a real alternative. . . .  [Y]ou get to keep the things you like about smoking, while losing the things you don't. . . .  Cigarettes, you've met your match";[45] (3) an advertisement that invited consumers to "[s]tart a new relationship. . . .  You get to keep the things you like about cigarettes while losing the things you don't";[46] (4) an advertisement stating that NJOY Kings "provide[ ] everything you like about smoking without the things you don't";[47] (5) an advertisement stating:  "Try something new in bed.  Finally smokers have a real alternative . . . What's not to love?  Cigarettes, you've met your match";[48] and (6) an advertisement that stated:  "Turning New York City into the City that Never Smokes" above the statement "Cigarettes, you've met your match."[49]

Plaintiffs contend that an advertisement with the heading "Resolution Solution" was also false and misleading because it represented that NJOY e-cigarettes are a smoking cessation aid when, in fact, they are not.[50]  Finally, they assert that an NJOY commercial titled "Friends Don't Let Friends Smoke," which first aired in January 2014, would cause a reasonable consumer to believe that "friends don't let friends smoke" because of the health risks associated with traditional cigarettes, thus suggesting that e-

---

[44]*Id.*, ¶ 69.  Plaintiffs assert this advertisement ran in the June 2013 edition of *Out Magazine*. (*Id.*, ¶ 70.)

[45]*Id.*, ¶ 70.

[46]*Id.*, ¶ 72.  Plaintiffs contend this statement ran in *USA Today* in April 2013 and *Out Magazine* in May 2013. (*Id.*, ¶ 72.)

[47]*Id.*, ¶ 66.

[48]*Id.*, ¶ 70.  Plaintiffs allege this statement ran in *New York Magazine* in February 2013.  (*Id.*, ¶ 71.)

[49]*Id.*, ¶ 74. Plaintiffs assert this statement ran in at least two editions of *New York Magazine* in September 2013.  (*Id.*)

[50]*Id.*, ¶¶ 76-79.  Plaintiffs contend this statement ran in *Sports Illustrated* in December 2012 and January 2013, and in *Rolling Stone* in January 2013.  (*Id.*, ¶ 79.)

1   cigarettes do not pose similar health risks.[51]

2   <u>NJOY's Website</u>: Plaintiffs allege that NJOY's website contains multiple materially false and

3   misleading statements concerning the ingredients in e-cigarettes.[52] Specifically, they assert that NJOY's

4   representations that propylene glycol, glycerin, nicotine, and natural and artificial flavors are recognized

5   as safe for use in food or occur naturally in plants and food creates the false and misleading impression

6   that they are safe for inhalation, when the FDA has not recognized them as safe for that purpose.[53]

7   Plaintiffs also allege that NJOY's representations on its website about "regulatory compliance" misstate

8   various district court and appellate rulings concerning its marketing practices, and mislead consumers

9   by implying that the FDA or courts have approved NJOY's past advertising, or changes to its advertising

10  that post-date the opinions.[54]

11  Plaintiffs concede that NJOY had modified its website as of the date of the filing of their

12  complaint; they contend, however, that it remains deceptive.[55] For example, the website purportedly

13  states that propylene glycol "provides the vapor mist that looks like tobacco smoke" without mentioning

14  its adverse health consequences.[56]

15  Finally, plaintiffs assert that NJOY knew its advertising campaign would convey to reasonable

16  consumers that its products were safer than traditional cigarettes.[57] On July 26, 2012, NJOY's executive

17  vice president, Roy Anise, purportedly stated in an email that the company's marketing "strategy

18  _____

19  [51]*Id.*, ¶ 90.

20  [52]*Id.*, ¶ 91. Plaintiffs allege that the product description for NJOY Kings on NJOY's website

21  states: "It provides everything you like about smoking without the things you don't." (*Id.*, ¶ 87.)

22  [53]*Id.*, ¶¶ 91-96. Plaintiffs contend that the frequently asked questions page of NJOY's website
    states the following: "Nicotine - is an alkaloid found in certain plants, predominately tobacco, and in

23  lower quantities, tomatoes, potatoes, eggplants, cauliflower, bell-peppers, and some teas." (*Id.*, ¶ 93.)

24

25  [54]*Id.*, ¶¶ 97-98.

26  [55]*Id.*, ¶ 104

27  [56]*Id.*

28  [57]*Id.*, ¶ 105.

8

1  separates NJOY from cigarettes, makes NJOY the solution, [and] will get across the 'safer' message."[58]

2  For this reason, plaintiffs allege that NJOY and its agents intended that consumers read a safety message

3  into its advertisements.[59]

4  **C.  The Individual Plaintiffs and Class Claims**

5  Halbertstam purportedly saw NJOY's packaging and read the warnings prior to purchasing the

6  e-cigarettes.[60]   Plaintiffs allege that Halberstam subscribed to Rolling Stone magazine from

7  approximately June 2012 through the present, and saw the NJOY advertisement that ran in Rolling

8  Stone between December 2012 and January 2013.[61]  Halberstam also purportedly read Sports Illustrated

9  and ESPN Magazine between December 2012 and early 2013, and saw NJOY's "Resolution Solution"

10  and "Try Something New in Bed" advertisements.[62]  Halberstam purchased NJOY Kings in September

11  2013 in Los Angeles, California; he alleges that he intermittently purchased five packages of e-cigarettes

12  on other occasions.[63]  Plaintiffs allege that, relying on NJOY's core marketing message, Halberstam

13  purchased the e-cigarettes because he believed them to be safe.[64]  Plaintiffs assert that Halberstam would

14  not have purchased NJOY's e-cigarettes had he known about the potentially harmful side effects.[65]

15  McGovern also allegedly saw NJOY's packaging and read the warnings prior to purchasing

16  NJOY e-cigarettes.[66]  Plaintiffs assert that McGovern was first exposed to NJOY cigarettes when he was

[58]*Id.*, ¶ 106.

[59]*Id.*, ¶ 108.

[60]*Id.*, ¶ 110.

[61]*Id.*, ¶ 111.

[62]*Id.*

[63]*Id.*, ¶ 18.

[64]*Id.*¶ 112.

[65]*Id.*, ¶¶ 108, 112.

[66]*Id.*, ¶ 113.

Exhibit A
Page 31

given a free sample in late 2013 at a bar in Orange County, California.[67]  They contend that he then saw an NJOY television advertisement sometime in "late 2013," and purchased an NJOY Kings menthol e-cigarette in December 2013 at a local 7-11; thereafter, he purportedly purchased two additional NJOY e-cigarettes in Southern California in December 2013 or January 2014.[68]  Plaintiffs allege that McGovern relied on NJOY's core marketing message and believed that NJOY's products were safe.[69]  They assert that McGovern would not have purchased NJOY's e-cigarettes had he known about the potentially harmful side effects.[70]

Halberstam alleges two claims on his behalf and on behalf of a California class: (1) violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9); and (2) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*[71]

Thomas purchased one NJOY "OneJoy" e-cigarette in Jacksonville, Florida, in the summer of 2012.[72]  Plaintiffs allege that Thomas saw NJOY's packaging and read the warnings prior to purchasing the e-cigarette;[73] they assert she believed that the only risks associated with NJOY e-cigarettes were those disclosed on the packaging, and that e-cigarettes were generally safer than traditional cigarettes.[74]  Thomas alleges a single claim on her behalf and on behalf of a Florida class for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201, Florida Statutes, *et seq.*[75]

---

[67]*Id.*

[68]*Id.*, ¶¶ 19, 114.

[69]*Id.*, ¶ 115.

[70]*Id.*

[71]*Id.*, ¶¶ 128-160.

[72]*Id.*, ¶ 20.

[73]*Id.*, ¶ 116.

[74]*Id.*

[75]*Id.*, ¶¶ 161-169.

**D.    NJOY's Request for Judicial Notice**

NJOY requests that the court take judicial notice of proposed deeming regulations issued by the Food and Drug Administration on April 25, 2014, which are accessible on the federal register website.[76]  They also ask that the court consider the full "Friends Don't Let Friends Smoke" television advertisement, and a full size picture of the "Resolution Solution" advertisement.  Plaintiffs do not object to the request.

In deciding a Rule 12(b)(6) motion, courts generally look only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion if it "considers evidence outside the pleadings. . . .  A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell* 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Thus, in deciding a motion to dismiss, a court can consider material that is the proper subject of judicial notice under Rule 201 of the Federal Rules of Evidence.  FED.R.EVID. 201.  Under Rule 201, the court can judicially notice "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to

---

[76]NJOY's Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), Docket No. 85 (Dec. 10, 2014) at 1-2.  See also Declaration of Paul Gale ("Gale Decl."), Docket No. 86 (Dec. 10, 2014).

Exhibit A
Page 33

dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Courts have held that "[j]udicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)). The court can take judicial notice of the regulation. It is available at the federal register website, and neither party questions its authenticity. Courts routinely take judicial notice of documents available on government websites because the documents are not subject to reasonable dispute. *In re Epogen & Aranesp Off Label Mktg. & Sales Practices Litigation*, 590 F.Supp.2d 1282, 1286 (C.D. Cal. 2008) ("The Court grants DaVita's request as to Exhibits 1-4, labels for Epogen that are publicly available on the FDA website, finding that the labels are documents not subject to reasonable dispute"); *In re Amgen Inc. Securities Litigation*, 544 F.Supp.2d 1009, 1023 (C.D. Cal. 2008) (same).

The court can also consider the "Friends Don't Let Friends Smoke" television advertisement and the "Resolution Solution" advertisement under the incorporation by reference doctrine, since both are alleged in the complaint, and neither party disputes their authenticity. See *Branch,* 14 F.3d at 453. Consequently, the court will consider the two advertisements and the regulations in deciding NJOY's motion to dismiss.

## II. DISCUSSION

### A.    Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal

allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

## B.    Plaintiffs' State Consumer Protection Claims

### 1.    Legal Standard Governing CLRA Claims

The CLRA makes illegal various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  CAL. CIV. CODE § 1770(a).  Conduct that is "likely to mislead a reasonable consumer" violates the CLRA.  *Colgan v. Leatherman Tool Group, Inc*., 135 Cal.App.4th 663, 680 (2006) (quoting *Nagel v. Twin Laboratories, Inc.*, 109 Cal.App.4th 39, 54 (2003)).  A "reasonable consumer" is an "ordinary consumer acting reasonably under the circumstances," who "is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture. . . ." *Id.* (citing 1A CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 5:17 (4th ed. 2004)).

Section 1770(a)(5) prohibits "[r]epresenting that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have. . . ."  Section 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of

another."  Finally, § 1770(a)(9) bans "[a]dvertising goods or services with intent not to sell them as advertised."   These sections of the CLRA encompass deceptive omissions as well as deceptive representations.  *Mui Ho v. Toyota Motor Corp.*, No. 12–2672 SC, 2013 WL 1087846, *6 (N.D. Cal. Mar. 14, 2013) (citing *Daugherty v. American Honda Motor Company Inc*., 144 Cal.App.4th 824, 835 (2006)).  The CLRA is "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  *Colgan*, 135 Cal.App.4th at 680.

## 2.  Legal Standard Governing UCL Claims

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." CAL. BUS. & PROF. CODE §§ 17201, 17203.  "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.*, § 17200.  The California Supreme Court has construed the term broadly.  See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) ("[Section 17200] defines 'unfair competition to include any unlawful, unfair or fraudulent business act or practice. . . . Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law. . . .  By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. . . . However, the law does more than just borrow.  The statutory language referring to any unlawful, unfair or fraudulent practice . . . makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law.  Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent" (internal quotations omitted)); see also *Paulus v. Bob Lynch Ford, Inc*., 139 Cal.App.4th 659, 676-77 (2006) ("The purpose of the UCL 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. . . .'  Thus, the scope of the UCL (Bus. & Prof. Code, § 17200 et seq.) is 'broad.'  It 'covers a wide range of conduct'" (citations and footnote omitted)).

14

### 3.    Legal Standard Governing FDUTPA Claims

The FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Siever v. BWGaskets, Inc.*, 669 F.Supp.2d 1286, 1292 (M.D. Fla. 2009) (quoting FLA. STAT. § 501.204(1)).  A claim under the FDUTPA has three elements: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages. *Id.*  The conduct considered to be deceptive or unfair under the FDUTPA is defined, *inter alia*, by "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices." *Id.* (quoting FLA. STAT. § 501.203(3)(c)); *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr, Inc.*, 657 F.Supp.2d 1279, 1290 (M.D. Fla. 2009).  Because "[a] deceptive act or unfair practice" encompasses a range of activities far broader than common law fraud, it is well established that the "plaintiff need not prove the elements of fraud to sustain an action under the [FDUTPA] statute." *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F.Supp.2d 1288, 1310 (S.D. Fla. 2005) (quoting *Davis v. Powertel, Inc.,* 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000)).

### 4.    Whether the Advertisements Mcgovern and Halbertstam Saw Are Non-Actionable Puffery That Would Not Mislead a Reasonable Consumer

NJOY contends that to the extent plaintiffs' CLRA and UCL claims are based on affirmative misrepresentations, they fail as a matter of law because the representations are too generalized, vague, and unspecific to induce reliance by a reasonable consumer.[77]  Stated differently, NJOY argues that its

---

[77]Motion at 11.  NJOY cites cases suggesting that it believes the FDUTPA claim is also based on print and television advertisements.  Because Thomas – the Florida plaintiff – alleges only that she saw product packaging, she cannot base a FDUTPA claim on NJOY advertisements she did not view.  This is because, "in order for the consumer to be entitled to any relief under FDUTPA, the consumer must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act." See *Macias v. HBC of Florida, Inc.*, 694 So.2d 88, 90 (Fla. Dist. Ct. App. 1997); see also *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008) ("To bring a claim under [the FDUTPA], the plaintiff must have been aggrieved by the alleged unfair and deceptive act.").  Thus, where a plaintiff has not seen or heard an allegedly deceptive advertisement, she cannot sue under the FDUTPA. See *Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc.*, No. CIV.A.

advertisements were mere puffery, and that the court should dismiss plaintiffs' claims as a matter of law. See *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034 RGK (JCx), 2007 WL 4766525, *3 (C.D. Cal. Sept. 4, 2007) ("If an alleged misrepresentation would not deceive a reasonable consumer or amounts to mere puffery, then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss"); *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (whether a statement is puffery is a legal question suitable for resolution on a motion to dismiss); *Shaker v. Nature's Path Foods, Inc.*, No. CV 13-1138 GW (OPx), 2013 WL 6729802, *3 (C.D. Cal. Dec. 16, 2013) ("[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate," quoting *Pelayo v. Nestle USA, Inc.*, 989 F.Supp.2d 973, 978 (C.D. Cal. 2013) (collecting cases)). While there are circumstances in which a court can resolve whether an advertisement is deceptive as a matter of law, such instances are rare; "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

"Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 973 (N.D. Cal. 2008) (citation omitted), aff'd, 322 Fed. Appx. 489 (9th Cir. 2009)

_____

11-02002, 2012 WL 630010, *5 (E.D. La. Feb. 27, 2012) ("Only a party who is aggrieved by the alleged unfair and deceptive practice has standing to assert a violation of the statute. Here, Defendants do not allege that they were the parties deceived by Smoothie King's allegedly unlawful advertising practices. Instead, they assert only that their customers are 'consumers' as defined under the act and that *their customers* were deceived."); *Hall v. Bristol Myers Squibb Co.*, No. CV 06-5203FLW, 2009 WL 5206144, *9 (D.N.J. Dec. 30, 2009) (dismissing FDUTPA claim for failure to allege causation because "Plaintiffs fail to identify any specific advertisements Plaintiff Hall and Decedent viewed, how they were misled by these advertisements, how these advertisements affected their prescriptions for Plavix and how these advertisements caused any of their injuries. In other words, both of the Amended Complaints fail to identify which, if any, of the promotional or marketing materials were received, viewed or relied upon by Plaintiff Hall and Decedent, and if they were, when these materials were viewed and how they were relied upon. More simply stated, Plaintiffs have failed to allege any specific facts establishing a connection between the alleged conduct of Defendants and the alleged injury claimed.").

Halbertstam does not purport to allege an FDUTPA claim; the court will therefore address plaintiffs' claims based on affirmative representations in advertisements only under the CLRA and UCL. It will address plaintiffs' omission-based claims under all of the CLRA, UCL, and FDUTPA.

(Unpub. Disp.); *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1145 (9th Cir.1997) (concluding that exaggerated advertising, blustering, and boasting was non-actionable puffing);[78] see *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1361 (2003) (stating, in a CLRA and UCL case, that "'clear' and 'CD quality' are not factual representations that a given standard is met. Instead, they are boasts, all-but-meaningless superlatives, similar to the claim that defendants 'love comparison,' a claim which no reasonable consumer would take as anything more weighty than an advertising slogan"). "The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by *specific* rather than *general* assertions." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (emphasis added). "The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Shaker*, 2013 WL 6729802, at *4; see also *Cook*, 911 F.2d at 246. Stated differently, only "misdescriptions of specific or absolute characteristics of a product are actionable." *Cook*, 911 F.2d at 246. "Thus, a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).

### a. The "Friends Don't Let Friends Smoke" Advertisement

Plaintiffs allege that McGovern saw the "Friends Don't Let Friends Smoke" television advertisement.[79] The advertisement contains a voice over that states: "For everything friends do for each

---

[78]"In the Ninth Circuit, claims of unfair competition and false advertising under [the CLRA and UCL] are substantially congruent to claims made under the Lanham Act." *CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F.Supp.2d 1285, 1295 (E.D. Cal. 2012) (quoting *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F.Supp.2d 1168, 1182 (N.D. Cal. 2007) (internal quotations omitted). Accordingly, the court cites cases involving not only the UCL and CLRA, but the Lanham Act, in deciding whether the advertisements are mere puffery.

[79]TAC, ¶ 114. Although McGovern has dismissed his claims, the court nonetheless addresses defendants' arguments regarding this advertisement because, as it concludes *infra*, the named plaintiffs may be able to represent class members who have similar, but not identical, interests, e.g., who viewed similar, but different, advertisements or representations than those the named plaintiffs saw (including this advertisement) if they can show at the time of class certification that their claims are typical and that they can adequately represent the broader class.

other, return the favor.  Friends don't let friends smoke.  Give them the only electronic cigarette worth switching to.  The NJOY King.  Cigarettes, you've met your match."[80]  The screen then displays the following text: "CIGARETTES, YOU'VE MET YOUR MATCH. © 2013 NJOY, INC.  Not for sale to minors.  Contains nicotine.  Not a smoking cessation product."[81]

Plaintiffs allege that a reasonable consumer viewing this advertisement would believe that it means friends do not let friends smoke because traditional tobacco cigarettes contain carcinogens and toxins that carry the risk of disease, and that friends should encourage friends to use the NJOY King e-cigarettes instead because they does not contain carcinogens or toxins, and thus do not have the same or similar risks of disease.[82]  Plaintiffs contend, in short, that the advertisement falsely implies that the NJOY King is a healthier alternative to smoking traditional cigarettes.[83]

NJOY counters that the statement is mere puffery because it is vague and subjective.  It identifies "many reasons" why a friend would want another friend to switch from tobacco cigarettes to an NJOY King: "(a) to get rid of the smell and lingering odor of a tobacco cigarette; (b) to reduce litter; (c) to save money; (d) to satisfy nicotine cravings in places where smoking is prohibited; (e) to avoid staining teeth; and (f) because it is a more satisfying product."[84]  This argument is unpersuasive.  It is not incumbent on plaintiffs to disprove every conceivable interpretation of NJOY's advertisements at the motion to dismiss stage.  Instead, the court must decide whether a reasonable consumer could understand that the advertisement implies, as plaintiffs argue, that the NJOY King is healthier than regular cigarettes, and whether that statement "is quantifiable, [i.e., whether it] makes a claim as to the 'specific or absolute characteristics of [the] product.'"  See *Newcal*, 513 F.3d at 1053; see also *id.* ("A statement is considered puffery if the claim is *extremely unlikely* to induce consumer reliance" (emphasis added)).

At the motion to dismiss stage, the court can dismiss a complaint for failure to state a claim only

---

[80]*Id.*, ¶ 90.

[81]Gale Decl., ¶ 2.

[82]TAC, ¶ 90.

[83]*Id.*

[84]Motion at 12.

where it can "conclude as a matter of law that members of the public are not likely to be deceived by the [advertisement]." See *Shaker*, 2013 WL 6729802 at *3; *Pelayo*, 989 F.Supp.2d at 978.  Here, the court cannot conclude as a matter of law that there is no possibility members of the public would likely be deceived by the television advertisement.  It is true, as NJOY argues, that an advertisement is not "[l]ikely to deceive" simply because there is a "mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  See *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003) (addressing a UCL claim); *Augustine v. Natrol Products, Inc*., No. CV 13-3129 H DHB, 2014 WL 2506284, *4 (S.D. Cal. May 15, 2014) (addressing UCL, CLRA, and FAL claims).  Rather, the question is whether "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie*, 105 Cal.App.4th at 508.

Many of NJOY's arguments isolate individual statements in its advertisements and assail plaintiffs' reliance on each segment.  This is not the proper approach.  "Even assuming . . . that some of the statements would themselves be non-actionable, they 'cannot be considered in isolation because they contribute to the [potentially] deceptive context' of the packaging and marketing 'as a whole.'" See *Johnson v. General Mills, Inc*., No. CV 10-00061 CJC (Anx), 2011 U.S. Dist. LEXIS 154213, *5-6 (C.D. Cal. Mar. 3, 2011) ((alterations original; quoting *Lima v. Gateway, Inc*., 710 F.Supp.2d 1000, 1007 (C.D. Cal. 2010) (in turn citing *Williams*, 552 F.3d at 939 n. 3)).  Viewing plaintiffs' allegations and the advertisement as a whole in the light most favorable to plaintiffs, a reasonable consumer could find it implies that the NJOY King is a healthier and/or safer alternative to a traditional cigarette.[85]  As plaintiffs note, a consumer could rationally conclude that friends do not let friends smoke because cigarettes contain unhealthy carcinogenic additives that are likely to cause disease.  The advertisement suggests that NJOY King e-cigarettes are the alterative; not only does it state unambiguously that NJOY

---

[85]At the hearing, NJOY disputed the court's conclusion that many of its arguments isolated individual statements in the advertisements.  It is beyond dispute that many of NJOY's arguments are directed at *aspects* of the advertisement, as opposed to the advertisement as a whole.  Whether or not NJOY isolated individual statements, however, the court believes the third amended complaint plausibly alleges that considered as a whole, the advertisements contain actionable, misleading representations.

King is "the only electronic cigarette worth switching to"; it implies that it is a superior alternative to traditional cigarettes by stating that "[c]igarettes[ ] [have] met [their] match."[86]  Reading this statement in conjunction with the statement that friends do not let friends smoke, the advertisement could suggest to a reasonable consumer that the NJOY King is superior because it is safer than traditional cigarettes. Because this is a plausible meaning of the advertisement, the court cannot conclude that no reasonable consumer would interpret it in this way.[87]  Indeed, at the hearing, NJOY conceded that a reasonable consumer could interpret the advertisements to convey the message that its e-cigarettes are safer than traditional cigarettes.  Thus, the court has no difficulty deciding that this is a plausible interpretation of the advertisements that a reasonable consumer could draw.

The question thus is whether the implied representation is actionable or merely puffery; that is, whether it "is quantifiable, [because it] makes a claim as to the 'specific or absolute characteristics of a product.'"  *Newcal*, 513 F.3d at 1053.  Plaintiffs argue that health and safety related risks are inherently material to consumers, and hence that they concern the specific or absolute characteristics of the product.[88]  Courts generally hold that "allegedly false claims that explicitly or implicitly address product attributes of importance to customers and make statements that are measurable by comparative research are not puffery."  See *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F.Supp.2d 384, 464 (D.N.J. 2009) (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993) ("Pennzoil's claim of engine protection by contrast involves more than a mere generality.  Here, the claim is both specific and measurable by comparative research").  Numerous courts have held that representations concerning the health and safety effects of products are important to consumers, and hence that claims based on such representations are sufficiently plausible that they should survive dismissal.  *Bruton v.*

---

[86]*Id.*, ¶ 90.

[87]Plaintiffs allege the implied assertion that the NJOY King is healthier or safer than traditional cigarettes is deceptive, false, and/or misleading.  (*Id.*, ¶¶ 134, 153.)  NJOY does not assail the adequacy of the allegations underlying plaintiffs' assertion that, assuming an actionable representation as to safety was made, the representation was false or deceptive.  The court therefore assumes for purposes of this motion that the false, deceptive, or misleading nature of the representation has been adequately pled.

[88]Motion at 14.

*Gerber Products Co.*, No. CV 12-02412 LHK, 2014 WL 172111, *11 (N.D. Cal. Jan. 15, 2014) ("[T]he Court cannot conclude as a matter of law that no consumer would rely on Gerber's 'Healthy' label statements.  Again, the issues of reliance and how Gerber's statements would be understood by a reasonable consumer are questions of fact ill-suited for resolution on a motion to dismiss. . . . The Court therefore concludes that Bruton's allegations based on the 'Healthy' claims that appear on the Purchased Products are sufficiently plausible to survive a motion to dismiss"); *Johnson*, 2011 U.S. Dist. LEXIS 154213, *4-6 (triable issues of fact as to whether advertisements "were sufficiently misleading as to be likely to deceive the public" precluded summary judgment on CLRA and UCL claims that were based on an advertising campaign communicating a "common message that eating Yo-Plus aids in the promotion of digestive health in ways that eating normal yogurt does not"); *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1125–26 (N.D. Cal. 2010) (whether statements such as "wholesome" and "smart choices made easy" constituted puffery was not amenable to resolution on a motion to dismiss); see also *Khasin v. Hershey Co.*, No. CV 12–1862 EJD, 2012 WL 5471153, *7 (N.D. Cal. Nov. 9, 2012) (rejecting a similar plausibility argument because "the issues Defendant raise[s] ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6) motion").[89]

The implied assertion that NJOY King e-cigarettes are healthier or safer than traditional cigarettes concerns a product characteristic of importance to consumers.  Whether the NJOY King is safer or healthier than normal cigarettes because it contains less dangerous additives is capable of verification through comparative research; NJOY does not contend otherwise.  Consequently, the court

---

[89]NJOY argues that the only cases that have found health-related claims actionable involved claims that were explicit rather than implicit.  The CLRA and UCL, however, prohibit *any* deceptive conduct, explicit or implicit.  See *Aguilar v. Boulder Brands, Inc.*, No. 3:12 CV 01862 BTM, 2014 WL 4352169, *4 (S.D. Cal. Sept. 2, 2014) ("Even if Plaintiff has abandoned literal falsity in favor of implied misrepresentation and deception in her proposed Second Amended Complaint, such claims still fall within the ambit of the UCL and CLRA," citing *Lima,* 710 F.Supp.2d at 1008). Moreover, contrary to NJOY's argument, *Johnson* involved an implicit "common message" much like the claims plaintiffs assert here.  NJOY's argument is therefore unavailing.

cannot conclude as a matter of law that the advertisement is mere puffery.[90]

In conclusion, the court finds that plaintiffs plausibly allege that NJOY's television advertisement conveys an implied misrepresentation that the NJOY King is safer and/or healthier than a traditional cigarette.  The court further finds that this implied misrepresentation is not so vague or general that it constitutes mere puffery.  Given the circumstances of this case, whether the purported misrepresentation would deceive an ordinary consumer is a factbound question not suitable for resolution at the motion to dismiss stage.  See *Bruton*, 2014 WL 172111, at *11; *Khasin*, 2012 WL 5471153, at *7.  Accordingly, the court denies NJOY's motion to dismiss premised on the television advertisement.

### b.    The Print Advertisements

### i.    The "Try Something New in Bed" Advertisement

NJOY contends plaintiffs' allegations concerning the "Try Something New in Bed" advertisement are not sufficiently specific and must be dismissed for that reason.[91]  The court agrees.

As noted in the order dismissing the second amended complaint, plaintiffs' misrepresentation and omission claims are subject to the particularity requirements of Rule 9(b) of the Federal Rules of

---

[90]NJOY argues that Halbertstam's allegations of reliance are not plausible because he saw the advertisements in December 2012 or January 2013, but did not purchase NJOY Kings until September 2013.  (Motion at 16 (citing *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13 CV 00296 WHO, 2014 WL 1017879, *4 (N.D. Cal. Mar. 13, 2014) ("To show reliance, a plaintiff must establish that 'the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct,'" citing *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009)).)  The court does not agree that the amount of time that elapsed between the date Halberstam saw the advertisement and the date he purchased the product warrants dismissal. "While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause." *Tobacco II*, 46 Cal.4th at 326.  The plaintiff need only show that it was a "substantial factor" in his decision;  a "material" misrepresentation – i.e., one to which "a reasonable man would attach importance . . . in determining his choice of action in the transaction in question" – gives rise to an inference of reliance. *Id.* at 327.  Whether the advertisement was a substantial factor in Halbertstam's decision is manifestly a question of fact and cannot be resolved in the context of a motion to dismiss.

[91]Motion at 13.

Civil Procedure.[92]  To satisfy Rule 9(b), a complaint must plead "'the who, what, when, where, and how' of the misconduct charged," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)), and must also "set forth what is false or misleading about a statement, and why it is false," *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), is instructive in evaluating whether plaintiffs have satisfied this requirement.  There, plaintiff asserted that Ford made false and misleading statements concerning the safety and reliability of its certified pre-owned vehicles.  Specifically, he alleged that Ford misrepresented the quality of the vehicles' complete repair and accident-history report, the level of training that inspecting technicians received, and the rigor of the certification process.  *Id.* at 1123.  Plaintiff contended that members of the putative class he sought to represent were exposed to Ford's representations through a televised national marketing campaign, sales materials at the dealerships where they bought certified pre-owned vehicles, and the statements of sales personnel working at the dealership.  *Id.* at 1125–26.  The Ninth Circuit, reviewing the complaint *de novo*, held that the allegations were not pled with the particularity required by Rule 9(b).  It stated:

> "Kearns fails to allege in any of his complaints the particular circumstances surrounding [the] representations.  Nowhere in the [complaint] does Kearns specify what the television advertisements or other sales material specifically stated.  Nor [does] Kearns specify when he was exposed to them or which ones he found material.  Kearns also fail[s] to specify which sales material he relied upon in making his decision to buy a CPO vehicle.  Kearns does allege that he was specifically told 'CPO vehicles were the best used vehicles available as they were individually hand-picked and rigorously inspected used vehicles with a Ford-backed extended warranty.'  Kearns does not, however, specify who made this statement or when this statement was made.  Kearns fail[s] to articulate the who, what, when, where, and how of the misconduct alleged.  The pleading of . . . neutral facts fails to give Ford the opportunity to respond to the alleged misconduct.  Accordingly, these pleadings do not satisfy the requirement of Rule 9(b)

---

[92] Prior Order at 16.

that 'a party must state with particularity the circumstances constituting fraud. . . .' Because Kearns failed to plead his averments of fraud with particularity, we affirm the district court's dismissal of his [complaint]." *Id.* at 1126.

NJOY argues that plaintiffs fail to allege when or where Halbertstam saw the "Try Something New in Bed" advertisement.[93]  Plaintiffs respond that the NJOY King was not introduced to the market until December 2012, and that Halbertstam purchased the product in September 2013; they contend Halberstam must have seen the advertisement sometime during this period.[94]  This is not sufficient to satisfy Rule 9(b).  See *Kearns*, 567 F.3d at 1126 ("Kearns fails to allege in any of his complaints the particular circumstances surrounding such representations.  Nowhere . . . [does] Kearns specify *when* he was exposed to [the advertisements] or which ones he found material"); *Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1124 (C.D. Cal. 2010) ("*Kearns* is directly relevant in assessing the adequacy of the complaint in this case.  First, much as the plaintiff in *Kearns* failed to allege with specificity when certain fraudulent statements were made, Yumul has failed to allege when during the period from January 1, 2000 to the present she saw or heard the particular representations upon which her complaint is based").  A plaintiff need not plead a precise date to satisfy Rule 9(b), but he must – at a minimum – narrow the range of dates to a sufficiently particularized window that the defendant can adequately respond to his allegations.  Compare *Interserve, Inc. v. Fusion Garage PTE. Ltd.*, No. C-09-5812-RS-PSGx, 2011 WL 500497, *3 (N.D. Cal. Feb. 9, 2011) (denying a motion to dismiss where allegations concerning "the purported fraud [were] limited to a  narrow window of time").  The nine month window plaintiffs propose is not sufficiently narrow to satisfy Rule 9(b).  See *Franco v. U.S. Bank Nat. Ass'n*, No. SA 14 CV 636 XR, 2014 WL 6090647, *3 (W.D. Tex. Nov. 13, 2014) ("The amended complaint also fails to allege when the statements by Ocwen or Briseno were made except mentioning 'October,' 'mid-April of 2014' and generally alleging the fraud took place over the course of nine months, which is insufficient to support a fraud claim under Rule 9(b)."); *Hirata Corp. v. J.B. Oxford & Co.,* 193 F.R.D. 589, 598 (S.D. Ind. 2000) ("[Plaintiff] cannot expect simply to rest on its

---

[93]Motion at 13.

[94]Opposition at 4-5.

broad assertion that the fraud occurred over a period of six months."); cf. *Unique Functional Products, Inc. v. JCA Corp.,* No. 09-CV-265-JM MDD, 2011 W L 3359657, * 3 (S.D. Cal. Aug. 3, 2011) (alleging the fraud took place over a twelve-to-fifteen month period did not "provide information sufficient to put Defendants on notice of the particular events on which it is basing its fraud cause of action.").

Plaintiffs also fail to allege where Halbertstam saw the advertisement.  The third amended complaint alleges only that "Halberstam also saw NJOY's print advertisement featuring the slogan 'Try Something New In Bed.'"[95]   That does not suffice to plead the "where" of the fraud.  Citing *Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1306 n. 19 (S.D. Cal. 2003), plaintiffs assert they have attached a representative sample of the advertisement to their complaint, and that this satisfies their pleading burden.[96]   As *Von Grabe* made clear, however, a complaint must allege not only the content of the representation, but where and when the fraud look place.  See *id.* at 1306 ("it is alleged that in or about November 2000, in fliers and other advertising and promotional materials." fraudulent misrepresentations were made).  After noting that where and when were adequately alleged, the court continued:

> "It is also true that the particularity requirements of Rule 9(b) dictate that where it is alleged that material misrepresentations/omissions were made in printed form, such as fliers, letter, advertising, or promotional materials, the pleadings should sufficiently identify these writings for Defendant to be informed of what is at issue. This may be done by identifying or attaching representative samples of these materials." *Id.* at 1306 n. 19.

Alleging the specific content of a misrepresentation does not address where and when a plaintiff saw it.  Because plaintiffs fail to plead where or when Halbertstam saw the "Try Something New in Bed" advertisement, their allegations fail to satisfy Rule 9(b) and plaintiffs' claims based on the advertisement must be dismissed.

---

[95]TAC, ¶ 111.

[96]Opposition at 5.

ii.    The "Resolution Solution" Advertisement

NJOY also contends claims concerning the "Resolution Solution" advertisement must be dismissed because the advertisement is nothing more than non-actionable puffery.[97]  The advertisement states:

"               RESOLUTION SOLUTION.

INTRODUCING THE NJOY KING ELECTRONIC CIGARETTE.

IN 2013, SMOKERS FINALLY HAVE A REAL ALTERNATIVE.

It's the first electronic cigarette with the look and feel of the real thing, and authentic flavor designed in the USA by our Master Flavorist.  So this New Year, you can get rid of the smoke and keep the flavor.  You've got NJOY on your side.

. . .

CIGARETTES, YOU'VE MET YOUR MATCH"[98]

NJOY contends that the only portion of the advertisement that "comes close" to making a specific representation regarding the product are the lines "you can get rid of the smoke" and "not a smoking cessation product."[99]  The court does not agree.  As noted, the court must determine whether a reasonable consumer could find the advertisement misleading by considering it as a whole.  See *Johnson*, 2011 U.S. Dist. LEXIS 154213 at*5-6 ("Even assuming . . . that some of the statements would themselves be non-actionable, they 'cannot be considered in isolation because they contribute to the [potentially] deceptive context' of the packaging and marketing 'as a whole,'" quoting *Lima*, 710 F.Supp.2d at 1007 (in turn citing *Williams*, 552 F.3d at 939 n. 3)).  Viewing the advertisement as a whole, a reasonable consumer could conclude it implied that NJOY King e-cigarettes are a safer and

---

[97]Motion at 12-13.

[98]TAC, ¶ 76.  NJOY contends the advertisement also contains the following text in the bottom lefthand corner: ". . . Not a smoking cessation product. . . ." (Motion at 13 (citing TAC, ¶ 76).)  This is not apparent from the image embedded in the complaint.  To the extent these words are included, it would appear they are in extremely small print.  Assuming *arguendo* that this text is included, it does not alter the court's analysis or its conclusion.

[99]Motion at 13.

26

healthier alternative to traditional cigarettes.  The advertisement is a clear attempt to capitalize on consumers' practice of making New Year's resolutions, and suggests that the NJOY King is the "real alternative" to traditional smoking.  A reasonable consumer could rationally conclude that the reason someone would make a New Year's resolution to quit smoking is the negative health consequences of smoking traditional cigarettes. A reasonable consumer could thus conclude that the advertisement communicates the fact that NJOY King e-cigarettes will assist one in keeping one's New Year's resolution to stop smoking and be healthier.  The tag line – cigarettes have met their match – appears to summarize this message.  NJOY argues that reasonable consumers could understand this advertisement – like the television advertisement – in a different way;[100] at the motion to dismiss stage, however, the court must draw all inferences in favor of plaintiffs, and can dismiss only if it can "conclude as a matter of law that members of the public are not likely to be deceived by the [advertisement]." See *Shaker*, 2013 WL 6729802 at *3; *Pelayo*, 989 F.Supp.2d at 978.

Here, based on the totality of plaintiffs' allegations, there is more than a "mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  See *Lavie*, 105 Cal.App.4th at 508; see also *Augustine*, 2014 WL 2506284 at *4.  It is conceivable, in fact, that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could [have] be[en] misled." *Lavie*, 105 Cal.App.4th at 508.

Thus, the court must examine whether the implied representation is actionable or mere puffery, i.e., whether it "makes a claim as to the 'specific or absolute characteristics of a product.'" *Newcal*, 513 F.3d at 1053.  Plaintiffs argue, as they did with respect to the television advertisement, that health and safety risks are inherently material to consumers, and that courts find "allegedly false claims that explicitly or implicitly address product attributes of importance to customers and make statements that are measurable by comparative research are not puffery." See *Bracco Diagnostics, Inc.*, 627 F.Supp.2d

---

[100]See Motion at 15 (referencing Motion at 12, stating that a consumer might have understood the advertisement to suggest switching to the NJOY King was better so as: "(a) to get rid of the smell and lingering odor of a tobacco cigarette; (b) to reduce litter; (c) to save money; (d) to satisfy nicotine cravings in places where smoking is prohibited; (e) to avoid staining teeth; and (f) because it is a more satisfying product").

at 464 (citing *Castrol*, 987 F.2d at 946).  As noted, courts routinely find representations concerning health and safety important to consumers, and conclude that a reasonable consumer could plausibly rely on them.  On this basis, they decline to dismiss at the pleadings stage. *Bruton*, 2014 WL 172111 at *11; *Khasin*, 2012 WL 5471153 at *7 (rejecting a similar plausibility argument because "the issues Defendant raise[s] ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6) motion"); *Chacanaca*, 752 F.Supp.2d at 1125–26 (whether statements such as "wholesome" and "smart choices made easy" constituted puffery was not amenable to resolution on a motion to dismiss); see also *Johnson*, 2011 U.S. Dist. LEXIS 154213 at *4-6 (triable issues of fact as to whether advertisements "were sufficiently misleading as to be likely to deceive the public" precluded summary judgment on CLRA and UCL claims based on an advertisement campaign that communicated a "common message that eating Yo-Plus aids in the promotion of digestive health in ways that eating normal yogurt does not").  As a result, the court cannot find, at this stage of the proceedings, that the implied representation amounts to mere puffery.  NJOY's motion to dismiss on this basis must thus be denied.

### 5.   Whether Plaintiffs Adequately Allege Omission Claims

Plaintiffs also contend that NJOY failed to disclose certain material information.[101]  NJOY asserts these allegations fail because it had no duty to disclose the allegedly withheld facts.[102]  Under California law, there are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997) (quoting *Heliotis v. Schuman*, 181 Cal.App.3d 646, 651 (1986)).

Florida law recognizes that "there are [three] circumstances in which a duty to disclose may arise: (1) one who speaks must say enough to prevent his words from misleading the other party; (2) one

---

[101]TAC, ¶ 134, 141-42, 149, 168.

[102]Motion at 18.

who has knowledge of material facts to which the other party does not have access may have a duty to

disclose these facts to the other party; and (3) one who stands in a confidential or fiduciary relation to

the other party to a transaction must disclose material facts." See *Hooper v. Barnett Bank of W. Florida*,

474 So.2d 1253, 1257 (Fla. App. 1985), approved, 498 So.2d 923 (Fla. 1986). Where an FDUTPA

claim is based on an omission, and the defendant had no duty to disclose the purportedly withheld

information, the claim fails as a matter of law. See *Virgilio v. Ryland Group, Inc*., 680 F.3d 1329, 1338

(11th Cir. 2012) ("The problem with Plaintiffs' argument is that, whether or not a duty to disclose is an

element of a FDUTPA claim, the sole basis alleged for Count 3's FDUTPA claim is Defendants' breach

of 'an affirmative duty of disclosure' when Defendants 'knowingly omitted any disclosure of the

existence of [Pinecastle].' As we held in affirming the District Court's dismissal of Count 1, and will

hold in affirming the dismissal of Count 4, the alleged duty of disclosure did not exist under Florida law.

Count 3 therefore fails to state a claim for relief").[103]

NJOY maintains that none of the recognized bases for imposing a duty to disclose is present

here. Plaintiffs contend NJOY had a duty to disclose because it had exclusive knowledge of material

facts and made partial representations.[104]

### a.    Exclusive Knowledge

A defendant has exclusive knowledge of material facts giving rise to a duty to disclose under

---

[103]Plaintiffs cite a Florida district court case holding that "a duty to disclose is not an element of [a] FDUTPA" claim, even if a plaintiff alleges deceptive or fraudulent omissions. See *Morris v. ADT Sec. Servs*., 580 F.Supp.2d 1305, 1310 (S.D. Fla. 2008). Initially, it appears the *Morris* court found that the omitted facts were exclusively in defendant's knowledge; this would seem to indicate that a duty to disclose disclosure existed. See *id*. ("The Complaint alleges that ADT sold a security system from 2002 through 2006, that it knew would stop working properly in 2008, without disclosing this fact to customers, and then decided to charge customers to upgrade the system so that it would work as originally promised[; this] is sufficient to state a claim under FDUTPA"). It would also appear that the *Morris* court concluded that a failure to disclose something the defendant was under no duty to disclose was somehow "unfair." *Morris* is an out-of-circuit district court decision that is not binding on the court. More fundamentally, there do not appear to be any Florida Court of Appeals or Supreme Court decisions addressing the question. In the absence of an authoritative statement on the matter by the Florida courts, the court finds the Eleventh Circuit's reasoning persuasive, and adopts it.

[104]Opposition at 19 ("Plaintiffs allege that NJOY had a duty to disclose under California law based on its exclusive knowledge and partial representations").

California law where "according to the complaint, [defendant] knew of [a] defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 256 (2011); see also *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1096-97 (N.D. Cal. 2007) (finding that defendant had exclusive knowledge of a product defect because it had access to significant data that was not available to the public, and because "customers only became aware of the problem if they actually experienced it first-hand"). The same is true under Florida law – "one who has knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party." See *Hooper*, 474 So.2d at 1257.

Under California law, "generalized allegations . . . respect[ing] . . . exclusive knowledge" are insufficient to survive a motion to dismiss. See *Herron v. Best Buy Co. Inc.*, 924 F.Supp.2d 1161, 1175 (E.D. Cal. 2013); *Hovsepian v. Apple, Inc.,* No. 08-5788 JF (PVT), 2009 WL 5069144, *3 (N.D. Cal. Dec. 17, 2009). Florida law is to the same effect; it requires that the circumstances demonstrating the existence of a duty to disclose be alleged with particularity. See *Smith v. Holley*, 363 So.2d 594, 596 (Fla. App. 1978) ("[T]he petition must allege sufficient facts to demonstrate the existence of a duty to disclose such facts. . . . It is axiomatic that circumstances constituting fraud or mistake must be stated with particularity. Since the petition alleges fraud based upon failure to disclose material information, it must contain sufficient allegations to establish a duty on appellant's part to make full disclosure").

Plaintiffs allege broadly that NJOY "knew or was in a position to know" material facts concerning its e-cigarettes "from its own product knowledge" and from various published studies; by contrast, they assert, "consumers were not reasonably in a position to be aware of [d]efendants' internal product information or such studies."[105] The court finds these allegations insufficient. First, plaintiffs do not identify the information to which NJOY allegedly had access, or which it was in a superior position to know. This alone is fatal to the omission claim, as the court cannot determine what information may have been fraudulently omitted if it is not identified in the complaint.

Second, the Ninth Circuit has rejected allegations of exclusive knowledge substantially similar to plaintiffs'. In *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-47 (9th Cir. 2012), plaintiffs

---

[105]TAC, ¶ 142.

alleged that Hewlett-Packard ("HP") "became familiar with" and was "on notice" of a defect in its laptops at the time of manufacture and as early as 2002. They also made the "generalized assertion" that the laptops' characteristics put HP on notice that they "were and are seriously defective." The complaint, however, did not reference the specific product defect in question nor detail how HP knew of it. *Id.* The Ninth Circuit concluded that "allegation[s] that HP, as the manufacturer, had 'access to . . . aggregate information and data regarding the risk of overheating' [was] speculative and [did] not suggest how any tests or information could have alerted HP to the defect." *Id.* at 1147. Plaintiffs' allegations are essentially identical to those in *Wilson*. They assert that NJOY had access to unspecified information because it was the manufacturer of the e-cigarettes, and knew the products' characteristics. That is insufficient. See *id.*; *Tietsworth v. Sears, Roebuck & Co.*, No. 09-CV-00288-JF-HRL, 2009 WL 3320486, *1 (N.D. Cal. Oct. 13, 2009) (finding conclusory an allegation that defendants were in a "superior position to know the truth about the [product]"); *Oestreicher*, 544 F.Supp.2d at 974 (finding an allegation that defendant had "exclusive knowledge as the manufacturer" did not plausibly support a claim that defendant knew of a defect) aff'd, 322 Fed. Appx. 489 (9th Cir. Apr. 2, 2009) (Unpub. Disp.).

Plaintiffs' reliance on a purported 2009 FDA study that disclosed "the presence of carcinogens, toxins, and other impurities in . . . NJOY [e]-[c]igarettes" fails to indicate that NJOY had exclusive knowledge of the relevant facts. Plaintiffs allege they saw advertisements and purchased NJOY products, at the earliest, in December 2012. Because the study was publicly available for three years or more, "[p]laintiffs cannot show that [NJOY] possessed 'exclusive' knowledge of these facts at the time of purchase." See *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG (JCx), 2012 WL 313703, *8 (C.D. Cal. Jan. 23, 2012) ("As Plaintiffs purchased their Prius Hybrids more than two years after this information was disseminated, Plaintiffs cannot show that Toyota possessed 'exclusive' knowledge of these facts at the time of purchase"), aff'd, 554 Fed. Appx. 608 (9th Cir. Feb. 5, 2014) (Unpub. Disp.); see also *Herron*, 924 F.Supp.2d at1175 (concluding that defendant did not have exclusive knowledge after a published study had been available for nine months); *Wolph v. Acer Am. Corp.*, No. CV 09-01314 JSW, 2009 WL 2969467, *4 (N.D. Cal. Sept. 14, 2009) ("In a *Computer World* article printed in February 2007, computer professionals and companies recommend 2 GB of system

memory to run Microsoft's Vista.  Acer's notebook computers have 1 GB or less of shared system memory.  Plaintiffs purchased an Acer notebook computer in April 2008.  Based on Plaintiffs' own allegations, Plaintiffs have not alleged facts that show Acer had exclusive knowledge of the material facts and that Plaintiffs could not have reasonably discovered such facts").

For these reasons, the court cannot find that plaintiffs have alleged exclusive knowledge adequately.  To the extent based on NJOY's purportedly exclusive knowledge, therefore, the UCL, CLRA and FDUTPA claims fail.

### b.    Partial Representations

California recognizes that making partial representations can give rise to a duty to disclose when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Warner Constr. Corp.*, 2 Cal.3d 285, 294 (1970); *Roddenberry v. Roddenberry*, 44 Cal.App.4th 634, 666 (1996).  Thus, a defendant may not "suppress or conceal any facts within his knowledge which materially qualify those stated." See *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 613 (1992); see also *Vega v. Jones, Day, Reavis & Pogue,* 121 Cal.App.4th 282, 292 (2004).  "Florida law [also] recognizes that . . . places on one who undertakes to disclose material information a duty to disclose that information fully." See *Pitts Sales, Inc. v. King World Prods., Inc.*, 383 F.Supp.2d 1354, 1362 (S.D. Fla. 2005) (citing *Gutter v. Wunker*, 631 So.2d 1117, 1118-19 (Fla. App. 1994)); *ZC Ins. Co. v. Brooks*, 847 So.2d 547, 551 (Fla. App. 2003) (same).

Plaintiffs state in their opposition that the partial representation at issue is the warning on the NJOY King and OneJoy product packaging that there are certain risks associated with the product because it contains nicotine.[106]   Halbertstam and McGovern purchased NJOY King e-cigarettes.  The Florida plaintiff, Thomas, purchased an NJOY OneJoy e-cigarette.  The OneJoy packaging is allegedly substantially similar to the King packaging.[107]   Plaintiffs argue this was a "half truth" or partial representation, because by disclosing nicotine-related risks only, NJOY implied those were the sole

---

[106]Opposition at 22-23 (citing TAC, ¶ 61).

[107]TAC, ¶ 63.

health-related risks associated with NJOY e-cigarettes.[108]

The court cannot agree. The warning states, in full:

"WARNING: NJOY products are not smoking cessation products and have not been tested as such. The U.S. FDA has not approved NJOY products for any use and they are not intended to diagnose, cure, mitigate, treat, or prevent any disorder, disease, or physical or mental condition. NJOY products contain nicotine, a chemical known to the State of California to cause birth defects or other reproductive harm. Nicotine is addictive and habit forming, and it is very toxic by inhalation, in contact with the skin, or if swallowed. Ingestion of the non-vaporized concentrated ingredients in the cartridges can be poisonous. Physical effects of nicotine may include accelerated heart rate and increased blood pressure. If the cartridge is swallowed, seek medical assistance immediately. NJOY products are intended for use by adults of legal smoking age (18 or older in California), and not by children, women who are pregnant or breastfeeding, or persons with or at risk of heart disease, high blood pressure, diabetes, or taking medicine for depression or asthma. NJOY products may not be sold to minors. Identification of all persons under 26 will be required before purchase. Keep out of reach of children."[109]

In *Goldsmith v. Allergan, Inc*., No. CV 09-7088 PSG (Ex), 2011 WL 2909313, *5 (C.D. Cal. May 25, 2011), Allergan made representations concerning the fact that single-use vials of its drug Botox could be used on multiple patients. The representations were "literal[ly]" true, but the complaint alleged that "using a single-use vial of Botox on multiple patients was 'unsafe, violated CDC and state health department requirements and exposed doctors to the possibility of sanctions and malpractice claims.'" *Id.* Plaintiff asserted that Allergan's disclosure that one could use a single-use vial of Botox on multiple patients triggered a duty to disclose the fact that such use was unsafe. This was so, he contended, because Allergan "withheld facts that 'materially qualified' such representations and that a reasonable physician would want to know." *Id.* The court agreed: "The facts alleged – namely that using a single

---

[108]*Id.*

[109]TAC, ¶ 61.

vial on multiple patients was unsafe – are sufficient to plead a duty to disclose and, therefore, to withstand [Allergan]'s argument in favor of dismissal." *Id.*

NJOY's disclosure is analogous to the disclosure in *Goldsmith*.  It disclosed the fact that its e-cigarettes contain nicotine, and listed the health and safety-related risks associated with using nicotine.  Like Allergan's representations, the nicotine disclosures are literally true (or at least their truth is not contested at this stage); plaintiffs allege, however, that "[b]y warning of certain [concerning] nicotine, and the risks that [can] arise if the concentrated contents of the cartridge are swallowed without being vaporized, th[e] packaging implied that those are the only significant health-related risks related to NJOY E-Cigarettes."[110]  They maintain this was deceptive and misleading,

> "as the package omitted reference to the other carcinogens, toxins and impurities, including carcinogenic tobacco-specific nitrosamines found in NJOY E-Cigarettes, and the potentially harmful effects of propylene glycol. . . .  It also did not reference the difference in inhalation behavior between vaping and traditional smoking [ ] that may cause additional problems for persons who use e-cigarettes, including NJOY E-Cigarettes."[111]

A reasonable jury could find that disclosing nicotine-related risks while not disclosing other health-related risks was a half truth that could mislead a reasonable consumer.  Consequently, plaintiffs have adequately alleged a partial representation giving rise to a duty to disclose.  See *id.*; *In re Apple In–App Purchase Litig.*, 855 F.Supp.2d 1030, 1039 (N.D. Cal. 2012) (finding adequate allegations of partial representation where "Plaintiffs pled specific facts that Apple 'actively advertis[ed], market[ed] and promot[ed] its bait Apps as 'free' or nominal . . . .'  Plaintiffs further assert that they were not informed by Apple that once an iTunes account holder entered a password, he or she could make purchases for up to fifteen minutes without re-entering the password.  Plaintiffs contend that, '[h]ad any Plaintiff or other member of the Class known what their children were purchasing and for how much, they would not have permitted the sales transaction from being consummated'").

---

[110]*Id.*, ¶ 65.

[111]*Id.*

34

In addition to this partial representation, plaintiffs argued – most clearly at the hearing – that there was also a partial representation on NJOY's website.  The complaint alleges that all of NJOY's product packaging, inserts, and/or advertisements contain the address of NJOY's website.[112]  Plaintiffs maintain that there are partial representations concerning the safety of the primary ingredients in NJOY's e-cigarettes, propylene glycol and glycerin, on the website.[113]   On the frequently asked questions ("FAQ") page of NJOY's website, NJOY purportedly made the following representations:

> "Propylene Glycol - The Food and Drug Administration (FDA) has determined propylene glycol to be '***generally recognized as safe***' for use in food, and propylene glycol is used in cosmetics and medicines.  It is used in food coloring and flavoring, as an additive to keep food, medicines and cosmetics moist, and in machines that simulate smoke, although usage in simulating smoking devices is not currently included in the list of uses recognized by the FDA.  In NJOY, propylene glycol functions to provide the vapor mist that looks like smoke and to suspend flavor.

> • Glycerin - The FDA has determined glycerin to be '***generally recognized as safe***' for use in food, and glycerin is commonly used in foods, beverages, medical and pharmaceutical applications, such as cough drops, although usage in simulating smoking devices is not currently included in the list of uses recognized by the FDA."[114]

Plaintiffs contend these representations were misleading because, by stating that the FDA "generally recognize[s] [both substances] as safe" *for use in food*, NJOY misled consumers to believe that the substances are safe when inhaled – the actual purpose for which they are included in NJOY e-cigarettes.[115]  Plaintiffs cite studies indicating that "the gastrointestinal system processes foreign matter differently than the respiratory system, and ingredients that may be safe when digested may not be safe

---

[112]TAC, ¶ 86.

[113]*Id.*, ¶ 91.

[114]*Id.* (emphasis original)

[115]*Id.*, ¶ 92.

when inhaled, especially with long term use."[116]  A rational juror could conclude that disclosing that propylene glycol and glycerin were "generally recognized as safe" for use in food when the products as included in NJOY's products were being inhaled was a half truth that could mislead a reasonable consumer.  Consequently, plaintiffs have adequately alleged a partial representation giving rise to a duty to disclose for this reason as well.  See *Goldsmith*, 2011 WL 2909313 at *5; *Apple In–App Purchase Litig.*, 855 F.Supp.2d at 1039.

"The [c]ourt notes, however, that [p]laintiff[s] ha[ve] only adequately *ple[d]* a duty to disclose and that the question of whether [NJOY]'s alleged failure to disclose such facts was actually misleading is a question left for the finder of fact."  *Goldsmith*, 2011 WL 2909313 at *5 (emphasis original; citing *Williams*, 552 F.3d at 938 ("California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer")).

### c.    Conclusion as to Duty to Disclose

Although plaintiffs failed to allege exclusive knowledge, they adequately allege that NJOY made a partial representation.  NJOY's motion to dismiss plaintiffs' UCL, CLRA and FDUTPA omission claims is therefore denied.

### 6.    Whether Plaintiffs' Claims Fails Because They Are Based on a Lack of Substantiation Theory

NJOY contends that, even if a reasonable consumer might be misled by its advertising, plaintiffs' claims merely allege lack of substantiation, and are not cognizable for this reason.  California "[c]ourts have been careful to distinguish between allegations that a defendant's advertising claims are actually false and allegations that such claims lack substantiation."  *In re Clorox Consumer Litigation*, 894 F.Supp.2d 1224, 1232 (N.D. Cal. 2012) (citing *Fraker v. Bayer Corp*., No. CV 08-1564 AWI GSA, 2009 WL 5865687, *8-9 (E.D. Cal. Oct. 6, 2009)).  "Consumer claims for a lack of substantiation are not cognizable under California law."  *Id*. (citing *Stanley v. Bayer Healthcare LLC*, 11CV862–IEG BLM, 2012 WL 1132920, *3 (S.D. Cal. Apr. 3, 2012); *Chavez v. Nestle USA, Inc.*, No. CV 09–9192 GHW, 2011 WL 2150128, *5 (C.D. Cal. May 19, 2011); *Fraker,* 2009 WL 5865687 at *8).

---

[116] *Id.*

Although plaintiffs allege, in one paragraph, that "there is still insufficient research for NJOY to assert or convey that NJOY products do not pose health damages, including long-term health dangers, as smoking traditional cigarettes does,"[117] they also cite several studies that have allegedly found e-cigarettes contain many of the same dangerous carcinogens traditional cigarettes do.[118]   "Thus, [p]laintiffs do more than allege that there is no competent scientific evidence to support [NJOY's] claims; they allege that the competent scientific evidence shows that [NJOY's] claims are objectively false."  See *Clorox Consumer Litig.*, 894 F.Supp.2d at 1233; see also *Dabish v. Infinitelabs, LLC*, No. 13-CV-2048 BTM DHB, 2014 WL 4658754, *3 (S.D. Cal. Sept. 17, 2014) ("Although Plaintiff does assert that 'there is no competent and reliable scientific evidence that support any of Defendant's claims,' Plaintiff adds that there is scientific evidence directly refuting those representations. . . . Considering these allegations, and the Complaint as a whole, the Court disagrees with Defendant's assertion that Plaintiff's claims rely on a lack of substantiation theory, and DENIES the motion to dismiss as to that argument"); *Vasic v. Patent Health, LLC*, No. 13CV849 AJB MDD, 2014 WL 940323, *7 (S.D. Cal. Mar. 10, 2014) ("Moreover, considering the operative complaint as a whole, the Court cannot conclude that Plaintiffs are merely alleging a lack of substantiation.  Rather, the Complaint clearly alleges that the challenged representations are false" (citation omitted)); *Eckler v. Wal Mart Stores, Inc.*, No. 12-CV-727 LAB MDD, 2012 WL 5382218, *3 (S.D. Cal. Nov. 1, 2012) ("To the extent Eckler points to studies that allegedly debunk the purported benefits of glucosamine hydrochloride, she isn't just saying those benefits are unsubstantiated.  She is saying they are positively false").  Accordingly, NJOY's lack of substantiation argument therefore lacks merit.

In addition, it appears that no court has held that FDUTPA claims cannot be based on a lack of

---

[117]TAC, ¶ 60.

[118]See, e.g. TAC, ¶¶ 33-36 (2009 FDA study); *id.*, ¶ 37 (2010 article suggesting that e-cigarettes induced stronger puffing which "has the potential for 'leading to cancer in the deeper lung regions'"); *id.*, ¶ 43 (German study suggesting that e-cigarettes were dangerous because they do not extinguish naturally after roughly 10 puffs like normal cigarettes, but "can be used for hundreds of puffs without a break"); *id.*, ¶ 44 (2012 study finding that: "E-cigarettes assessed in the context of this study were found to have immediate adverse physiologic effects after short-term use that are similar to some of the effects seen with tobacco smoking")

substantiation.  To the contrary, numerous federal district courts have held otherwise.  See *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litigation*, 955 F.Supp.2d 1311, 1351 (S.D. Fla. 2013) ("Defendant has not cited to, and the Court has not found, any case that states that consumer claims for lack of scientific substantiation are not cognizable under the consumer fraud statutes of Arizona, Arkansas, or Florida"); *Toback v. GNC Holdings, Inc.*, No. 13-80526 CIV, 2013 WL 5206103, *3 (S.D. Fla. Sept. 13, 2013) ("Though some states' consumer fraud statutes do not recognize a cause of action for lack of substantiation, it is unclear that such a claim is unavailable under FDUTPA ").  For this reason as well, NJOY's lack of substantiation argument is unavailing.

**C.     Whether Plaintiffs Lack Standing to Assert Claims Based on Advertising They Did Not See**

NJOY notes, correctly, that the third amended complaint contains allegations concerning an array of advertisements that none of the plaintiffs purports to have seen or read.[119]  Halbertstam alleges that he saw NJOY's King packaging, and that he saw two advertisements, one that contained the words "Resolution Solution" and "Cigarettes, You've Met Your Match."  The second advertisement he saw contained the words "Try Something New In Bed."[120]  McGovern alleges that he saw the product packaging as well as the "Friends Don't Let Friends Smoke" television advertisement.[121]  Thomas alleges only that she saw the product packaging.[122]  As a result, NJOY contends that other advertisements are irrelevant, and should not be considered because plaintiffs lack standing to assert such claims.

"Both the CLRA and the UCL require [p]laintiffs to demonstrate standing.  A plaintiff may bring a claim under the CLRA so long as she 'suffer[ed] any damage as a result of' a proscribed practice under the CLRA."  *Doe v. SuccessfulMatch.com*, No. 13-CV-03376-LHK, 2014 WL 4954701, *4 (N.D. Cal. Sept. 30, 2014) (quoting Cal. Civ. Code § 1780(a)).  "This means that to . . . plead a CLRA claim

---

[119]Motion at 9-10.  See also TAC, ¶¶ 50-59.

[120]TAC, ¶ 111.

[121]*Id*., ¶ 114.

[122]*Id*., ¶ 116.

[adequately], a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result." *Id.* (citing *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1367 (2010) ("Again, the SAC does not allege Durell relied on any representation by Sharp in seeking or accepting treatment at its facility. The mere allegation that Durell suffered damages '[a]s a proximate result' of Sharp's deception is insufficient. Thus, the court's ruling is also correct on the CLRA claim").

The same is true with respect to UCL claims. Under that statute, a plaintiff must demonstrate that she "suffered injury in fact and [ ] lost money or property as a result of the unfair competition." CAL. BUS. & PROF. CODE § 17204. Interpreting this statutory language, California courts have held that when the "unfair competition" underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must, to have standing to sue, actually have relied on the misrepresentation, and suffered economic injury as a result of that reliance. *Tobacco II*, 46 Cal.4th at 326. California courts subsequently extended this actual reliance requirement to claims asserted under the UCL's unlawful prong to the extent "the predicate unlawful conduct is . . . misrepresentations." *Durell*, 183 Cal.App.4th at 1355. Likewise, "in [*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 327 (2011),] the California Supreme Court suggested that the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct." See *SuccessfulMatch.com*, 2014 WL 4954701 at*4 (citing *Kwikset Corp.*, 51 Cal.4th at 327).[123]

Under the FDUTPA, "in order for the consumer to be entitled to any relief . . . , the consumer must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act." See *Macias*, 694 So.2d at 90; see also *Natural Answers, Inc*., 529 F.3d at 1333 ("To bring a claim under [the FDUTPA], the plaintiff must have been aggrieved by the alleged unfair and deceptive act"). Thus, where a plaintiff has not seen or heard an allegedly deceptive advertisement, she cannot sue under the FDUTPA. See *Smoothie King Franchises, Inc.*, 2012 WL 630010 at *5 ("Only a party who is aggrieved by the alleged unfair and deceptive practice has standing to assert a violation of the statute. Here,

---

[123]The court need not address standing under the FDUPTA, because Thomas' only claim is based on fraudulent omissions, and the court has concluded such claims are not adequately pled.

[plaintiff's former franchisees] do not allege that they were the parties deceived by Smoothie King's allegedly unlawful advertising practices.  Instead, they assert only that their customers are 'consumers' as defined under the act and that *their customers* were deceived"); *Hall*, 2009 WL 5206144 at *9 (dismissing a FDUTPA claim for failure to allege causation because "Plaintiffs fail to identify any specific advertisements Plaintiff Hall and Decedent viewed, how they were misled by these advertisements, how these advertisements affected their prescriptions for Plavix and how these advertisements caused any of their injuries.  In other words, both of the Amended Complaints fail to identify which, if any, of the promotional or marketing materials were received, viewed or relied upon by Plaintiff Hall and Decedent, and if they were, when these materials were viewed and how they were relied upon. More simply stated, Plaintiffs have failed to allege any specific facts establishing a connection between the alleged conduct of Defendants and the alleged injury claimed").

Defendants argue that *Johns v. Bayer Corp.*, No. 09-CV-1935-DMS-JMA, 2010 WL 476688, *5 (S.D. Cal. Feb. 9, 2010), requires that the court dismiss any aspect of the claims based on advertisements plaintiffs did not see.  In *Johns*, the court held that where a plaintiff "alleged injury based upon a specific misrepresentation [in] [d]efendants' . . . product [or advertising]," he "cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product [on which] . . . he did not rely. . . ." *Id.*  This, the court concluded, was because the "statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations." *Id.*  On that basis, the court concluded that plaintiff "ha[d] standing under the UCL and CLRA to pursue his claim regarding [the] product [he saw] and the representations contained on that product; but he lack[ed] standing to pursue any other alleged claim under the UCL or CLRA." *Id.*

Here, as noted, plaintiffs plausibly plead that they saw the "Resolution Solution" print advertisement,[124] and the product packaging.[125]  Only McGovern, who is no longer a party, saw the "Friends Don't Let Friends Smoke" television advertisement. Thus, plaintiffs could only plausibly have relied on the product packaging and "Resolution Solution" advertisement.  This, however, does not

---

[124]TAC, ¶ 111.

[125]*Id.*, ¶ 114.

mandate that other aspects of their UCL, CLRA, and FDUTPA claims be dismissed at this point, because plaintiffs seek to represent a class of similarly situated individuals, and the other advertisements they plead are substantially similar to those on which plaintiffs relied.  Like the court in *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530-31 (C.D. Cal. 2011), "[t]he [c]ourt agrees with [p]laintiff[s] that treatises and the vast majority of persuasive authority indicate that [NJOY's] legal argument is flawed.  District courts in California routinely hold that the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'"  *Id.* (citing *Greenwood v. CompuCredit Corp.*, No. 08–04878 CW, 2010 WL 4807095, *3 (N.D. Cal. Nov. 19, 2010); *Arevalo v. Bank of Am. Corp.*, 850 F.Supp.2d 1008, 2011 WL 1195973, *4 (N.D. Cal. Mar. 29, 2011)); see also *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, *5 (N.D. Cal. Dec. 13, 2012) ("[T]his Court finds the reasoning articulated in *Bruno* and *Cardenas* more persuasive. Whether Koehler as a class representative can present claims on behalf of other class members who may have relied on different advertisements than those on the product label is an issue of typicality and adequacy of representation more properly disputed at the class certification stage.  This is very different from the issue of whether Koehler has standing to bring his own claims, which Litehouse does not even dispute").  Other circuits have reached the same conclusion.  See *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (holding that, because plaintiff had standing to sue for injury arising from his own benefit plan, his ability to represent class members who were participants or beneficiaries in different benefit plans should be analyzed under Rule 23, not as an issue of standing); see also 7AA Charles Alan Wright, Arthur R. Miller,  et al., FEDERAL PRACTICE AND PROCEDURE § 1785.1 (3d ed. 2005).

Given this authority, and given plaintiffs' allegation that all of the advertisements were part of a common marketing scheme that promoted NJOY e-cigarettes as a safer alternative to traditional cigarettes, the court presently declines to dismiss plaintiffs' claims to the extent they are based on advertisements other than those the named plaintiffs saw.  Whether plaintiffs can pursue these aspects

of the claims on behalf of absentee class members is best addressed in assessing class certification.[126]

### III.  CONCLUSION

For the reasons stated, NJOY's motion to dismiss is granted in part and denied in part.  The court denies NJOY's motion to dismiss the UCL, CLRA, and FDUTPA claims to the extent they are based on purportedly fraudulent omissions by NJOY.

The court grants NJOY's motion to dismiss the CLRA and UCL claims to the extent they are based on the "Try Something New in Bed" advertisement, as plaintiffs have failed to allege the when and where of misrepresentation with particularity as required by Rule 9(b).  It denies the motion to dismiss plaintiffs' UCL and CLRA claims to the extent they are based on the "Resolution Solution" and "Friends Don't Let Friends Smoke" advertisements, however.  The court also declines to dismiss the claims to the extent they are based on advertisements plaintiffs did not themselves see or hear.

Dismissal is with leave to amend.  See *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment"); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Plaintiffs may file an amended complaint within twenty (20) days of the date of this order if they are able to remedy the deficiencies the court has noted.

Plaintiffs may not plead new claims.  Should the scope of any amendment exceed the scope of

---

[126]As noted, NJOY conceded at the hearing that a reasonable consumer could conclude the advertisements conveyed the message that e-cigarettes are safer than traditional cigarettes; it argued, however, that a reasonable consumer could not conclude the advertisements conveyed the message that e-cigarettes were "known to be safe" or were "generally safe."  (TAC, ¶¶ 10, 17, 51, 91, 111-13, 115-16, 134, 168) To the extent based on such allegations, therefore, NJOY contended that it must be dismissed. Because there are a number of advertisements the named plaintiffs did not see but that they may be able to assert on behalf of absent class members, the court declines to dismiss plaintiffs' claims to the extent based on allegations that NJOY communicated that e-cigarettes were "known to be safe" or were "generally safe."  The propriety of these allegations is better suited to resolution at the class certification and/or summary judgment stage.

leave to amend granted by this order, the court will strike the offending portions of the pleading under Rule 12(f).  See FED.R.CIV.PROC. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading"); see also *Barker v. Avila*, No. 2:09-cv-0001-GEB-JFM, 2010 WL 31701067, *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to a federal law claim where the court had granted leave to amend only state law claims).

DATED: May 27, 2014

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE