1   GARCIA RAINEY BLANK & BOWERBANK LLP
      A Limited Liability Partnership
2   JOHN E. BOWERBANK, Cal. Bar No. 211566
      ngarciaguillen@garciasullivanlopez.com
3   JEFFREY M. BLANK, Cal. Bar No. 217522
      jblank@garciasullivanlopez.com
4   NORMA V. GARCIA, Cal. Bar No. 223512
      ngarciaguillen@garciasullivanlopez.com
5   695 Town Center Drive, Suite 700
    Costa Mesa, California  92626-1993
6   Telephone:   714.382.7000
    Facsimile:    714.784.0031
7

8   Attorneys for Defendant
    Five Pawns, Inc.
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

| 13  DUANE ROBERT GREENE, SHAWN RANDALL THOMAS, JAMES HIRTZEL, ANTHONY SWETALA, and DR. SPRAGUE SIMONDS on behalf of themselves and all others similarly situated, | Case No. 8:15-cv-01859-DOC-DFM |
|---|---|
| Plaintiffs, | **REPLY BRIEF IN SUPPORT OF DEFENDANT FIVE PAWNS, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| FIVE PAWNS, INC. | Date:        March 21, 2016 |
| Defendant | Time:        8:30 a.m. |
| | Courtroom:   9D |
| | Judge:        Hon. David O. Carter |

# **TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................... 1

II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER
      FRCP 12(b)(1) BECAUSE THE COURT LACKS SUBJECT
      MATTER JURISDICTION OVER SUCH CLAIMS ................................... 4

      **A.**  None Of The Plaintiffs Have Sufficiently Alleged A Causal
              Connection Between Their Alleged Injuries And The Alleged
              Deceptive Acts Of Five Pawns ............................................................. 4

      **B.**  Plaintiffs Lack Standing To Obtain Injunctive Relief ......................... 6

III.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER
      FRCP 12(b)(6) AND 9(b) ............................................................................ 6

      A.    Plaintiffs Have Failed To Satisfy FRCP 9(b)'S Heightened
            Pleading Requirement ......................................................................... 6

            1.    FRCP 9(b) Applies To Omission Claims ................................... 7

            2.    Plaintiffs Have Not Pled The Circumstances Of Fraud,
                  Including Reliance And Causation, With Particularity ..............7

            3.    Plaintiffs Erroneously Contend That Reliance Can Be
                  Inferred ..................................................................................... 10

      B.    PLAINTIFFS CONSUMER PROTECTION CLAIMS
            (COUNTS I-VI) FAIL TO STATE A CLAIM ................................. 12

            1.    Five Pawns, As A Matter Of Law, Owed No Duty To
                  Disclose Whether Any Of Its Products Contained AP
                  Or DA ....................................................................................... 12

                  a.    Plaintiffs' Application Of California Law
                        Regarding The Duty To Disclose Has Been
                        Rejected By The Ninth Circuit ....................................... 12

                  b.    Indiana Consumer Protection Claim ............................. 18

    c. New York Consumer Protection Claim ......................... 19

    d. Vermont Consumer Protection Claim ........................... 20

  2. Plaintiffs Have Failed To Adequately Allege Any

    Conduct That Would Be Likely To Deceive The

    Reasonable Consumer .............................................. 20

 C. PLAINTIFFS' SEVENTH CLAIM FOR BREACH OF

  EXPRESS WARRANTY FAILS TO STATE A CLAIM ................ 21

  1. Plaintiffs Failed To Provide Pre-Litigation Notice ................. 21

  2. Plaintiffs Misrepresent Their Own Allegations In A

    Deceptive Attempt To Satisfy The Elements Of Their

    Express Warranty Claim ........................................... 21

 D. PLAINTIFFS CANNOT OBTAIN DISGORGEMENT OF

  PROFITS ...................................................... 24

IV. A MORE DEFINITE STATEMENT (FRCP 12(E)) IS NECESSARY ....... 25

V. CONCLUSION ................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Andre Strishak & Assocs, P.C. v. Hewlett Packard Co.*,
　　300 A.D.2d 608, 752 N.Y.S.2d 400 (2002) .............................................. 19-20

*Arroyo v. TP-LINK USA Corp.*,
　　No. 5:14-cv-04999-EJD, 2015 U.S. Dist. LEXIS 133473,
　　2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ............................................. 22

*Asghari v. Volkswagen Grp. of Am., Inc.*,
　　42 F. Supp. 3d 1306 (C.D. Cal. 2013)...........................................................7

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
　　627 F. Supp. 2d 384 (D.N.J. 2009) ............................................................ 14

*Bronson v. Johnson & Johnson, Inc.*,
　　No. C 12-04184 CRB, 2013 U.S. Dist. LEXIS 54029,
　　2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ............................................. 11

*Captain & Co. v. Stenberg*,
　　505 N.E.2d 88 (Ind. Ct. App. 1987)............................................................ 12

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
　　475 Fed. App'x 113 (9th Cir. 2012).............................................................. 21

*Daugherty v. Am. Honda Motor Co.*,
　　144 Cal. App. 4th 824 (2006), as modified (Nov. 8, 2006) ..................... 12-13

*Davidson v. Kimberly-Clark Corp.*,
　　76 F. Supp. 3d 964 (N.D. Cal. 2014) ...................................................... 3, 4, 6

*Falk v. GMC*,
　　496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................................. 12, 13

*Feitelberg v. Credit Suisse First Boston, LLC*,
　　134 Cal. App. 4th 997 (2005)....................................................................... 25

1  *Figy v. Frito-Lay N. Am., Inc.,*
2        67 F. Supp. 3d 1075 (N.D. Cal. 2014) ........................................... 11
3  *Fimbel v. DeClark,*
4        695 N.E.2d 125 (Ind. Ct. App. 1998) ...................................... 18-19
5  *Gershman v. Bayer HealthCare LLC,*
6        No. 14-CV-05332-HSG, 2015 U.S. Dist. LEXIS 60835,
7        2015 WL 2170214 (N.D. Cal. May 8, 2015) ................................. 6
8  *Gold v. Lumber Liquidators, Inc.,*
9        No. 14-cv-05373-TEH, 2015 U.S. Dist. LEXIS 165264,
10       2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ................................ 7
11 *Goldsmith v. Allergan, Inc.,*
12       No. CV 09-7088 PSG (Ex), 2011 U.S. Dist. LEXIS 80998,
13       2011 WL 2909313 (C.D. Cal. May 25, 2011) ............................... 17
14 *Gomez-Jimenez v. New York Law Sch.,*
15       103 A.D.3d 13, 956 N.Y.S.2d 54 (2012) ...................................... 20
16 *Hairston v. South Beach Bev. Co.,*
17       No. CV 12-1429-JFW (DTBx), 2012 U.S. Dist. LEXIS 74279,
18       2012 WL 1893818 (C.D. Cal. May 18, 2012) ......................... 20-21
19 *Hall v. SeaWorld Entm't, Inc.,*
20       No. 3:15-CV-660-CAB-RBB, 2015 U.S. Dist. LEXIS 174294,
21       2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ...................2, 5, 7, 8-9, 10-11
22 *Henry v. Rehab Plus, Inc.,*
23       404 F. Supp. 2d 435 (E.D.N.Y. 2005) ......................................... 19
24 *Henderson v. Gruma Corp.,*
25       No. CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077,
26       2011 WL 1362188  (C.D. Cal. Apr. 11, 2011) ........................5, 6, 10
27 *Herron v. Best Buy Co.,*
28       924 F. Supp. 2d 1161 (E.D. Cal. 2013) ........................................ 17

REPLY BRIEF IN SUPPORT OF DEFENDANT FIVE PAWNS INC.'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1  *In re Actimmune Mktg. Litig.,*
2       No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408,
3       2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)............................................. 8, 11
4  *In re Brazilian Blowout Litig.,*
5       No. CV-10-8452-JFW (MANx), 2011 U.S. Dist. LEXIS 40158,
6       2011 WL 10962891 (C.D. Cal. Apr. 12, 2011)................................................ 23
7  *In re Carrier IQ, Inc., Consumer Privacy Litig.,*
8       78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...........................................................9
9  *In re Countrywide Fin. Corp. Sec. Litig.,*
10       588 F. Supp. 2d 1132 (C.D. Cal. 2008)...........................................................7
11  *In re Facebook PPC Adver. Litig.,*
12       No. 5:09-CV-03043-JF, 2010 U.S. Dist. LEXIS 87769,
13       2010 WL 3341062 (N.D. Cal. Aug. 25, 2010)..................................................8
14  *In re iPhone Application Litig.,*
15       6 F. Supp. 3d 1004 (N.D. Cal. 2013) ..............................................................5
16  *In re Tobacco II Cases,*
17       46 Cal. 4th 298 (Cal. 2009) ...................................................................... 10-11
18  *In re Toyota Motor Corp.,*
19       790 F. Supp. 2d 1152 (C.D. Cal. 2001)............................................................4
20  *Juarez v. Arcadia Financial, Ltd.,*
21       152 Cal. App. 4th 889 (2007)...................................................................... 25
22  *Kearns v. Ford Motor Co.,*
23       567 F.3d 1120, 1126 (9th Cir. 2009).................................................................7
24  *Lawson v. Hale,*
25       902 N.E.2d 267 (Ind. Ct. App. 2009) .......................................................... 18
26  *LiMandri v. Judkins* (1997)
27       52 Cal. App. 4th 326 (1997)...................................................... 12, 15-16, 17
28

*Marilao v. McDonald's Corp.*,

  632 F. Supp. 2d 1008 (S.D. Cal. 2009) ............................................................ 4

*McKinney v. Google, Inc.*,

  No. 5:10-CV-01177 EJD, 2011 U.S. Dist. LEXIS 97958,

  2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) ................................................ 23

*Opperman v. Path, Inc.*,

  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................................ 5

*O'Shea v. Littleton*,

  414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ........................................ 6

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,

  85 N.Y. 2d 20 (1995) ...................................................................................... 12

*Reinhardt v. Gemini Motor Transp.*,

  869 F. Supp. 2d 1158 (E.D. Cal. 2012) ..................................................... 4, 24

*Sinclair v. Fox Hollow of Turlock Owners Ass'n*,

  No. 1:03-cv-05439-OWW-DLB, 2011 U.S. Dist. LEXIS 69199,

  2011 WL 2632307 (E.D. Cal. June 28, 2011) .............................................. 25

*Smith v. LG Elecs. U.S.A., Inc.*,

  No. 13-cv-04361-PJH, 2014 U.S. Dist. LEXIS 31577,

  2014 WL 989742 (N.D. Cal. Mar. 11, 2014) .................................... 3, 22, 24

*Tait v. BSH Home Appliances Corp.*,

  No. SACV 10-711 DOC AN, 2011 U.S. Dist. LEXIS 54456,

  2011 WL 1832941 (C.D. Cal. May 12, 2011) .......................................... 9-10

*Vastano v. Killington Valley Real Estate*,

  929 A.2d 720 (2007) ...................................................................................... 12

*Williams v. Yamaha Motor Corp., U.S.A.*,

  106 F. Supp. 3d 1101 (C.D. Cal. 2015) ..................................................... 2, 14

*Wilson v. Hewlett-Packard Co.*,

  668 F.3d 1136 (9th Cir. 2012) ................................ 1, 13-14, 15, 16

-vii-

*Wirth v. Mars Inc.*,
     No. SA CV 15-1470-DOC (KESx), 2016 U.S. Dist. LEXIS 14552,
     2016 WL 471234 (C.D. Cal. Feb. 5, 2016) .............................. 1, 13, 14-15, 16

*Woods v. Maytag Co.,*
     No. 10-CV-0559 (ADS)(WDW), 2010 U.S. Dist. LEXIS 116595,
     2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ................................................. 19

REPLY BRIEF IN SUPPORT OF DEFENDANT FIVE PAWNS INC.'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

# CODES, STATUTES AND REGULATIONS

## Federal

21 CFR §172.515 ............................................................................ 1, 14

21 CFR §184.1278 .......................................................................... 1, 14

FRCP 9(b) ...........................................................3, 4, 6, 7, 8, 9, 10, 11, 25

FRCP 12(b)(1) ..................................................................... 3, 4, 8, 25

FRCP 12(b)(6) ............................................................... 3, 4, 6, 8, 21, 25

FRCP 12(e) ............................................................................. 4, 25

## California

California Consumer Legal Remedies Act ("CLRA") ................................. 15, 16, 21

California False Advertising Law ("FAL") ........................................ 15, 21

California Unfair Competition Law ("UCL") ............................... 15, 16, 21

## Indiana

Indiana Deceptive Consumer Sales Act ("IDCSA") ................................. 18

## New York

New York General Business Law ("GBL") §349 ................................. 19, 20

REPLY BRIEF IN SUPPORT OF DEFENDANT FIVE PAWNS INC.'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

In their Opposition, Plaintiffs apply legal standards expressly rejected by the Ninth Circuit and even misrepresent their own allegations, all in a desperate attempt to salvage their fatally defective First Amended Complaint ("FAC").

Amid their desperate tactics, Plaintiffs do concede that their hodgepodge of vague allegations concerning statements allegedly made by Five Pawns solely to three individuals, and not to Plaintiffs, cannot constitute actionable misrepresentations. (Opposition ("Oppo."), p. 3, lns. 3-6.)  Instead, Plaintiffs narrow the scope of their claims to Five Pawns' alleged failure to disclose that some of its products contained diacetyl ("DA") and acetyl propionyl ("AP"), two flavorings responsible for the buttery and creamy taste of many foods and beverages and approved by the FDA for use in food. (Oppo., p. 2, ln.3; FAC, ¶¶9, 72, 76; 21 CFR §184.1278, 21 CFR §172.515.)  Plaintiffs implicitly acknowledge that Five Pawns was not obligated under any law to disclose the presence of DA and AP and that Five Pawns never represented its products were DA or AP free.  Nevertheless, Plaintiffs contend a duty to disclose was triggered because the alleged presence of DA and AP in Five Pawns' products and the alleged potential health risks of these ingredients constitute material facts and/or because Five Pawns stated a "half-truth" by making Proposition 65 disclosures concerning nicotine, implying nicotine was the "sole toxin" and the "sole health risk" associated with the product. (Oppo., p. 11, p. 13, lns. 3-6.)

Plaintiffs' argument that a duty to disclose all material facts should be imposed on manufacturers was rejected by the Ninth Circuit in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) and by this very Court on February 16, 2016 in *Wirth v. Mars Inc.*, No. SA CV 15-1470-DOC (KESx), 2016 WL 471234 (C.D. Cal. Feb. 5, 2016).  This Court, following *Wilson* and several other district courts, "reaffirmed that a manufacturer's duty to affirmatively disclose information

to consumers is confined to safety issues." *Id.*, at \*3.  This means there must be a design defect and a safety hazard.  *Williams v. Yamaha Motor Corp., U.S.A*., 106 F. Supp. 3d 1101, 1108 (C.D. Cal. 2015).  This case does not involve either.

If all manufacturers were required to disclose all potential toxins and impurities in their products and all potential health risks associated with such toxins and impurities, even if the government has not required such disclosure, it would place an extremely burdensome, costly, and impracticable duty on manufacturers. In fact, manufacturers would be required to disclose every specific ingredient and every hypothetical risk associated with such ingredient, because there is likely some study or some article somewhere on the Internet that could suggest that the ingredient could pose some sort of health risk.  Further, if compliance with Proposition 65 triggered a duty to disclose all ingredients, including their hypothetical health risks, not covered by Proposition 65, it would vastly expand the scope of Proposition 65.

Even if Plaintiffs had properly alleged a duty to disclose, they have failed to allege any reliance or causation, as required.  For an omission claim, a plaintiff must plead with specificity "that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.  In other words, a plaintiff must show that had the omitted information been disclosed, one would have been aware of it and behaved differently." *Hall v. SeaWorld Entm't, Inc*., No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, \*5 (S.D. Cal. Dec. 23, 2015).

Plaintiffs completely ignore the exposure requirement in their Opposition, electing to mischaracterize the legal standard to solely focus on the second part regarding the "behaving differently" component, for which Plaintiffs rely on a conclusory inconsistent allegation.  The assertions are not specific to any Plaintiff regarding whether they would have paid as much for Five Pawns' products or would not have purchased such products at all.  Such an allegation does not even come close to satisfying the second part of the test.

1    Plaintiffs' failure to properly allege reliance or causation requires dismissal

2   of the FAC under FRCP 12(b)(1) for lack of Article III standing, FRCP 12(b)(6),

3   and FRCP 9(b).

4    Further, "where a plaintiff has no intention of purchasing the product in the

5   future, a majority of district courts have held that the plaintiff has no standing to

6   seek prospective injunctive relief, and some have also held that a plaintiff who is

7   aware of allegedly misleading advertising has no standing to seek prospective

8   injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d. 964, 970 (N.D.

9   Cal. 2014). Plaintiffs, without any argument, ask this Court to adopt the minority

10  view and create a public policy exception to Article III standing for injunctive relief.

11  Only the majority view is appropriate here and should be followed in this case.

12   Moreover, Plaintiffs fail to address Five Pawns' argument that a reasonable

13  consumer reading a warning concerning nicotine would not make the giant leap that

14  because AP and DA are not listed in the warning, such flavorings are not in the

15  product. Instead, Plaintiffs contend resolution of this issue is premature.

16   Concerning Plaintiffs' express warranty claim, Plaintiffs have not and cannot

17  dispute that the allegations in the FAC fail to allege a "specific and unequivocal"

18  statement as required by law. *Smith v. LG Elecs. U.S.A., Inc.*, No. 13-cv-04361-

19  PJH, 2014 WL 989742, at *4 (N.D. Cal. Mar. 11, 2014). Incredibly, rather than

20  dismiss the claim, Plaintiffs deceptively mischaracterize the claim as one "based on

21  Defendant's statement that its products contained *only* natural ingredients, as well as

22  its statements that they contained nicotine and their *only* health risk was from that

23  and from inhaling non-vaporized substances." (Oppo., p., 19, lns. 8-11, emphasis

24  added.) Plaintiffs do not cite to the FAC, as the FAC contains no such allegations.

25  To the contrary, the FAC contains numerous allegations that Five Pawns discloses

26  the use of artificial ingredients (FAC, ¶66, 76) and that by disclosing the presence of

27  nicotine and its risks, Five Pawns "implies" or "conveys the impression" that those

28  are the only health-related risks. (FAC, ¶64, 68).

1       Lastly, acknowledging that their disgorgement of profits request may be

2  improper, Plaintiffs seek to punt the issue.  Courts, however, routinely dismiss such

3  improper requests at the pleading stage.  *Reinhardt v. Gemini Motor Transp.*, 869 F.

4  Supp. 2d 1158, 1174-75 (E.D. Cal. 2012).

5       Five Pawns respectfully requests that this Court dismiss Plaintiffs' baseless

6  lawsuit under FRCPs 12(b)(1), 12(b)(6), and 9(b).  Alternatively, Five Pawns moves

7  for a more definite statement under FRCP 12(e).

8  **II.**    **<u>PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER FRCP</u>**

9       **<u>12(b)(1) BECAUSE THE COURT LACKS SUBJECT MATTER</u>**

10     **<u>JURISDICTION OVER SUCH CLAIMS.</u>**

11     **A.**    **<u>None Of The Plaintiffs Have Sufficiently Alleged A Causal Connection</u>**

12         **<u>Between Their Alleged Injuries And The Alleged Deceptive Acts Of</u>**

13         **<u>Five Pawns</u>**.

14       "To establish a 'case or controversy' within the meaning of Article III, a

15  plaintiff must, at an 'irreducible minimum,' show an 'injury in fact' which is

16  concrete and not conjectural, as well as actual or imminent; ***a causal causation***

17  ***between the injury and defendant's conduct or omissions***; and a likelihood that the

18  injury will be redressed by a favorable decision.  *Davidson*, *supra*, 76 F. Supp. 3d at

19  968 (emphasis added.)

20       In their Opposition, Plaintiffs confuse the concepts of "injury in fact" and

21  "causal connection."  Plaintiffs, in conclusory fashion, "allege that they were injured

22  because they would not have purchased Defendant's products or would not have

23  paid the premium price for them if they had known that those products contained

24  dangerous levels of DA and AP."[1]  (Oppo., P. 8, lns. 24-28.)  Plaintiffs want the

25

26  [1] Plaintiffs cite to *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1023 (S.D.
Cal. 2009) for the definition of "injury in fact" and to *In re Toyota Motor Corp.*, 790

27  F. Supp. 2d 1152, 1161-65 (C.D. Cal. 2001), where the court analyzed the injury in

28  fact requirement. (Oppo. P., 9, lns. 7-13, 17-20.)

1 Court to assume a "causal connection" to alleged omissions based solely on an

2 alleged "injury in fact."

3     "Adequately establishing injury in fact, however, is only part of the battle.*"

4 *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013).  There,

5 the district court explained that to demonstrate Article III standing, "Plaintiffs must

6 also show that this injury is causally linked to Apple's misrepresentations regarding

7 data collection and privacy." *Id*.  The court further explained that "[f]or the

8 Plaintiffs' harm to be 'fairly traceable' to Apple's misrepresentations, Plaintiffs must

9 have seen the misrepresentations and taken some action based on what they saw—

10 that is, Plaintiffs must have actually relied on the misrepresentations to have been

11 harmed by them." *Id*.

12     Plaintiffs suggest that because they "do not seek to trace their injury to

13 representations[,]" they are relieved of this requirement to allege what they reviewed

14 before purchasing the products at issue.  (Oppo. P. 8, ln. 22.)  Regarding omissions,

15 however, "'a plaintiff must show that had the omitted information been disclosed,

16 ***one would have been aware of it*** and behaved differently.'" *Hall*, *supra*, 2015 WL

17 9659911, at *5. emphasis added.  There is not one single allegation in the FAC

18 pertaining to awareness of the alleged omitted information.

19     In the two cases cited by Plaintiffs that touch on causation, there were

20 allegations concerning what each plaintiff viewed.  *See Opperman v. Path, Inc*., 87

21 F. Supp. 3d 1018, 1037 (N.D. Cal. 2014) (complaint contained allegations that

22 "[e]ach Plaintiff viewed Apple's online, in-store, and/or television

23 advertisements[]"); *Henderson v. Gruma Corp*., No. CV 10-04173 AHM (AJWx),

24 2011 WL 1362188, at *6 (C.D. Cal. Apr. 11, 2011) ("Plaintiffs alleged they read

25 and relied on, for each purchase made during the class period, Gruma's alleged

26 misleading labels …..")

27     For these reasons, Plaintiffs lack Article III standing to pursue their claims.

28 Moreover, Plaintiffs do not refute Plaintiff Simonds' lack of Article III standing

REPLY BRIEF IN SUPPORT OF DEFENDANT FIVE PAWNS INC.'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

based on his allegation that when he first purchased Five Pawns' products, Five Pawns had already disclosed the alleged omitted information. (FAC, ¶¶31, 57.)

### B.   Plaintiffs Lack Standing To Obtain Injunctive Relief.

In their Opposition, Plaintiffs acknowledge that unless this Court adopts the minority view and creates a novel public policy exception, Plaintiffs lack Article III standing to pursue injunctive relief.  (Oppo. P. 9, lns. 25-28.)

"[W]here a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief, and some have also held that a plaintiff who is aware of allegedly misleading advertising has no standing to seek prospective injunctive relief." *Davidson*, *supra*, 76 F. Supp. 3d at 970.

In their Opposition, Plaintiffs fail to respond to Five Pawns' arguments that Plaintiffs cannot satisfy either of these two tests.  This is because Plaintiffs have not alleged they intend to purchase Five Pawns' products in the future; indeed, Plaintiffs Greene, Thomas, and Hirtzel have specifically alleged that they stopped purchasing Five Pawns' products.  (FAC, ¶¶27-29.)  Moreover, Plaintiffs alleged that Five Pawns now discloses AP and DA, demonstrating that there is no "real and immediate threat of repeated injury."  (FAC, ¶¶47, 70; *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

Instead, Plaintiffs rely on the *Henderson v. Gruma Corp.*, *supra*, 2011 WL 1362188, at *2, line of cases that "have held that a class action plaintiff need not continue to be personally subject to harm in order to seek injunctive relief for the putative class." (Oppo. P. 9, lns. 25-28.)  However, "[s]tate policy objectives cannot trump the requirements of Article III."  *Gershman v. Bayer HealthCare LLC*, No. 14-CV-05332-HSG, 2015 WL 2170214, at *8 (N.D. Cal. May 8, 2015).

### III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER FRCP 12(b)(6) AND 9(b).

### A.   Plaintiffs Have Failed To Satisfy FRCP 9(b)'s Heightened Pleading

1    **Requirement.**

2    **1.    FRCP 9(b) Applies To Omission Claims.**

3    In a footnote, Plaintiffs cite to *Gold v. Lumber Liquidators, Inc.*, No.

4    14-cv-05373-TEH, 2015 WL 7888906, at *10 (N.D. Cal. Nov. 30, 2015) and

5    actually contend that "[i]t is not altogether clear whether Rule 9(b) applies to

6    omission-based claims, such as the claims here." (Oppo., p. 16, f.n. 4.)  Plaintiffs

7    fail to point out that in *Gold*, the defendant "Lumber Liquidators asserted only that

8    'Rule 9(b) still applies to omissions claims,' without any supporting authority." *Id*.

9    The court held: "Without any authority to suggest otherwise, the Court must follow

10   the cases cited by Plaintiffs, and therefore holds that omissions-based claims need

11   not be pleaded with the same specificity as misrepresentations-based claims." *Id*.

12   However, to satisfy FRCP 9(b), "a plaintiff alleging fraudulent omission or

13   concealment must still plead the claim with particularity." *Asghari v. Volkswagen*

14   *Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013).  Further, in *Hall,*

15   *supra,* the district court held that the omission claim "must be pled with particularity

16   pursuant to the heightened pleading standards in Rule 9(b)[]" which requires

17   "allegations of actual reliance, at least by the named plaintiffs, for those plaintiffs to

18   have standing."  2015 WL 9659911, at *2.

19   Thus, FRCP 9(b) unquestionably applies to omission claims.

20   **2.    Plaintiffs Have Not Pled The Circumstances Of Fraud, Including**

21   **Reliance And Causation, With Particularity.**

22   Plaintiffs do not dispute that reliance is one of the circumstances of fraud,

23   which must satisfy FRCP 9(b).  (Motion, p. 13, lns. 4-12, p. 14, lns. 1-9, Oppo., pp.

24   17-18; *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1198 (C.D.

25   Cal. 2008) (holding that "[t]he reliance element is subject to the pleading

26   requirements of Rule 9(b) because it is one of the 'circumstances constituting

27   fraud.'"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  Nor do

28   Plaintiffs dispute that the California, Indiana, and Vermont consumer protection

1   statutes require reliance and the New York consumer protection statute requires

2   causation. (Motion, p. 13, lns. 19-20, f.n. 1.)

3         Instead, Plaintiffs contend that the FRCP 9(b) cases cited by Five Pawns

4   "involved *allegations* of misrepresentations …." (Oppo., P. 17, lns. 3-4.)  While this

5   contention is irrelevant, Five Pawns, in its Motion, cited *In re Facebook PPC Adver.*

6   *Litig.*, No. 5:09-CV-03043-JF, 2010 WL 3341062, at *10 (N.D. Cal. Aug. 25,

7   2010), where the court held that the plaintiffs' omission claim failed to satisfy FRCP

8   9(b) because the plaintiffs did not allege the specific policies and representations

9   they reviewed. (Motion, P. 11, lns. 20-23.)  Five Pawns also cited *In re Actimmune*

10  *Mktg. Litig.,* No. C 08-02376 MHP, 2009 WL 3740648, at *11 (N.D. Cal. Nov. 6,

11  2009) *aff'd*, 464 F.App'x 651 (9th Cir. 2011) where the district court held that

12  "[w]ithout some link connecting the doctors' alleged beliefs that Actimmune was

13  efficacious for the treatment of IPF to some fraudulent representation *or omission*

14  made by InterMune, the plaintiffs' allegations cannot satisfy Rule 12(b)(1), Rule

15  12(b)(6) or Rule 9(b)."  Emphasis added. (Motion, P. 14, lns. 10-20).

16        In *Hall, supra*, the district court explained that to satisfy FRCP 9(b) with

17  respect to reliance for an omission claim, "a plaintiff must show that the defendant's

18  nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.'

19  In other words, 'a plaintiff must show that had the omitted information been

20  disclosed, one would have been aware of it and behaved differently."

21  2015 WL 965911, at *2, internal citation omitted.  There, the court held:

22        "Here, as discussed above, the FAC does not specifically allege that

23        Plaintiffs saw or heard, let alone relied on, any advertisements, offers,

24        or other representations of SeaWorld in advance of their ticket

25        purchases. As a result, the FAC fails to plead how, if the allegedly

26        omitted material had been disclosed, the Plaintiffs would have been

27        aware of it and behaved differently. Accordingly, Plaintiffs have failed

28        to plead with specificity that they relied on any omissions in purchasing

-8-

REPLY BRIEF IN SUPPORT OF DEFENDANT FIVE PAWNS INC.'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   their tickets and therefore lack standing to bring their claims based on

2   purported omissions as well."

3   *Id.*, at *6.

4       Recognizing that the FAC lacks any allegations concerning awareness,

5   Plaintiffs, in their Opposition, mischaracterize the legal standard to solely focus on

6   the second part of the legal test.

7       In their Opposition, Plaintiffs cite to *In re Carrier IQ, Inc., Consumer Privacy*

8   *Litig.*, 78 F. Supp. 3d 1051, 1112-1113 (N.D. Cal. 2015), to contend that "[i]n a case

9   alleging omissions, it is sufficient for plaintiff to plead that plaintiffs would not have

10   purchased a product if the disclosure were made."  (Oppo. P., 16, lns. 4-6).  Later in

11   the Opposition, Plaintiffs damage their own argument by quoting from the very

12   same case: "'[R]eliance can be proved in fraudulent omission case by establishing

13   that had the omitted information been disclosed, [the plaintiff] ***would have been***

14   ***aware of it*** and behaved differently." (Oppo., P. 18, lns. 5-8.) (emphasis added.)

15       Similar to the plaintiffs in *Hall, supra*, "the FAC does not specifically allege

16   that Plaintiffs saw or heard, let alone relied on, any advertisements, offers, or other

17   representations of . . . [Five Pawns] in advance of their . . . purchases.  As a result,

18   the FAC fails to plead how, if the allegedly omitted material had been disclosed, the

19   Plaintiffs would have been aware of it and behaved differently."

20       Concerning Plaintiffs' awareness, there are no allegations whatsoever.

21   Concerning behaving differently, the general and contradictory allegation that

22   Plaintiffs would not have paid as much for Five Pawns' products, or would not have

23   purchased such products (FAC, ¶26) does not satisfy FRCP 9(b).  Are Plaintiffs

24   alleging that they would never vape any e-liquid that contained AP and DA and

25   hence would not have purchased Five Pawns' products at all, or are they alleging

26   that they would vape e-liquid containing AP and DA but only if the products cost

27   less and if so, how much less?  Are certain named Plaintiffs alleging one theory and

28   other named Plaintiffs the different theory?  Each named Plaintiff must satisfy Rule

9(b).  *Tait v. BSH Home Appliances Corp.*, No. SACV 10-711 DOC AN, 2011 WL 1832941, at *3 (C.D. Cal. May 12, 2011).

For all of these reasons, Plaintiffs' conclusory allegations "do not come within a country mile of satisfying Rule 9(b)" with respect to reliance or causation. *Id*., quoting *Tait*, *supra*, 2011 WL 1832941, at *3, 7 (dismissing both California consumer protection claims and New York General Business Law claim because there were no allegations that the plaintiffs saw a given advertisement or marketing item of the defendant's).

**3.     Plaintiffs Erroneously Contend That Reliance Can Be Inferred.**

In their Opposition, Plaintiffs do not dispute that reliance is an element for all three California consumer protection statutes. Instead, in conclusory fashion, Plaintiffs cite to a pre-*Tobacco II* case and contend that "[w]here the omission or misrepresentation is material, there is a presumption or at least an inference of reliance." (Oppo., P. 18, lns. 1-2.)  Plaintiffs also cite to *Henderson, supra*, 2011 WL 1362188, at *5, which quoted the portion of the *In re Tobacco II Cases,* 46 Cal. 4th 298, 327 (2009), where, before it articulated the new reliance standard, it was reciting previous decisions. (Oppo., P. lns. 1-20.)  Then, in a footnote, Plaintiffs articulate the relaxed pleading standard from the *In re Tobacco II Cases* for extensive and long-term advertising campaigns.  (Motion, P. 18, f.n. 6.)

Plaintiffs' arguments lack all merit following *Tobacco II*.  Indeed, the same argument advanced by Plaintiffs has been routinely rejected by courts, including by the district court in the recent *Hall* decision.

"Instead, Plaintiffs rely on *Tobacco II* for the proposition that when the alleged misrepresentations are alleged to be material, a plaintiff is entitled to a 'presumption, or at least an inference, of reliance.' Plaintiffs' reliance on *Tobacco II* is misplaced. *Tobacco II* 'does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign is

-10-

1    entitled to restitution.' Rather, *Tobacco II*'s much narrower holding is

2    that a plaintiff who viewed numerous statements and advertisements

3    during a decades-long advertising campaign is not required 'to plead

4    with an unrealistic degree of specificity that the plaintiff relied on

5    particular advertisements or statements.' That being said, a plaintiff

6    'cannot rely on *Tobacco II* unless they have alleged an advertising

7    campaign that is similarly extensive and lengthy.'"

8    *Hall, supra*, 2015 WL 9659911, at *3-4.

9        In *Figy v. Frito-Lay N. Am., Inc.,* 67 F. Supp. 3d 1075, 1087-89 (N.D. Cal.

10   2014) the district court held that *Tobacco II* does not support the existence of a

11   presumption of reliance and that the California Supreme Court there "required

12   named plaintiffs to plead actual reliance on the misrepresentations at issue."

13       While Plaintiffs, in a footnote, cite the *Tobacco II* relaxed pleading standard

14   for an extensive and lengthy advertising campaign, Plaintiffs never argue that this

15   standard applies to this case.  As Five Pawns explained in its Motion, FRCP 9(b)

16   trumps the relaxed pleading standard, which is only applicable in narrow

17   circumstances as in *Tobacco II*.[2]  Plaintiffs have not alleged any false

18   advertisements since Five Pawns launched products in 2012 (FAC, ¶33), let alone a

19   decades-long ubiquitous advertising campaign as was the case in *Tobacco II*.

20       Further, Plaintiffs have not and cannot contest Five Pawns' argument that the

21   Indiana, New York, and Vermont consumer protection statutes all contain reliance

22   or causation requirements.  (Mot. P. 13, lns. 19-20, f.n. 1.)  Nor do Plaintiffs refute

23   Five Pawns' argument that FRCP 9(b) prevents an inference of reliance or causation

24   _____

25   [2] (Motion, P. 12, lns. 9-23, relying on *Actimmune Mktg. Litig., supra*, 2009 WL

26   370648, at *13 (holding that Rule 9(b) trumps relaxed pleading standard); *Bronson v. Johnson & Johnson, Inc.,* No. C 12-04184 CRB, 2013 WL 1629191, at *3 (N.D.

27   Cal. Apr. 16, 2013) (relaxed pleading standard inapplicable to marketing campaign that began in 2012).)

28

REPLY BRIEF IN SUPPORT OF DEFENDANT FIVE PAWNS INC.'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT

regardless of state law.  Instead, Plaintiffs cite state law decisions and contend

reliance can be presumed where an omission is material.  (Oppo., P., 18, lns. 1-7.)

Even if this case was proceeding in state court, Plaintiffs' argument would still lack

merit.  For Indiana and Vermont law, Plaintiffs rely on *Captain & Co. v. Stenberg,*

505 N.E.2d 88 (Ind. Ct. App. 1987) and *Vastano v. Killington Valley Real Estate*,

939 A.2d 720 (2007), two irrelevant cases involving duties owed by a seller to a

buyer in the context of a residential purchase agreement.  In fact, *Stenberg* directly

contradicts Plaintiffs' position, holding that there must be actual reliance and

analyzing whether the buyer's reliance was justified in light of the buyer's own

knowledge.  *Stenberg,* 505 N.E.2d at 97.  For New York law, Plaintiffs rely on

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.

2d 20, 26 (1995) which simply holds that while the statute does not require proof of

justifiable reliance, it does require proof of causation.

**B.   PLAINTIFFS' CONSUMER PROTECTION CLAIMS (COUNTS I-VI) FAIL TO STATE A CLAIM.**

    **1.   Five Pawns, As A Matter Of Law, Owed No Duty To Disclose Whether Any Of Its Products Contained AP Or DA.**

        **a**.   **Plaintiffs' Application Of California Law Regarding The Duty To Disclose Has Been Rejected By The Ninth Circuit.**

Plaintiffs contend that if one of the four tests for the tort of fraud is satisfied, a

defendant must disclose all material facts, which they define as any information

would cause a reasonable consumer to behave differently if they were aware of such

fact.  (Oppo. P. 10-11.)  Plaintiffs rely on the four tests gleaned from a fraudulent

concealment case, *LiMandri v. Judkins* (1997) 52 Cal. App. 4th 326, 336 (1997).  As

discussed below, Plaintiffs also rely on rejected case law in *Falk v. GMC*, 496 F.

Supp. 2d 1088 (N.D. Cal. 2007).  Plaintiffs ignore that under *Daugherty v. Am.*

*Honda Motor Co*., 144 Cal. App. 4th 824, 835 (2006), as modified (Nov. 8, 2006),

relied on by Five Pawns in its Motion, to be actionable, an "omission must be

contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Id*.  Instead, Plaintiffs simply attempt to distinguish the facts of *Daugherty*. The Ninth Circuit, however, has adopted the *Daugherty* test and explained that it limits the duty of disclosure to warranty obligations, safety issues, and affirmative misrepresentations.  The Ninth Circuit rejected the holding in *Falk* to the extent *Falk* held that the duty to disclose requires the disclosure of any information that would cause a reasonable consumer to behave differently.  *Wilson*, *supra*, 668 F.3d at 1141.

Similar to the Plaintiffs in the case at hand, in *Wilson*, *supra*, the court stated: "Plaintiffs contend that California law does not require that a concealed fact relate to a safety issue for liability to attach; rather, Plaintiffs cite to *Falk v. GMC*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), in arguing that the concealed fact need only be 'material.'"  *Id.*  The Ninth Circuit explained, however, that "California courts have generally rejected a broad obligation to disclose, adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty . . . ." Id.*  The Ninth Circuit further explained that "California federal courts have generally interpreted *Daugherty* as holding that '[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.'"  *Id.*, internal citation omitted.  Otherwise, the Ninth Circuit explained that a duty to disclose would supplant a limited express warranty and "product defect litigation would become as widespread as manufacturing itself."  *Id*. at 1141-42, internal citation omitted.

In *Mars, supra*, this Court noted that "[f]ollowing Wilson, several federal district courts have reaffirmed that a manufacturer's duty to affirmatively disclose information to consumers is confined to safety issues."  2016 WL 471234, *3.  This Court rejected the argument that *Wilson* only applies in product defect cases and proclaimed that "[t]his Court instead joins the Ninth Circuit and the many other district courts that have applied the *Wilson* rule in both product defect and non-

-13-

product defect cases." *Id*. at *5.

Several district courts have applied a narrow four-part test, derived from the language in *Wilson*, to determine if a "safety issue" is present.  Under this test, "Plaintiffs must establish: (1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard; and (4) that Defendant knew of the defect at the time a sale was made." *Williams, supra,* 106 F. Supp. 3d at 1108.  Plaintiffs have not and cannot dispute that this test has not been met.  They have not alleged the existence of a design defect, or the existence of an unreasonable safety hazard.  Nor have Plaintiffs alleged any type of physical injury.

Plaintiffs, relying on rejected legal principles, allege that Five Pawns should have a duty to disclose a "variety of toxins, impurities, and related potential health hazards" because these are material facts.  (FAC, ¶18.)   Plaintiffs contend that inhalation of AP and DA, two flavorings approved by the FDA for use in food, pose potential health risks, based on incidents in a different context involving "Bronchiolitis Obliterans in popcorn factory workers exposed to DA and/or AP[.]" (FAC, ¶¶9, 72, 76; 21 CFR §184.1278, 21 CFR §172.515.) Demonstrating their desperation, Plaintiffs even misrepresent the case they cite within their application of flawed legal principles.[3]

In *Mars*, this Court explained the policy problems inherent in a broad duty to disclose.  "[T]he court is troubled by Plaintiffs' proposed interpretation of the duty

---

[3] Plaintiffs cite to *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F.Supp.2d 384, 464 (D.N.J. 2009), to contend that "because health and safety risks are inherently material to consumers, courts find 'allegedly false claims that explicitly or implicitly address product attributes of importance to consumers.'" (Oppo., p. 14, lns. 14-18.)  The *Bracco* court merely held that statements regarding studies showing that one company's product was superior to a competitor's product did not constitute permissible puffery under the Lanham Act because such statements were specific and measurable by comparative research. *Id*. at 397, 464.

to disclose under California law because Plaintiffs offer no meaningful limiting principle.  It is undisputed that consumers who rely on 'misrepresentations and made a purchase as a result, may have standing under UCL, FAL, and CLRA.'  But '[t]his unremarkable principle does not mean that a business enterprise has an affirmative duty to disclose *anything and everything* that might cause some consumers not to purchase its products, or risk liability for fraudulent conduct under these statutes…although a plaintiff may have standing to assert a claim that he relied on the representations on a product label, the same plaintiff does not have standing to maintain a claim that he *assumed* characteristics or qualities of a product that were not on the label (with the exception of characteristics or qualities related to safety).'"  *Id*.

Similar to the plaintiffs in *Mars*, Plaintiffs, in the case at bar, seek to impose a limitless duty to disclose upon Five Pawns.  Such a duty to disclose would open the floodgates of litigation that the legislature and courts have sought to prevent. *Wilson, supra*, 668 F.3d at 1141-42.  Every manufacturer would have to disclose every specific ingredient, even if not required to do so under applicable law, because there is likely some study or some article somewhere on the Internet suggesting that the ingredient could pose some sort of health risk.  Moreover, any time any study or article appeared anywhere on the Internet, the manufacturer would have the duty to immediately become aware of such study or article and provide extensive, unwarranted warning labels.  Such a broad duty to disclose would place an extremely burdensome, costly, and impractical liability on manufacturers.

In sum, Plaintiffs' argument that a manufacturer must disclose ***any*** information that would cause a reasonable consumer to behave differently has been rejected by the Ninth Circuit.  Plaintiffs have not alleged an affirmative misrepresentation or a design defect and safety hazard.  Thus, Plaintiffs have not stated an omission claim under California law.

Plaintiffs also seek to apply the four *Judkins* tests and rely on the unpublished

-15-

NJOY decision to support their contention that Five Pawns' Proposition 65 disclosures regarding nicotine constituted a "half-truth" by implying nicotine was the sole toxin and sole health risk. (Oppo. P. 12, ln. 14-P. 13, ln.9.) Plaintiffs' reliance on the unpublished NJOY decision is misplaced for at least two reasons. First, the court undertook no analysis of the proper definition of a "material fact." Thus, the district court did not narrow the definition of "material facts" to safety issues as required by *Wilson, supra*. (Oppo., Ex. A, P.32-36.) Second, the district court noted that "NJOY maintains that none of the recognized bases for imposing a duty to disclose is present here[]" and then jumped into the analysis of the four purported "recognized bases" from *Judkins*. (*Id.*, P. 29.)  Thus, there was no analysis whatsoever of the split of authority regarding the four *Judkins* tests or how Wilson limits any application of the *Judkins* factors to safety concerns.

As noted in *Mars, supra*, "[t]he California Court of Appeals are split on whether these factors—which are outlined in *Judkins*, a fraudulent concealment case—properly apply to UCL and CLRA omission claims.'"  2016 WL 471234, at*6, f.n. 5, internal citation omitted.  While *Wilson* called into doubt application of the *Judkins* factors, resolution of the split is irrelevant.  As noted by this Court in *Mars*, "this Court follows the binding *Wilson* decision, which concluded that, '[e]ven if this Court applies the factors from Falk regarding materiality, as Plaintiffs suggest, for the omission to be material, the failure must [still] pose safety concerns.'"  *Id.*, citing *Wilson*, 668 F.3d at 1142.  This Court then explained that "[b]ecause Plaintiffs have failed to allege an omission that poses safety concerns, the Court's conclusion remains unchanged."  *Id.*

Thus, it is irrelevant whether a defendant is obligated to disclose facts in the four situations outlined in *Judkins*, because such situations only apply to material facts, and Plaintiffs have not alleged a material fact which satisfies the *Wilson* definition or the four-part test, set forth in *Williams*, derived from *Wilson*.

Even if the *Wilson* definition for a material fact was expanded to include any

-16-

1  ingredients that could pose a potential health risk and all such potential risks,

2  Plaintiffs still could not satisfy any of the four *Judkins* tests.

3      Concerning the first test, Plaintiffs have not alleged any fiduciary duty

4  between themselves and Five Pawns and do not contend otherwise in the

5  Opposition.  Concerning the second test (exclusive knowledge of material facts not

6  known to plaintiff) and third test (active concealment of material facts), Plaintiffs

7  have not alleged when Five Pawns obtained the test results or that it actively

8  concealed them.  To the contrary, it alleges Five Pawns published the results nine

9  months after having the testing conducted, which is not an unreasonable amount of

10  time.  (FAC, ¶¶51, 57, Oppo. P. 11, ln 24-P. 12, ln. 1.)  Further, Plaintiffs Greene

11  and Hirtzel allege that they purchased products before September 2014, and Plaintiff

12  Simonds alleges he did not purchase products until October 2015, more than three

13  months after Five Pawns released its test results.  (FAC, ¶¶27-29, 31.)  Concerning

14  the fourth test (half-truths), it is illogical to suggest that a Proposition 65 warning

15  concerning nicotine consists of a half-truth; to the contrary, it is a complete-truth.

16  Information that Five Pawns' products may contain other ingredients that allegedly

17  pose potential health risks in no way materially qualifies the disclosed facts

18  regarding nicotine and nicotine risks.[4]  Further, Plaintiffs rely on the *NJOY* decision

19  to support their half-truth argument.  Aside from the problems with the decision

20  described above, this decision relied on incomplete facts from *Goldsmith v.*

21  *Allergan, Inc.,* No. CV 09-7088 PSG (Ex), 2011 WL 2909313 (C.D. Cal. May 25,

22

23

24  _____

25  [4] *See e.g. Herron v. Best Buy Co.,* 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013)
   (applying *Judkins* since both parties adopted *Judkins* in their briefs, and holding that

26  a partial representation under the fourth *Judkins* factor occurs when the omitted facts
   are sufficiently related to the disclosed facts, such that the omitted facts materially

27  qualify the disclosed facts, thereby making the disclosed facts misleading).

28

1   2011), a case factually distinguishable.[5]

2   **b. Indiana Consumer Protection Claim**

3   While Plaintiffs contend that the IDCSA can apply to omissions, they fail to

4   tie the alleged omission to any of the specifically-enumerated "deceptive acts" under

5   the IDCSA.  Instead, Plaintiffs cite to *Lawson v. Hale*, 902 N.E.2d 267, 275-76 (Ind.

6   Ct. App. 2009) and argue that it stands for the proposition that "failure to disclose a

7   material fact ***is*** a basis for a common law fraud claim[]" and that there the court

8   found the failure to disclose a cracked engine block was a material fact.  (Oppo., P.

9   6, lns. 20-22, emphasis added.)  Plaintiffs misstate the *Hale* holding and omit a

10  crucial fact from the case.  The *Hale* court held that "fraud is not limited only to

11  affirmative representations; the failure to disclose all material facts ***can*** also

12  constitute actionable fraud."  902 N.E.2d at 275.  (Emphasis added.)  Then, the court

13  cited to *Fimbel v. DeClark*, 695 N.E.2d 125, 127 (Ind. Ct. App. 1998), and

14  explained the situation where the failure to disclose a material fact can constitute

15  fraud is "[w]hen a buyer makes inquiries about the condition, qualities, or

16  characteristics of property …[.]"  *Id*.  In such a situation, "'it becomes incumbent

17  upon the seller to fully declare any and all problems associated with the subject of

18  the inquiry.'"  *Id*.

19  The *Hale* court then explained that this situation was present in the case

20  before it, because "despite several inquiries by Lawson about any problems with the

21  tractor, Hale failed to disclose the cracked engine block."  *Id*.  Thus, had Lawson not

22  [5] The *NJOY* court explained that the defendant made representations that a single-
23  use vial could be used on multiple patients and that this triggered a duty to disclose
    that using a single vial on multiple patients was unsafe. (Oppo., Ex. A, P. 33, ln. 17-
24  P.34, ln.2.) First, representing the use of a product in a way that it *cannot* be safely
    used, without disclosing this fact, is not analogous to disclosing one ingredient
25  without disclosing another separate ingredient. Second, absent from the NJOY
26  decision is mention that the plaintiff alleged that the defendant's employee made a
    representation that the product could safely be used on multiple patients. 2011 WL
27  2909313, at *3.

28

1  made specific inquiries regarding problems with the tractor, Hale would not have

2  had a duty to disclose.  Indeed, in *Fimbel*, the case relied on and cited to by the *Hale*

3  court, the court held that "'[o]rdinarily a seller is not bound to disclose any material

4  facts unless there exists a relationship for which the law imposes a duty of

5  disclosure.'"  695 N.E.2d at 127.

6      None of the named plaintiffs allege that they asked Five Pawns, before

7  purchasing their products, whether such products contained AP or DA.  As such,

8  Plaintiffs' omission claim, under Indiana law, fails as a matter of law.

9          **c.  New York Consumer Protection Claim**

10     In its Motion, Five Pawns cited to *Henry v. Rehab Plus, Inc*., 405

11 F. Supp. 2d 435, 445 (E.D.N.Y. 2005) for the legal proposition that under the GBL,

12 "an omission becomes a misrepresentation only in a situation in which it renders

13 other statements made by a defendant misleading."  (Motion, p. 19, lns. 19-22.)  In

14 their Opposition, Plaintiffs fail to address this legal standard.

15     Instead, Plaintiffs cite to *Woods v. Maytag Co.,* No. 10-CV-0559 (ADS)

16 (WDW), 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) for a legal standard that

17 conflicts with *Henry* and contend that a duty to disclose "arises" when "'a defendant

18 exclusively possesses information that a reasonable consumer would want to know

19 and could not discover without difficulty ….'"  (Oppo., P. 7, lns. 17-19.)  First,

20 *Woods* notes in such a situation, a duty to disclose "**can** constitute a deceptive or

21 misleading practice [,]" not that the duty automatically arises.  Second, in tracing the

22 history of the duty to disclose, the court noted that "'one who sells an article

23 knowing it to be dangerous by reason of concealed defects is guilty of a wrong…."

24 *Id*., at *10.  Further, New York courts have rejected a broad duty to disclose and

25 have dismissed omission claims under GBL §349 where the plaintiff did not allege a

26 specific misrepresentation that caused the alleged omission to become misleading.

27     For example, in *Andre Strishak & Assocs, P.C. v. Hewlett Packard Co*., 300

28 A.D.2d 608-09, 752 N.Y.S.2d 400, 403 (2002), the plaintiffs asserted claims under

-19-

GBL §349 and §350 and alleged that "the defendant represented to consumers that ink cartridges were included with the purchase of printers, and concealed the fact that the cartridges were only one-half filled with ink."  The court dismissed the claims, holding that "[t]he defendant did not engage in a deceptive act by representing that the cartridges were included with the purchase of each printer without disclosing that they were economy-size cartridges." *Id.* at 610.

In *Gomez-Jimenez v. New York Law Sch.,* 103 A.D.3d 13, 17, 956 N.Y.S.2d 54, 58-59 (2012), the plaintiffs, who were graduates of New York Law School, asserted claims under GBL §349 alleging, among other things, that employment data released by the school failed to disclose it included temporary and part-time positions. The court explained that "[w]hile we are troubled by the unquestionably less than candid and incomplete nature of defendant's disclosures, a party does not violate GBL 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information [.]" *Gomez-Jimenez v. New York Law Sch.,* 103 A.D.3d 13, 17, 956 N.Y.S.2d 54, 58-59 (2012).

### d.  Vermont Consumer Protection Claim

In its Motion, Five Pawns asserted that Plaintiff Simonds alleges that he did not purchase any of Five Pawns' products until ***after*** Five Pawns disclosed the presence of AP and DA in some of its products.  (Motion, p. 7, lns. 16-19.) Plaintiffs completely ignore this argument and fail to explain how he can maintain an omission claim.  In any event, for the reasons articulated above and below, any alleged omission concerning AP or DA, based on Five Pawns' disclosure of nicotine, is not likely to mislead consumers, and is not material.

### 2.  <u>Plaintiffs Have Failed To Adequately Allege Any Conduct That Would Be Likely To Deceive The Reasonable Consumer.</u>

Plaintiffs do not dispute that under all the state consumer protection statutes, the alleged wrongful conduct must be likely to deceive a reasonable consumer. Instead, Plaintiffs contend this issue should not be resolved on a motion to dismiss.

1   (Oppo. P. 13, lns. 16-18.)  Contrary to Plaintiffs' assertion, "where a Court can

2   conclude as a matter of law that members of the public are not likely to be deceived

3   by the product packaging, dismissal is appropriate."[6]

4       Plaintiffs' illogical "likely to deceive" allegations are particularly ripe for

5   adjudication at the pleading stage.  They are premised on the contention that a

6   reasonable consumer would be aware of DA and AP and find the presence of such

7   ingredients material to their purchase even though they are already purchasing an e-

8   cigarette product with nicotine.  Tellingly, none of the Plaintiffs have made any

9   specific allegations concerning how they interpreted anything they saw or heard.

10  Plaintiffs want this Court to expand the scope of Proposition 65 and regulate e-

11  liquid ingredient disclosures in three other states, regardless of any deception.

12  **C.**   **PLAINTIFFS' SEVENTH CLAIM FOR BREACH OF EXPRESS**

13       **WARRANTY FAILS TO STATE A CLAIM.**

14       **1.**   **Plaintiffs Failed To Provide Adequate Pre-Litigation Notice.**

15       In their Opposition, Plaintiffs contend that despite their failure to allege

16  compliance with the pre-litigation notice requirement, their pre-litigation demand

17  suffices.  Just as the FAC does not identify any untrue "specific and unequivocal"

18  statements, however, the pre-litigation demand does not either.

19       **2.**   **Plaintiffs Misrepresent Their Own Allegations In A Deceptive**

20       **Attempt To Satisfy The Elements Of Their Express Warranty Claim**.

21       Plaintiffs blatantly mischaracterize their own FAC and a case they cite in a

22  _____

23  [6] *Hairston v. South Beach Bev. Co.*, No. CV 12-1429-JFW (DTBx), 2012 WL
    1893818, at *4 (C.D. Cal. May 18, 2012) ("The Court concludes that Plaintiff's

24  selective interpretation of individual words or phrases from a product's labeling
    cannot support a CLRA, FAL, or UCL claim.") *Carrea v. Dreyer's Grand Ice*

25  *Cream, Inc.*, 475 Fed. App'x 113, 115 (9th Cir. 2012) (finding that dismissal, with
    prejudice, under rule 12(b)(6) as to the plaintiff's state law consumer protection

26  claims was appropriate because such claims fail to satisfy the reasonable consumer

27  standard)

28

1  desperate attempt to salvage their fatally defective express warranty claim.

2      Plaintiffs agree with Five Pawns that the three elements of an express

3  warranty claim are: "1) a seller made an affirmation of fact or a promise relating to

4  goods or a description of goods; 2) the statement of the seller was a part of the basis

5  of the bargain; and 3) the warranty was breached."  (Oppo., p. 19, lns. 2-7, citing

6  *Arroyo v. TP-LINK USA Corp*., No. 5:14-cv-04999-EJD, 2015 WL 5698752, at *10-

7  11 (N.D. Cal. Sept. 29, 2015)).

8      Plaintiffs concede that under the first element, the statement must be 'specific

9  and unequivocal.'"[7]  In the FAC, Plaintiffs, in support of their express warranty

10  claim, allege that Five Pawns failed to provide "e-liquids that offered a product free

11  of DA and AP (or similar variations) and otherwise omitted material information

12  about potential health risks associated with the product."  (FAC, ¶175.)

13      After acknowledging earlier in their Opposition that "the claims in the FAC

14  are predicated on omissions in the sale of Defendant's products," Plaintiffs

15  backpedal from this contention.  (Oppo., p. 3, lns. 5-6.)  Incredibly, Plaintiffs

16  contend that their express warranty claim "is based on Defendant's statement that its

17  products contained only natural ingredients, as well as its statements that they

18  contained nicotine and their only health risk was from that and from inhaling non-

19  vaporized substances."  (Oppo., p., 19, lns. 8-11.)  Not surprisingly, Plaintiffs have

20  not cited to any portion of the FAC, because ***nowhere in the FAC do Plaintiffs***

21  ***allege that Five Pawns made statements that its products contain only natural***

22  ***ingredients or that the only health risk from their products is from nicotine and***

23  ***from inhaling non-vaporized substances***.

24      Concerning the use of only natural ingredients, Plaintiffs' characterization in

25  their Opposition is belied by their allegations in the FAC.  Indeed, Plaintiffs allege

26  

27  [7] (Oppo., P. 19, lns. 11-12; *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-cv-04361-PJH, 2014 WL 989742, at *4 (N.D. Cal. Mar. 11, 2014).)

28

that Five Pawns discloses that in addition to using natural ingredients, it also uses artificial ingredients. (FAC, ¶¶66, 76.)

Concerning representations regarding health risks stemming from nicotine, Plaintiffs merely allege that "[b]y warning of risks relating to nicotine, and the risks that may arise if the concentrated contents of the cartridge are swallowed without being vaporized, this packaging *implies* that those are the only health-related risks that relate to Defendant's e-liquids." (FAC, ¶68, emphasis added; see also, FAC, ¶64 (Five Pawns' packaging and advertising "*conveys the impression* that the products contains no meaningful health risks other than possibly those that are a direct result of nicotine[.]") (emphasis added.))  General assertions about implications or impressions cannot support a breach of express warranty claim.[8]

After mischaracterizing their own allegations, as a last-ditch effort to salvage the claim, Plaintiffs include a parenthetical for the assertion that the district court upheld "an express warranty claim where the defendant did not reveal that the product contained a dangerous substance."[9]  To the contrary, that case was in the context of a motion for class certification and the district court did not even analyze the express warranty claim.  *Id*.  In any event, the district court noted that the case involved representation that the defendant's product was "formaldehyde-free" and that "Defendant has failed to present any evidence that a customer could purchase a Brazilian product without being exposed to the formaldehyde-free claim."  *Id*., at *7, f.n. 8.  Thus, the *In re Brazilian Blowout Litig.* case involved "specific and unequivocal" statements.  To the contrary, here there are no allegations that Five Pawns represented that its products are AP or DA free.

---

[8] *See e.g. McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD, 2011 WL 3862120, at*4 (N.D. Cal. Aug. 30, 2011) ("General assertions about representations or impressions given by Defendants about the phone's 3G capabilities are not equivalent to a recitation of the exact terms of the underlying warranty.")

[9] (Citing *In re Brazilian Blowout Litig.,* No. CV-10-8452-JFW (MANx), 2011 WL 10962891, at *7 (C.D. Cal. Apr. 12, 2011) and Oppo., P. 19, lns. 15-17.)

1   Regarding the second element, "[f]or a statement to form the basis of the

2   bargain, the plaintiff must allege facts showing that she was exposed to the alleged

3   statement prior to making the decision to purchase the product." *Smith, supra*, 2014

4   WL 989742, *4. There are no allegations whatsoever in the FAC concerning

5   exposure to the alleged statements. Plaintiffs merely contend that "Plaintiffs would

6   not have purchased Defendant's products or would not have paid as much for them

7   if they had known of their dangerous risks posed by DA and AP." (Oppo., P. 19,

8   lns. 12-14.) This allegation does not pertain to exposure nor does it identify any

9   specific statements made by Five Pawns.

10   **D.   PLAINTIFFS CANNOT OBTAIN DISGORGEMENT OF PROFITS.**

11   The prayer for relief in the FAC seeks an order "[r]equiring Defendant to

12   disgorge or return all monies, revenues and profits obtained by means of any

13   wrongful act or practice to Plaintiffs and the members of the Classes under each

14   cause of action where such relief is permitted[.]" In their Opposition, Plaintiffs

15   essentially attempt to punt the issue, stating in a footnote that "Plaintiff submits that

16   the extent to which it is available should await a later stage in the proceedings."

17   (Oppo., p. 20, f.n. 8.) Dismissal of this erroneous request at this stage in the

18   proceedings, however, is proper.

19   In *Reinhardt, supra*, 869 F. Supp. 2d at 1174-75, the district court explained

20   that the plaintiffs were requesting the "disgorgement of all revenues, earning,

21   profits, compensation and benefits which may have been obtained by defendants as

22   a result of such unlawful, unfair and/or fraudulent business practices." The district

23   court dismissed this request for disgorgement of profits. "Given Plaintiffs' failure to

24   adequately defend Paragraph 103 and Prayer Paragraph 35, the Court concludes that

25   Plaintiffs are attempting to obtain non-restitutionary disgorgement of profits. Since

26   those damages are unavailable as a matter of law, Plaintiffs' claim for disgorgement

27   of profits will be dismissed with prejudice." *Id*. at 1175.

28   Plaintiffs implicitly concede that disgorgement of profits is not available

-24-

1  under New York, Indiana, or Vermont law, as they fail to address Five Pawns'
2  arguments concerning these states.  Concerning California, Plaintiffs merely state
3  "[t]he remedy of restitutionary disgorgement appears to be available, at least in
4  California." (Oppo., p. 20, f.n. 8.)  Plaintiffs, like the plaintiffs in *Reinhardt*, are
5  seeking profits earned by Five Pawns, a form of non-restitutionary disgorgement.
6  This is not available under California law, as Plaintiffs implicitly concede. *See e.g.*,
7  *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1013 (2005).

8       In *Juarez v. Arcadia Financial, Ltd*., 152 Cal. App. 4th 889, 895 (2007), cited
9  by Plaintiffs, the court found that plaintiffs were entitled to discovery related to a
10  redemption amount allegedly wrongfully obtained and held by the defendant, before
11  the defendant repossessed the plaintiffs' car.  The court explained that "arguably"
12  such interest or earnings constituted restitutionary disgorgement since the wrongful
13  act was the holding of the money itself, without providing anything in return to the
14  plaintiffs. *Id*. at 915.  Thus, *Juarez* did not hold that the relief sought was proper,
15  just that it could be proper where money is wrongfully held.  This case, however,
16  involves a bargained for exchange.  Not one court, following Proposition 64, has
17  held that profits in such a situation can be considered restitutionary.

18  **IV.   A MORE DEFINITE STATEMENT (FRCP 12(E)) IS NECESSARY.**

19       Plaintiffs concede that their claims are only based on certain allegations and
20  not others, necessitating a more definite statement.  (Oppo., p. 3, lns. 3-6.)  When a
21  complaint "is unclear as to what alleged actions and omissions . . . are the basis for
22  each cause of action,  . . . a more definite statement is required …." *Sinclair v. Fox*
23  *Hollow of Turlock Owners Ass'n,* No. 1:03-cv-05439-OWW-DLB, 2011 WL
24  2632307, at *2 (E.D. Cal. June 28, 2011).

25  **V.   CONCLUSION**

26       For the reasons explained herein, Five Pawns respectfully requests that the
27  Court dismiss each of Plaintiffs' claims under FRCPs 12(b)(1), 12(b)(6), and 9(b).
28  Alternatively, Five Pawns moves for a more definite statement under FRCP 12(e).

1  DATED:  March 7, 2016

2                              GARCIA RAINEY BLANK & BOWERBANK LLP

3

4                              By      /s/ John E. Bowerbank

5

6                                       JOHN E. BOWERBANK
                                        JEFFREY M. BLANK
7                                       NORMA V. GARCIA
                                        Attorneys for Defendant
8                                       Five Pawns, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BRIEF IN SUPPORT OF DEFENDANT FIVE PAWNS INC.'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT