**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859 (DFMx)                    Date:  April 18, 2016

Title: DUANE ROBERT GREENE, ET AL. V. FIVE PAWNS, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT [22]**

Before the Court is Defendant Five Pawns, Inc.'s ("Defendant" or "Five Pawns") Motion to Dismiss First Amended Complaint ("Motion") (Dkt. 22). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court hereby GRANTS IN PART Defendant's Motion.

**I.      Background**

**A.      Facts**

This is a putative class action brought on behalf of individuals who purchased Defendant's liquid vapor for electronic cigarettes. Plaintiffs' claims are predicated on Defendant's alleged failure to disclose – on its product packaging and website – that its products contained certain chemicals at potentially dangerous levels. Plaintiffs' claims are also based on representations concerning nicotine levels and the risks of nicotine use, which Plaintiffs contend were highly misleading in that those representations indicated no other toxins were present in the product and no other health risks were inherent in Defendant's products.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                    Date: April 18, 2016
                                                      Page 2

The following facts are drawn from Plaintiffs' First Amended Complaint ("FAC") (Dkt. 13).

### 1.    Background Concerning Liquids Used in Electronic Cigarettes

An electronic cigarette ("e-cigarette") is a device that is an alternative to tobacco smoking. FAC ¶ 36. E-cigarettes are designed to deliver a smoking-like "hit" of liquid vapor ("e-liquid"), usually containing nicotine, which is inhaled by the user. *Id.* E-cigarettes work through a battery operated heating mechanism, which typically converts the e-liquid – which may contain diacetyl ("DA"), acetyl propionyl ("AP"), glycerin, glycol, natural and artificial flavors and, in most e-cigarettes, various proportions of nicotine – into vapor. *Id.* A heating device is activated, the e-liquid is converted into vapor, and the consumer inhales the vapor. *Id.* "Some e-liquids manufactured by [companies other than Defendant Five Pawns] are sold *without* DA and AP, propylene glycol, nicotine, or favors, as it is possible to source ingredients that do not contain these toxic ingredients." *Id.* ¶ 8.[1]

In August 2011, the National Institute for Occupational Safety and Health ("NIOSH") released a report finding the acceptable level of DA for e-liquids is 65 μg per day and the acceptable level of AP for e-liquids is 137 μg per day (1 μg = 1 millionth of a gram). *Id.* ¶ 56 (citing Criteria for a Recommended Standard: Occupational Exposure to Diacetyl and 2,3-Pentanedione, DEPARTMENT OF HEALTH AND HUMAN SERVICES (Aug. 12, 2011) (draft), http://www.cdc.gov/niosh/docket/archive/pdfs/NIOSH-245/0245-081211-draftdocument.pdf (last visited Nov. 10, 2015)). A study published in Environmental Health Perspectives by the Harvard T.H. Chan School of Public Health on December 8, 2015, "found at least one flavoring chemical in the airstream or vapor captured in 47 out of 51 types of flavored e-cigarettes or 92% of samples." *Id.* ¶ 41. The study also detected DA above the laboratory limit of detection in 39 of the 51 flavors tested, 2,3-pentanedione in 23 of the 51 flavors tested, and acetoin in 46 of 51 flavors tested. *Id.*

In April 2014, the United States Food and Drug Administration ("FDA") proposed rules that would require e-cigarettes, liquid nicotine, and devices to be approved by the FDA. *Id.* ¶ 42. The rules would also ban sales to minors and require e-cigarette and e-liquid companies to disclose their ingredients. *Id.*

---

[1] Plaintiffs cite examples of manufacturers that produce DA and AP-free e-liquids: Virgin Vapor, Halo Cigs, Fireband, and Mt. Baker Vapor. FAC ¶ 8 n.2. Plaintiffs also note Defendant Five Pawns recently began selling a DA and AP-free e-liquid called Symmetry Six. *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                    Date: April 18, 2016
                                                                          Page 3

### 2.    Five Pawns' E-Liquids

Five Pawns sells premium, "handcrafted," artisan-style e-liquids that are mainly carried in boutique vape shops around the country and internationally. *Id.* ¶¶ 32–33. In a May 2013 interview posted on the company website, Five Pawns Chief Executive Officer ("CEO"), Rodney Jerabek, described the e-liquid ingredients Five Pawns uses as "top notch," and said Five Pawns sells its e-liquids at a high premium because the Company uses "natural ingredients" that are "sourced locally." *Id.* ¶ 43.

The packaging on Defendant's e-liquids "does not state that its products contain AP and/or DA, nor does it contain a warning regarding the hazardous effects on the human body of inhaling AP and DA." ¶ 62; *see also id.* ¶¶ 63–64; *see id.* ¶ 65 ("While Defendant does disclose that its e-liquids contain certain levels of nicotine . . . and that the ration of propylene glycol and vegetable glycerin is 50/50, nowhere on the packaging does it mention the existence of DA and AP."). Further, the Five Pawns website includes the following:

> WARNING: This product is not a smoking cessation product and has not been tested as such. The FDA has not evaluated the safety of this product or any of the statements made by the manufacturer. This product is intended for use for persons of legal age or older, and not by children, women who are pregnant or breast feeding, or persons with or at risk of heart disease, high blood pressure, diabetes, or taking medicine for depression or asthma. Nicotine is addictive and habit forming, and can be toxic if in contact with skin, or if swallowed. Nicotine can increase your heart rate and blood pressure and cause dizziness, nausea, and stomach pain. Inhalation of this product may aggravate existing respiratory conditions. Ingestion of the non-vaporized ingredients can be poisonous. This product is not intended to diagnose, treat, cure or prevent any condition, disorder, disease or physical or mental condition.

> CA Proposition 65 WARNING: This product contains nicotine, a chemical known to the state of California to cause birth defect or other reproductive harm.

> Ingredients: Tobacco-Derived Nicotine, Vegetable Glycerin, Propylene Gylcol, and Natural and Artificial Flavors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 15-1859-DOC (DFMx)                              Date: April 18, 2016
                                                                         Page 4

> Use only as intended – Under age sales to minors are prohibited and
> subject to criminal and civil penalties.

*Id.* ¶ 66.

The text on a bottle of Five Pawns e-liquid states: "Must be 18+ to buy or use this
product;" "Do not modify or attempt to alter this product in any way;" "Nicotine is
a known addictive substance and can be poisonous;" "Not for use by women who are
nursing or pregnant;" "Keep out of reach of children and pets;" "Not intended for oral
consumption;" and "Poison control center: (800) 222-1222." *Id.* ¶ 67.

However, Defendant does not warn its customers about the dangers of inhaling
DA and AP on its product packaging or on its website. *Id.* ¶ 11; *see also id.* ¶ 68 ("[T]he
website and packaging omit reference to the other toxins and impurities, including DA
and AP found in Defendant's e-liquids . . . ."). Instead, Defendant's "marketing
campaign" describes Five Pawns e-liquids "as if it were selling wine;" for example, it
describes one e-liquid flavor as "crisp mint with subtle chocolate undertones and a
French vanilla finish," and another as "intense complexity of Irish cream, cinnamon
spice, and caramel with subtle absinthe undertones." *Id.* ¶ 11.

On June 28, 2015, an e-cigarette store in England called Cloud9 Vaping
("Cloud9") hired a laboratory to conduct tests of e-liquids supplied by Defendant and
other manufacturers. *Id.* ¶ 48. The results showed that some of Defendant's products
contained the highest levels of AP Cloud9 had ever seen in a laboratory test of e-liquids.
*Id.* ¶¶ 15, 48. Further, the Cloud9 testing "has also shown that Defendant disclosed
inaccurate nicotine levels on its packaging." *Id.* ¶ 16. When Cloud9 initially commenced
trading with Defendant in the beginning of 2015, Cloud9 asked Defendant to provide its
own test results, but Defendant declined. *Id.* ¶ 54.

"In light of the test results, "Cloud9 proceeded to withdraw the entire line of Five
Pawns Products from is inventory," and the Electronic Cigarette Trade Association of
Canada ("ECTA") notified Canadian e-liquid vendors to withdraw and cease sales of
Defendant's e-liquids. *Id.* ¶¶ 15, 57.[2]

On June 29, 2015, in the "News" section of its website, Defendant told its
customers and potential customers:

---

[2] According to ETCA's standards, an e-liquid with AP levels of more than 45 μg/ml but less than 100 μg/ml requires
disclosure to the public, and e-liquids with levels of more than 100 μg/ml cannot be sold by ETCA members and
"immediate stop sale" is required. *Id.* ¶ 57.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 15-1859-DOC (DFMx)                                   Date: April 18, 2016
                                                                          Page 5

> In response to the diacetyl concern in 2014, some vapor industry
> flavor suppliers began using acetyl propionyl (AP), also known as
> 2,3 pentanedione, as a substitute for diacetyl. While AP has not been
> linked to any health concerns related specifically to vaping, and it is
> not banned by the FDA or any International body, its relative safety
> or harm is unknown. Five Pawns does not feel there is any concern
> with diacetyl or AP in our e-liquids at current levels. AP can be an
> important flavor enhancer for flavor profiles that are creamy in
> nature, and is used widely in the food and beverage industries. [DA]
> can naturally occur in vapor liquids, just as with beer and wine, and
> some fruits such as strawberries.

*Id.* ¶¶ 70–71, 74. In June 2015, Defendant's website also stated, "high levels of both
diacetyl and AP are present in cigarettes, yet there has been no link to bronchial
obliterates," and "AP has not been linked to any health concerns related specifically to
vaping . . . its relative safety or harm is unknown." *Id.* ¶ 58.

     In June or early July 2015,[3] "Defendant released previously unreleased test results
that had been done in September 2014 by Newport Scientific, Inc., a laboratory
Defendant hired." *Id.* ¶ 51; *see also id.* ¶¶ 14–15. "The tests showed [Defendant's]
products . . . contain amounts of DA and AP, contrary to Defendant's representations to
the public." *Id.* ¶ 51; *see also id.* ¶ 14.

     On July 21, 2015, Defendant released "its latest test results on its current ten vapor
liquid flavors." *Id.* ¶ 78. "Results for five of those ten flavors were identical to the results
from the test performed in October 2014." *Id.*[4] After "numerous comments on social
media regarding the virtual impossibility of obtaining the same results down to the tenth
of a μg/ml," Defendant inserted "asterisks in the 'new' test results explaining that[] five
of those ten flavors[] were . . . not retested at all." *Id.*

     Also in July 2015, podcast host and consumer activist, Russell Wishtart
("Wishtart") broadcasted a telephone conversation between himself and a Five Pawns
representative. *Id.* ¶ 53. Wishtart telephoned Five Pawns to ask if its e-liquids
(specifically, the Absolute Pin and Bowden's Mate flavors) contain AP. The Five Pawns

---

[3] The Court notes the FAC is not consistent about when Defendant released the test results on its website. In
paragraph 15, Plaintiffs allege, "Defendant did not disclose these results until *June* 2015." FAC ¶ 15 (emphasis
added). However, in paragraph 51, Plaintiffs contend Defendant released the test results in "early *July* 2015). *Id.*
¶ 51. Further, in their Opposition, Plaintiffs state Defendant released the test results on June 28, 2015. Opp'n at 1.
[4] The FAC is also inconsistent about when Newport Scientific, Inc. performed the tests on Defendant's products. In
paragraph 51, Plaintiffs state the tests were done in September 2014. FAC ¶ 51. However, in paragraph 78, Plaintiffs
indicate the test was performed in October 2014. *Id.* ¶ 78.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                    Date: April 18, 2016
                                                                            Page 6

employee answered that the liquids in question contain trace amounts and then clarified their test results show the liquids contain "ND" (not detectable) levels of AP. *Id.* However, Defendant's own test results show Absolute Pin contains 290 μg/ml of AP and Bowden's Mate contains 627.7 μg/ml. *Id.*

In addition, when a customer contacted Five Pawns to inquire if its products contain DA or AP, a Five Pawns representative named Annoushka Lyvers replied that "[n]one of our handcrafted flavors use diacetyl or acetone." *Id.* ¶ 52. When another customer asked the same question, the Five Pawns CEO responded: "We use absolutely no Diacetyl or additives of any kind in our liquids." *Id.*

On August 7, 2015, counsel for Defendant replied to Plaintiffs' July 9, 2015 pre-suit demand letter and described the actions Five Pawns had taken to cure the violations alleged in Plaintiffs' letter. *Id.* ¶¶ 77, 79. In its response letter, Defendant claimed it had "taken proactive steps to ensure proper communication, correction, and clarification of any prior inaccurate statements, including removing all outdated responses from all customer service computers," as an effort to correct its "inadvertent mistaken responses" to "specific inquiries by a handful of individuals." *Id.* ¶ 79. The letter also stated Defendant had contacted recipients of the communications at issue to offer refunds as compensation, *id.* ¶ 81, and that it would post results from DA and AP testing "on all of its liquids" on its website on a quarterly basis, *id.* ¶ 80.

However, "contrary to the letter, Defendant does not post test results for 'all of its e-liquids.'" *Id.* ¶ 84. In a footnote in a document found on its website, Defendant admits some of its e-liquids have not been tested since September 2014. *Id.* Defendant's website continues to state Five Pawns "source[s] solely diacetyl-free ingredients, only to discover that trace amounts of diacetyl can naturally occur in vapor liquids." *Id.* ¶ 82.

On August 21, 2015, Defendant announced it was ceasing production of five of its e-liquid flavors – Absolute Pin, Sixty-Four, Fifth Rank, Lucena, and Perpetual Check, and consolidating the other five flavors, Castle Long, Grandmaster, Gambit, Queenside, and Bowden's Mate, into a collection called The Insignia Series. *Id.* ¶ 86.

### 3. Individual and Class Claims

Plaintiffs allege that, during the relevant period, "while in the states of Indiana, New York, California, and Vermont," they were exposed to and saw Defendant's material, deceptive marketing claims and packaging," and purchased Defendant's e-liquids either at local retailers or online. *Id.* ¶ 26. Plaintiffs, relying on Defendant's marketing and labeling of Defendant's products, believed Defendant's products did not

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                   Date: April 18, 2016
                                                                                          Page 7

carry dangers or risks associated with DA and/or AP. *Id.* Had Defendant disclosed these material facts, Plaintiffs would not have paid the price they paid for Defendant's e-liquids or would not have purchased Defendant's e-liquids at all. *Id.*

Plaintiffs bring this class and private attorney general action on behalf of themselves and all members of a class comprised of persons who purchased, in the United States, one or more of Defendant's e-liquids sold from November 2012 to the present (the "Class"). *Id.* ¶ 88.

Plaintiff Duane Robert Greene ("Greene") purchased Five Pawns e-liquids online and in Indiana around May 2014. *Id.* ¶ 27. He ceased purchasing Defendant's products when the Cloud9 test results were posted on the Internet. *Id.* Greene brings this action on behalf of himself and those who purchased, in Indiana, one or more of Defendant's e-liquids from November 2012 to the present ("the "Indiana Subclass"). *Id.* ¶ 89.

Plaintiff Shawn Randall Thomas ("Thomas") purchased Five Pawns e-liquids at a store called Beyond Vape in New York around March 2015. *Id.* ¶ 28. He paid the retail market price for his purchases. *Id.* He ceased purchasing Defendant's products when the Cloud9 test results were posted on the Internet. *Id.* Thomas brings this action on behalf of himself and those who purchased, in New York, one or more of Defendant's e-liquids from November 2012 to the present ("the "New York Subclass"). *Id.* ¶ 90.

Plaintiff Sprague Simonds ("Simonds") purchased approximately seven bottles of Five Pawn's e-liquids online around August through October 2015. *Id.* ¶ 31. He also purchased Defendant's e-liquids in a store called Old Port Vape in Maine. *Id.* He paid the retail price for each bottle he purchased. *Id.* Simonds brings this action on behalf of himself and those who purchased, in Vermont, one or more of Defendant's e-liquids from November 2012 to the present ("the "Vermont Subclass"). *Id.* ¶ 91.

Plaintiff James Hirtzel ("Hirtzel") purchased Five Pawns e-liquids at a store called Planet of the Vapes in California in November 2013. *Id.* ¶ 29. He purchased one bottle of Five Pawns Castle Long Reserve with 12mg Nicotine Strength for $37.50. He thereafter intermittently purchased additional Five Pawns e-liquids in various flavors, for which he paid the retail market price of between $27.50 and $37.50 for each 30ml bottle. *Id.* He ceased purchasing Defendant's products when the Cloud9 test results were posted on the Internet. *Id.*

Plaintiff Anthony Swetala ("Swetala") purchased at least three bottles of Five Pawns e-liquids at a store called Visalia Vapes California around January 2015. *Id.* ¶ 30. He paid the retail market price for each bottle he purchased. *Id.*

Plaintiffs allege: (1) violations of the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"), (2) violations of the unfair competition law under California Business & Professions Code §§ 17200, *et seq.* ("UCL"), (3) violations of the false advertising law under California Business & Professions Code §§ 17500, *et seq.* ("FAL"), (4) breach of the Indiana Deceptive Consumer Sales Act, Indiana Code § 24-5-0.5, *et seq.* ("IDCSA"), (5) violations of the New York General Business Law § 349 ("GBL"), (6) violations of the Vermont Consumer [Fraud] Act, 9 V.S.A. § 2451a, *et seq.* ("VCFA"), [5] and (7) breach of express warranty.

### B.    Procedural History

Plaintiffs filed suit on November 11, 2015. *See generally* Compl. (Dkt. 1). Defendant filed the instant Motion on January 12, 2016, moving to dismiss Plaintiffs' claims under Rule 12(b)(1) and Rule 12(b)(6). Plaintiffs opposed on February 22, 2016 (Dkt. 23), and Defendant replied on March 7, 2016 (Dkt. 24).

## II.    Motion to Dismiss under Rule 12(b)(1)

### A.    Legal Standard

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) when a court lacks subject matter jurisdiction due to a plaintiff's lack of Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (stating Article III standing bears on the court's subject matter jurisdiction, and is therefore subject to challenge under Federal Rule of Civil Procedure 12(b)(1)).

The "irreducible constitutional minimum" of Article III standing has three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013). Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Lujan*, 504 U.S. at 560. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* The plaintiff, as the party invoking federal

---

[5] Plaintiffs refer to the Vermont Consumer Fraud Act as the Vermont Consumer Protection Act. However, the Court follows courts in the District of Vermont, which refer to 9 V.S.A. § 2451a, *et seq.* as the Vermont Consumer Fraud Act. *See, e.g., Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671 (D. Vt. 2012).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                Date: April 18, 2016
                                                                                                      Page 9

jurisdiction, has the burden of establishing these elements. *See id.* at 561. In reviewing such a motion, courts must take the allegations in the plaintiff's complaint as true and draw "all reasonable inferences in [plaintiff's] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## B.       Discussion

At the outset, the Court notes Plaintiffs have clarified their "claims here are based on Defendant's failure to disclose the presence and significant safety concerns relating to its products;" Plaintiffs "do not pursue any cause of action based on misrepresentations." Plaintiffs' Notice of Recent Authority Regarding Pending Motion to Dismiss (Dkt. 26) at 1 (emphasis omitted); *see also* Opp'n at 8, 16.[6]

Defendant argues Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction because Plaintiffs have not sufficiently alleged standing. Mot. at 6. In particular, Defendant asserts none of the Plaintiffs have sufficiently alleged a causal connection between their alleged injuries and the alleged deceptive acts. *Id.* Defendant also contends Plaintiffs lack standing to obtain injunctive relief. *Id.* at 8. The Court will discuss the arguments in turn.

### 1.       Economic Damages

Defendant contends this Court does not have subject matter jurisdiction because Plaintiffs lack Article III standing. *Id.* at 6. Specifically, Defendant argues Plaintiffs lack standing to pursue claims for damages because Plaintiffs have not alleged any specific link between the alleged misrepresentations and/or omissions and Plaintiffs' injuries. Mot. at 6–7. Defendant also contends Plaintiffs' claims must be dismissed because Plaintiffs lack statutory standing under the California consumer protection statutes (the UCL, FAL, and CLRA).

Similar to Article III standing, to show standing under the UCL and FAL, Plaintiffs must aver facts establishing they "suffered injury in fact and have lost money or property as a result of the unfair competition." Cal. Bus & Prof. Code §§ 17204, 17536; *Henderson v. Gruma Corp.*, Case No. 10-cv-04173-AHM, 2011 WL 1362188 at *3 (C.D. Cal. Apr. 11, 2011) ("To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising

---

[6] Because Plaintiffs are not asserting any claims based on alleged misrepresentations, the Court need not reach Defendant's argument that Plaintiffs have not stated any actionable misrepresentations. *See* Mot. at 20–21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 15-1859-DOC (DFMx)                                Date: April 18, 2016
                                                                              Page 10

that is the gravamen of the claim. The first is an injury-in-fact requirement, and the second is a causation requirement.") (citation and internal quotation marks omitted).[7] To that end, Plaintiffs "must establish they actually relied on 'the allegedly deceptive or misleading statements.'" *Hodsdon v. Mars, Inc.*, Case No. 15-cv-04450-RS, 2016 Dist. LEXIS 19268, at *8 (N.D. Cal. Feb. 27, 2016) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011)). Similarly, "the CLRA requires proof of actual reliance and economic injury." *Id.* (citation omitted). Put simply, "[t]o have standing to bring a UCL, FAL, or CLRA claim, Plaintiffs must plead that they relied on the misleading materials." *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013). Further, "California law permits litigants to pursue claims under the UCL, CLRA, and FAL if they show that the deceptive practice caused pecuniary loss i.e., that 'the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue.'" *Hodsdon*, 2016 Dist. LEXIS 19268, at *9 (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013)).

        Because Plaintiffs claim pecuniary (economic) damages as their "injury in fact," the Court will collapse the Article III standing and statutory standing analyses. *See Kwikset*, 51 Cal. 4th at 325 ("Because the lost money or property requirement [for statutory standing under UCL] is more difficult to satisfy than that of injury in fact [for Article III standing] . . . . [i]f [lost money has been sufficiently alleged], the same allegations or proof that suffice to establish economic injury will generally show injury in fact as well, and thus it will again often be the case that no further inquiry is needed.") (citation omitted); *see also Henderson*, 2011 WL 1362188 at *3 ("The injury in fact requirement of UCL and FAL standing overlaps with Article III standing requirements. . . . Here, Plaintiffs have met the injury-in-fact requirement for standing under Proposition 64 and therefore, in addition, under that prong of Article III standing.").

        The Court concludes Plaintiffs have sufficiently alleged injury in fact. Plaintiffs allege:

                Had Defendant disclosed that its e-liquids contain a variety of toxins,
                impurities, and related potential health hazard[s] . . . Plaintiffs would
                not have paid the price that they paid [for] Defendant's e-liquids or

---

[7] The Court notes that, in 2004, the UCL standing requirements were amended by Proposition 64. *Henderson v.*, 2011 WL 1362188, at *3. "[W]here once private suits could be brought by any person acting for the interests of itself, its members of the general public, now private standing is limited to any person who has suffered injury in fact and has lost money or property as a result of unfair competition." *Id.* (quoting *Kwikset*, 51 Cal. 4th at 320) (internal quotation marks omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                    Date: April 18, 2016
                                                                                    Page 11

> would not have purchased Defendant's e-liquids they would not
> have purchased Defendant's e-liquids. Thus, as a result of
> Defendant's material deceptive claims and omissions, Plaintiffs
> suffered injury in fact and lost money.

FAC ¶ 26; *see also id.* ¶ 18; *id.* ¶ 125. "The alleged purchase of a product that plaintiff
would not otherwise have purchased but for the alleged unlawful label is sufficient to
establish an economic injury-in-fact." *Racies v. Quincy Bioscience, LLC.*, Case No. 15-
cv-00292-HSG, 2015 WL 2398268 at *5 (N.D. Cal. May 19, 2015) (quoting *Lanovaz v.
Twinings N. Am., Inc.*, Case No. 12–cv–02646, 2013 WL 675929 at *6 (N.D. Cal. Feb.
25, 2013)). Further, even if Plaintiffs still would have purchased the product, but would
not have paid as much, "the extra money paid . . . is economic injury and affords the
consumer standing to sue." *Hinojos*, 718 F.3d at 1104.

The Court also finds Plaintiffs have sufficiently alleged reliance and that their
injury is causally related to Defendant's omission. A plaintiff may prove reliance "'by
showing the defendant's misrepresentation or nondisclosure was an immediate cause of
the plaintiff's injury-producing conduct.'" *Hodsdon*, 2016 Dist. 4 LEXIS 19268 at *10
(quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)). Here, Plaintiffs allege that,
"[i]f Defendant had disclosed the information . . . about its e-liquids and otherwise been
truthful about their safety, Plaintiffs would not have paid as much for Defendant's e-
liquid products or would not have purchased Defendant's e-liquid products." FAC ¶ 125;
*see also id.* ¶ 18. In addition, Plaintiffs contend that "[d]uring the relevant period,
Plaintiffs . . . were exposed to and saw Defendant's material, deceptive marketing claims
and packaging," and "Plaintiffs, relying on Defendant's misleading marketing and
labeling of Defendant's products, believed that Defendant's products did not carry
dangers or risks associated with DA and/or AP." *Id.* ¶ 26. The Court concludes this is
sufficient; Plaintiffs have adequately alleged reliance and causation. *See Hodsdon*, 2016
Dist. LEXIS 19268 at *9–10.

Lastly, the Court concludes Plaintiffs have sufficiently alleged it is likely their
injury "will be redressed by a favorable decision" with respect to monetary damages. *See
Racies*, 2015 WL 2398268 at *5. Therefore, the Court DENIES Defendant's Motion to
Dismiss Plaintiffs' claims for monetary damages based on a lack of standing.[8]

---

[8] Defendant argues Plaintiff Simonds has not adequately alleged the causation prong of Article III standing. With
respect to Plaintiff Simonds, the FAC alleges: "Plaintiff Simonds purchased approximately seven bottles of Five
Pawns e-liquids online in or around August through October 2015. He also purchased Defendant's e-liquids in a
store called Old Port Vape in Portland, Maine." FAC ¶ 31. Defendant argues this is insufficient for Article III
standing because Simonds alleges he did not purchase Defendant's e-liquid until after Defendant disclosed, on its
website, test results showing the presence of AP and DA in its products. Mot. at 7. Although Plaintiffs do not

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                    Date: April 18, 2016
                                                                     Page 12

## 2.    Injunctive Relief

Defendant next argues Plaintiffs do not have standing to seek injunctive relief because there can be no "real and immediate threat of repeated injury in the future" when Plaintiffs are aware of Five Pawns' allegedly deceptive practices and have not alleged they intend to purchase Five Pawns' products in the future. Mot. at 9.

In responding to Defendant's argument, Plaintiffs rely on a line of cases that create a type of "policy exception" that allows plaintiffs to pursue claims for injunctive relief even if plaintiffs do not intend to purchase the wrongdoer's products in the future. Opp'n at 9–10 (citing *Kabbash v. The Jewelry Channel, Inc., U.S.A.*, 2015 U.S. Dist. LEXIS 150675, at *16–17 (C.D. Cal. Nov. 2, 2015); *Henderson*, 2011 WL 1362188 at *7–8; *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533–34 (N.D. Cal. 2012)).

The Court recognizes there is a split among district courts as to whether plaintiffs can pursue injunctive relief for consumer protection claims where they face no threat of future harm – for example, where the consumer is aware of the allegedly deceptive advertising or does not plan to purchase the product in the future. *See In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG PLAX, 2014 WL 5311272, at *10–11 (C.D. Cal. Sept. 4, 2014) ("In the absence of any binding authority governing this issue, the district courts in this Circuit have split into three camps."). The first camp's view (on which Plaintiffs rely) is exemplified by *Henderson*, in which the court reasoned:

> If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ("once bitten, twice shy") and would never have Article III standing.

*Henderson*, 2011 WL 1362188, at *7; *see also Kanfer v. Pharmacare US, Inc.*, Case No. 15-cv-0120-JLB, 2015 WL 6742201 (S.D. Cal. Nov. 4, 2015) (declining to dismiss plaintiff's request for injunctive relief in putative class action against manufacturer of

---

specifically respond to this argument, Plaintiffs allege Defendant's disclosure of test results "fail[s] to cure the defects as alleged in the Complaint" and "defendant continues to misrepresent to its customers the adverse health effects of its products." FAC ¶ 82; *see also* Opp'n at 2 ("And even that 'disclosure,' made on a blog, was surrounded by other statements indicating that no health risks are posed by Defendant's products."). At this stage, the Court concludes Plaintiff Simonds' allegations are sufficient to satisfy the standing requirement.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                    Date: April 18, 2016
                                                                    Page 13

herbal sexual health supplement for misleading and deceptive advertising of supplement, although consumer did not allege he would purchase the product again); *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *11 (collecting cases).

 "A second group of courts [has] taken a middle approach, reasoning that plaintiffs who are aware of defendants' misrepresentations can still be harmed if those misrepresentations continue, because the plaintiffs cannot rely on defendants' representations." *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *11; *see also Rahman v. Mott's LLP*, Case No. 13-cv-3482, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) ("[T]o establish standing, [a plaintiff] must allege that he intends to purchase the products at issue in the future."); *Jou v. Kimberly-Clark Corp.*, Case No. 13-cv-3075, 2013 WL 6491158 at *13 (N.D. Cal. Dec. 10, 2013) (rejecting "plaintiffs' contention that it is unnecessary for them to maintain any interest in purchasing the products in the future" in order to establish standing for injunctive relief). "Courts have taken this approach when plaintiffs have indicated they are interested in purchasing the products-in-suit in the future." *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *11.

 A third group of courts has further concluded "often with some reluctance—that 'a public policy exception . . . does not square with Article III's mandate.'" *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *11 (quoting *Delarosa v. Boiron, Inc.*, Case No. 10-cv-1569, 2012 WL 8716658, at *3–6 (N.D. Cal. Dec. 28, 2012) (finding plaintiff lacked standing where she did not dispute she had no intention to purchase product in the future). "These courts have held that plaintiffs who know the truth about allegedly deceptive claims lack standing to bring suit for injunctive relief." *Id.*

 The Court is not persuaded by the line of cases on which Plaintiffs rely; rather, the Court is persuaded by the reasoning of the courts that have found standing where plaintiffs intend to purchase the product in the future. Plaintiffs have not sufficiently alleged standing under that approach. *See Mason v. Nature's Innovation, Inc.*, Case No. 12-cv-3019, 2013 WL 1969957 at *4–5 (S.D. Cal. May 13, 2013) (collecting cases and concluding that, "[g]uided by the Ninth Circuit's interpretation of Article III's standing requirements, this Court agrees with the courts that hold that a plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct—i.e., the plaintiff is still interested in purchasing the product in question."). None of the Plaintiffs allege they intend to purchase Five Pawns e-liquids in the future. To the contrary, several named Plaintiffs explicitly contend they stopped purchasing Five Pawns' products when the Cloud9 test

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                    Date: April 18, 2016
                                                                     Page 14

results were posted on the Internet on June 28, 2015. FAC ¶¶ 27–30, 48, 51, 57. Further, Plaintiffs allege that, "[h]ad Defendant disclosed that its e-liquids contain a variety of toxins, impurities, and related potential health hazard[s] . . . Plaintiffs would not have paid the price that they paid [for] Defendant's e-liquids *or would not have purchased Defendant's e-liquids.*" *Id.* ¶ 26 (emphasis added). Thus, the Court concludes it is implausible Plaintiffs risk being harmed by Defendant's e-liquids in the future. *See Racies*, 2015 WL 2398268 at *5. The Court therefore finds Plaintiffs have not alleged "a real and immediate threat" of future injury and do not have standing to seek injunctive relief. *See id.* ("In false advertising cases, 'where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief . . . .'").

For the foregoing reasons, the Court finds Plaintiffs have not sufficiently alleged they have standing to seek injunctive relief. Accordingly Defendant's Motion is GRANTED as to Plaintiffs' claims for injunctive relief. Plaintiffs' request for injunctive relief is DISMISSED WITHOUT PREJUDICE.

## III.    Motion to Dismiss under Rule 12(b)(6)

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, the court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

For claims sounding in fraud, a complaint must be dismissed when a plaintiff fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see* Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff alleging such claims to "state with particularity the circumstances constituting fraud." *Id.* The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *United States ex rel*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                          Date: April 18, 2016
                                                                                      Page 15

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Further, if the plaintiff claims a statement is false or misleading, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). In other words, the plaintiff "must set forth an explanation as to why the statement or omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997). This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

Although review of a motion to dismiss is ordinarily limited to the contents of the complaint and material properly submitted with the complaint, *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Gilbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). This includes "internet pages as it does . . . printed material." *In re iPhone 4S Consumer Litigation*, Case No. 12-cv-1127, 2013 WL 3829653, at *6 (N.D. Cal. July 23, 2013) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). The court may treat such referenced documents as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

In granting a motion to dismiss, dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Dismissal without leave to amend is appropriate when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**B.    Discussion**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                    Date: April 18, 2016
                                                     Page 16

    Defendants move to dismiss Plaintiffs' claims on the grounds Plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading requirement. Mot. at 11; Reply at 7–12.[9] Defendants also assert Plaintiffs' state consumer protection claims (claims 1 through 6) fail because Defendant owed no duty to disclose whether any of its products contained AP or DA, Plaintiffs have not alleged any actionable representations, and Plaintiffs have failed to adequately allege any conduct that would be likely to deceive the reasonable consumer. Mot. at 17–22. Defendant next contends Plaintiffs' breach of express warranty claim (claim 7) fails because Plaintiffs failed to provide pre-litigation notice and because Plaintiffs have failed to adequately allege any of the claim's elements. *Id.* at 23. Finally, Defendant moves to dismiss Plaintiffs' request for disgorgement of profits. *Id.* at 24. The Court will address these arguments in turn, beginning with Defendant's arguments concerning the breach of express warranty claim.

### 1.    Breach of Express Warranty

    With respect to Plaintiffs' claim for breach of express warranty, Defendant argues Plaintiffs have failed to sufficiently allege the elements of the claim and provide proper pre-litigation notice. Mot. at 23. The Court will first address whether Plaintiffs have adequately stated a claim for breach of express warranty.

    From what the Court can glean, Plaintiffs are alleging a breach of express warranty claim under California law. *See* Opp'n at 19. The parties agree that, to successfully claim breach of express warranty, "a plaintiff must prove (1) the seller's statements constitute an 'affirmation of fact or promise' [which relates to the goods] or a 'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the warranty was breached." *Arroyo v. TP-Link USA Corp.*, No. 5:14-CV-04999-EJD, 2015 WL 5698752, at \*10 (N.D. Cal. Sept. 29, 2015) (quoting *Yastrab v. Apple Inc.*, No. 5:14-CV-01974-EJD, 2015 WL 1307163, at \*7 (N.D. Cal. Mar. 23, 2015)). "To satisfy the first element, Plaintiff must 'identify a specific and unequivocal written statement' about the product that constitutes an 'explicit guarantee [].'" *Id.* (quoting *In re iPhone 4S Consumer Litigation*, 2013 WL 3829653, at \*10). The unequivocal terms with which the seller describes its wares must form part of the basis for the bargain. *Id.*

    The Court finds Plaintiffs have failed to satisfy the first element of a breach of express warranty claim. First, Plaintiffs' allegations in the FAC seemingly contradict Plaintiffs' arguments in the Opposition. Without citing to any portion of the FAC, Plaintiffs assert their claim for breach of express warranty "is based on Defendant's statement that its products contained only natural ingredients, as well as its statements

---

[9] It appears Defendant moves to dismiss all of Plaintiffs' claims except for the breach of express warranty claim (claims 1 through 6) on these grounds.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                              Date: April 18, 2016
                                                                      Page 17

that they contained nicotine and their only health risk was from that and from inhaling non-vaporized substances." Opp'n at 19. The FAC is at odds with the argument concerning natural ingredients. In particular, Plaintiffs allege Defendant's website reads: "Ingredients: Tobacco-Derived Nicotine, Vegetable Glycerin, Propylene Gycol, and Natural and *Artificial* Flavors." FAC ¶ 66 (emphasis added); *see also id.* ¶ 76. This allegation – which indicates Defendant states its e-liquids contain "artificial flavors" – contradicts Plaintiffs' unsupported argument that Defendant asserts its products contain only natural ingredients.

Further, putting aside the inconsistencies between the FAC and the Opposition, Plaintiffs' breach of express warranty claim nonetheless fails. Plaintiffs argue Defendant's statements concerning nicotine and the health risks of nicotine and inhaling non-vaporized substances constitute "specific and unequivocal statements" that these were the only health risks of Defendant's products and were the basis of the bargain. Opp'n at 19.[10] In the FAC, Plaintiffs highlight the text of the warning on Defendant's website reads:

> WARNING: This product is not a smoking cessation product and has not been tested as such. The FDA has not evaluated the safety of this product or any of the statements made by the manufacturer. This product is intended for use for persons of legal age or older, and not by children, women who are pregnant or breast feeding, or persons with or at risk of heart disease, high blood pressure, diabetes, or taking medicine for depression or asthma. Nicotine is addictive and habit forming, and can be toxic if in contact with skin, or if swallowed. Nicotine can increase your heart rate and blood pressure and cause dizziness, nausea, and stomach pain. Inhalation of this product may aggravate existing respiratory conditions. Ingestion of the non-vaporized ingredients can be poisonous. This product is not intended to diagnose, treat, cure or prevent any condition, disorder, disease or physical or mental condition.
>
> CA Proposition 65 WARNING: This product contains nicotine, a chemical known to the state of California to cause birth defect or other reproductive harm.

---

[10] The Court again notes Plaintiffs do not quote from the FAC or specifically indicate which statements they rely on in support of their breach of express warranty claim. *See* Opp'n at 19.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                              Date: April 18, 2016
                                                                                          Page 18

*Id.* ¶ 66; *see also id.* ¶ 67 ("The text on a bottle of Five Pawns e-liquids is as follows: . . . Nicotine is a known addictive substance and can be poisonous . . . not intended for oral consumption.").

The Court cannot conclude the above statements from Defendant's website and e-liquids packaging constitute "specific and unequivocal" statements about Defendant's e-liquids that constitute an "explicit guarantee" that nicotine and risks related to inhaling non-vaporized substances are the *only* health-related risks concerning Defendant's e-liquids. *See McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD, 2011 WL 3862120, at *4 (N.D. Cal. Aug. 30, 2011) ("General assertions about representations or impressions given by Defendants about the phone's 3G capabilities are not equivalent to a recitation of the exact terms of the underlying warranty . . . .").

Moreover, other allegations in the FAC itself support this conclusion; Plaintiffs specifically allege Defendant's statements merely "impl[y]" or "convey[] the impression" – rather than specifically and unequivocally indicate – that the only health-related risks of Defendant's e-liquids are those concerning nicotine and swallowing the contents of a cartridge. *See* FAC ¶ 64 ("Defendant's current packaging and advertising *conveys the impression* that the product contains no meaningful health risks other than possibly those that are a direct result of nicotine . . . .") (emphasis added); *id.* ¶ 68 ("By warning of risks relating to nicotine, and the risks that may arise if the concentrated contents of the cartridge are swallowed without being vaporized, this packaging *implies* that those are the only health-related risks that relate to Defendant's e-liquids.") (emphasis added).

Based on the foregoing, the Court concludes Plaintiffs have failed to sufficiently allege a breach of express warranty claim. *See Cuevas v. United Brands Co.*, No. 11CV991 BTM RBB, 2012 WL 760403, at *7 (S.D. Cal. Mar. 8, 2012) ("Plaintiff does not allege that Defendant made any express representations or warranties regarding the safety of consuming caffeine with alcohol. Therefore, Plaintiffs' express warranty claim is dismissed for failure to state a claim."). Defendant's Motion is GRANTED, and Plaintiffs' breach of express warranty claim is DISMISSED WITHOUT PREJUDICE.[11]

## 2.      Claims Sounding in Fraud

Defendants move to dismiss Plaintiffs' state consumer protection claims (claims 1 through 6) on the grounds that Plaintiffs have failed to state those claims with the particularity required by Rule 9(b).

---

[11] Because the Court has already determined Plaintiffs have insufficiently alleged a breach of express warranty claim, it need not reach Defendant's argument concerning pre-litigation notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 15-1859-DOC (DFMx)                                Date: April 18, 2016
                                                                              Page 19

### a.    Applicable Pleading Standard

As a preliminary matter, the Court must determine whether to apply Rule 9(b)'s heightened pleading standard to Plaintiffs' claims under California, Indiana, Vermont, and New York statutes.

The parties appear to agree Plaintiffs' UCL, FAL, and CLRA claims "sound in fraud" because they are based on Defendant's alleged failure to disclose the presence of DA and AP in its products and the health risks of DA and AP. Such claims are subject to the heightened pleading requirements of Rule 9(b). *See Thomas v. Costco Wholesale Corp.*, Case No. 12-cv-02908-EJD, 2013 WL 1435292 at *6 (N.D. Cal. Apr. 9, 2013) (noting "the heightened Rule 9 pleading standard applies to claims for false or deceptive advertising brought pursuant to the UCL, FAL, or CLRA."); *see also Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal.2009) ("The Ninth Circuit has recently clarified that claims of nondisclosure and omission, as varieties of misrepresentations, are subject to the pleading standards of Rule 9(b).").

The Court also finds Rule 9(b) applies to Plaintiffs' claims under the other states' consumer protection statutes. As other courts in this Circuit have concluded, "[r]egardless of whether federal courts in [other states] apply Rule 9(b) to their state consumer protections statutes, federal courts in California are bound to apply Ninth Circuit precedent" as set forth in *Kearns. Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373-TEH, 2015 WL 7888906, at *12 (N.D. Cal. Nov. 30, 2015); *see also Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 957 (C.D. Cal. 2012) (applying Rule 9(b) to each of the various state consumer protection claims at issue, including New York's, despite the Second Circuit's contrary practice). "Although *Kearns* addressed only Rule 9(b)'s applicability to CLRA and UCL claims that sound in fraud, its reasoning is broad and applies to any claim that is 'grounded in fraud' or 'sound[s] in fraud.'" *Keegan*, 838 F. Supp. 2d at 957 (citation omitted). In *Kearns*, the Ninth Circuit "acknowledged that fraud is not a necessary element of claims arising under the CLRA or the UCL, but that a plaintiff could assert claims based on fraudulent conduct under either statute," and held that "in circumstances where plaintiffs allege 'a unified course of fraudulent conduct and rely entirely on that conduct' as the basis of the claim, Rule 9(b) applies." *Id.* (quoting *Kearns*, 567 F.3d at 1125).

Because all of Plaintiffs' claims are based on the same allegedly fraudulent course of conduct – the "deceptive omission" of information regarding the failure to disclose the presence of DA and AP in Defendant's e-liquids (and the health hazards of DA and AP), the Court concludes *Kearns* applies. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) ("In cases where fraud is not a necessary element of a claim, a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                    Date: April 18, 2016
                                                                     Page 20

plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).") Consequently, the Court will analyze Plaintiffs' claims under Indiana, Vermont, and New York law under Rule 9(b). *See Keegan*, 838 F. Supp. 2d at 957 ("Because plaintiffs' claims are based on defendants' allegedly fraudulent conduct in concealing a purported defect in the class vehicles, *Kearns* applies. Consequently, the Court will analyze plaintiffs' non-California state law claims under Rule 9(b).").

The Court also notes that, although Rule 9(b) applies to the claims specified above, "[w]hen a claim rests on allegations of fraudulent omission" – as is the case here – "the Rule 9(b) standard is somewhat relaxed because a plaintiff cannot plead either the specific time of an omission or the place, as he is not alleging an act but a failure to act." *Shahinian v. Kimberly-Clark Corp.*, No. CV 14-8390 DMG (SHX), 2015 WL 4264638, at *4 (C.D. Cal. July 10, 2015) (quoting *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (internal quotation marks omitted)).

Nonetheless, "a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity." *Asghari*, 42 F. Supp. 3d at 1325. "Specifically, a plaintiff must 'set forth an explanation as to why [the] omission complained of was false and misleading' to state a claim under Rule 9(b)." *Id.* (quoting *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 932 (N.D. Cal. 2013)). Indeed, "to plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Id.* (quoting *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS, 2012 WL 841019 at *3 (C.D. Cal. Feb. 22, 2012) (internal quotation marks omitted)); *see also McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD, 2011 WL 3862120, at *5 (N.D. Cal. Aug. 30, 2011).

### b.    CLRA, UCL, and FAL Claims

### 1.  Legal Standard Governing CLRA Claims

"The CLRA makes illegal various 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the in the sale or lease of goods or services to any consumer.'" *Asghari*,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                    Date: April 18, 2016
                                                    Page 21

42 F. Supp. 3d at 1314 (quoting Cal. Civ. Code § 1770(a)). Conduct that is "reasonably likely to mislead a reasonable consumer" violates the CLRA. *Id.* (quoting *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 680 (2006)). "A 'reasonable consumer' is an 'ordinary consumer acting reasonably under the circumstances,' who 'is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture . . . .'" *Id.* (citation omitted)

Section 1770(a)(5) prohibits "[r]epresenting that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." In addition, § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." These sections of the CLRA encompass deceptive omissions as well as deceptive representations. *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013) (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006)). "The CLRA is to be 'liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economic procedures to secure such protection.'" *Asghari*, 42 F. Supp. 3d at 1314 (citation omitted).

## 2. Legal Standard Governing UCL Claims

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* § 17200. "The California Supreme Court has construed the term broadly." *Asghari*, 42 F. Supp. 3d at 1314 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999)). Specifically, the California Supreme Court has explained:

> [Section 17200] defines 'unfair competition' to include any unlawful, unfair or fraudulent business act or practice. . . . Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law. . . . By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. . . . However, the law does more than just borrow. The statutory language makings clear that a practice may be deemed unfair even if not specifically proscribed by some other law. Because

Business and Professions Code section 17200 is written in the
disjunctive, it establishes three varieties of unfair competition—acts
or practices which are unlawful, or unfair, or fraudulent.

*Cel-Tech Commc'ns*, 20 Cal. 4th at 180.

### 3.   Legal Standard Governing FAL Claims

The FAL proscribes "mak[ing] or disseminat[ing] any statement . . . which is
untrue or misleading, and which is known, or by the exercise of reasonable care should
be known, to be untrue or misleading . . . with intent directly or indirectly to dispose of
real or personal property." Cal. Bus. & Prof. Code § 17500; *see also Williams v. Gerber
Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("The FAL prohibits any 'unfair,
deceptive, untrue, or misleading advertising.'") (citation omitted). "The FAL
encompasses not just false statements, but also those that 'may be accurate on some level,
but will nonetheless tend to mislead or deceive.'" *Dodson v. Tempur-Sealy Int'l, Inc.*, No.
13-CV-04984-JST, 2014 WL 1493676, at *5 (N.D. Cal. Apr. 16, 2014) (quoting *Ariz.
Cartridge Remfrs. Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985 (9th Cir. 2005)).
"'[A]ny violation of the false advertising law . . . necessarily violates' the UCL."
*Williams*, 552 F.3d at 938 (citation omitted).

### 4.   Whether Plaintiffs Have Adequately Pleaded UCL, FAL, and CLRA Claims

The Court will first address whether Plaintiffs have adequately alleged their UCL,
FAL, and CLRA claims with the particularity required by Rule 9(b).

Defendant argues Plaintiffs have not pleaded the circumstances of fraud, including
reliance and causation, with particularity. Reply at 8. Plaintiffs respond their allegations
satisfy Rule 9(b), arguing the FAC "unquestionably provides notice to Defendant of the
'who, what, when, where and how' of the claims, as well as reliance. Opp'n at 16.

The Court concludes Plaintiffs adequately allege their omission-based claims with
the particularity required by Rule 9(b). First, Plaintiffs allege the content of the omission
and where the omitted information should or could have been revealed; in particular,
Plaintiffs contend Defendant omitted the presence and risk of DA and AP from
Defendant's packaging and website. *See, e.g.*, FAC ¶ 62 ("Defendant's packaging on its
e-liquids only discloses the amount of nicotine, propylene glycol and vegetable glycerin.
It does not state that its products contain AP and/or DA, nor does it contain a warning
regarding the hazardous effects on the human body of inhaling AP and DA."); *id.* ¶ 65

("[N]owhere on the packaging does it mention the existence of DA and AP. . . . [B]y omitting these ingredients, Defendant hides the fact that its e-liquids contain DA and/or AP, chemicals found to cause various lung diseases and thus no longer used by certain of its competitors in their e-cigarettes. Moreover, . . . omitting the ingredients on the package conceals the dangers associated with the chemicals contained in its e-liquids, which are described in the studies referenced above."); *see also* FAC ¶¶ 61–76, 105, 111–13. Plaintiffs also "identify[] or attach[] representative samples of" the e-liquid packaging and language on Defendant's website that failed to include the omitted information. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1306 n.19 (S.D. Cal. 2003). Specifically, the FAC includes photos of the Five Pawns e-liquid bottle label, *see id.* ¶¶ 64, 67, and quotes from Defendant's website, *see id.* ¶ 66.

The Court also concludes Plaintiffs have sufficiently alleged actual reliance. To prove reliance on an omission, a plaintiff must show the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). "A plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision." *Id.* A plaintiff may do that "by simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Id.* (citation omitted). Here, Plaintiffs allege they "were exposed to and saw" Defendant's marketing claims and packaging, *see* FAC ¶ 26; *see also id.* ¶¶ 27–31, and "relying on Defendant's misleading marketing and labeling of Defendant's products, believed that Defendant's products did not carry dangers or risks associated with DA and/or AP," *id.* ¶ 26. Further, Plaintiffs allege that, had the omitted information been disclosed, they would have "behaved differently" by either not purchasing or not paying as much for the Five Pawns e-liquids. FAC ¶¶ 26, 132, 125–26. The Court finds this adequate. *See Hodsdon*, 2016 U.S. Dist. LEXIS 19268, *11 ("Hodsdon claims that he 'saw the product packaging and labeling as well as the signage in retail stores where he purchased the Chocolate Products' and 'would not have purchased [them] or paid as much for them' had he known the truth. If Hodsdon saw the labels, there is a reasonable inference that he read them.").

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' CLRA, UCL, and FAL claims for failure to satisfy Rule 9(b)'s heightened pleading standard.

## 5. Whether Plaintiffs Have Alleged a Duty to Disclose

Defendant also moves to dismiss Plaintiffs' CLRA, UCL and FAL claims because Five Pawns "owes no duty under any statute or regulation to disclose whether AP or DA is in any of its products." MTD at 18; *see also* Reply at 12. Plaintiffs' theory is that

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                Date: April 18, 2016
                                                                                                            Page 24

Defendant had a duty to disclose because Defendant had exclusive knowledge of "the presence of AP and DA and the significant health risks to the user." Opp'n at 11. Plaintiffs also argue Defendant had a duty to disclose because it actively concealed the presence of AP and DA and the significant health risks to users and because Defendant made partial misrepresentations. *Id.* at 11–12. "Because Plaintiffs proceed solely on a 'pure-omission' theory of liability, the viability of each of the three causes of action alleged will turn on whether [Defendant] owed Plaintiffs a duty of disclosure." *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG JCX, 2012 WL 313703, at *2 (C.D. Cal. Jan. 23, 2012), *aff'd sub nom. Gray v. Toyota Motor Sales, U.S.A., Inc.,* 554 Fed. Appx. 608 (9th Cir. 2014).

   To be actionable, an omission must be (1) "contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Daugherty v. Am. Honda Co.*, 144 Cal. App. 4th 824, 835 (2006) (internal quotation marks omitted)). The "failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Daugherty*, 144 Cal. App. 4th at 838.

   "Courts have applied the first situation in cases where . . . [d]efendants gave information of other facts which could have the likely effect of misleading the public for want of communication of the alleged omissions." *Gray*, 2012 WL 313703, at *3. As to the second situation, "some district courts in California have imported the 'duty' analysis applicable to common law fraudulent concealment actions in order to determine whether a defendant was 'obligated to disclose' the information under the UCL and CLRA." *Gray*, 2012 WL 313703, at *3. Applying that standard, a failure to disclose can constitute actionable fraud in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).[12]

---

[12] The Court notes "the California Courts of appeal are split on whether this test – the *LiMandri* test – is properly applied to UCL and CLRA claims based on omissions." *Gray*, 2012 WL 313703, at *3; *see also Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1174 n.2 (E.D. Cal. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 15-1859-DOC (DFMx)                              Date: April 18, 2016
                                                                        Page 25

"The fourth *LiMandri* circumstance, applicable where a defendant makes partial representations that are rendered misleading by suppressing material facts, overlaps with the first situation identified in *Daugherty*" (an omission "contrary to a representation actually made by the defendant"). *Gray*, 2012 WL 313703, at *3. Further, *LiMandri* factors two through four "require[] the existence of a material fact." *Dodson*, 2014 WL 1493676, at *4. An omission is material if a reasonable consumer 'would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Daniel*, 806 F.3d at 1225 (citation omitted); *see also Dodson*, 2014 WL 1493676 ("Non-disclosed information is material if, 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'") (citation omitted); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013) ("A fact is material, rendering a defendant potentially obligated to disclose it, if a reasonable consumer would deem it important in determining how to act in the transaction at issue.") (citation and internal quotation marks omitted). "Materiality is judged from the perspective of a reasonable consumer,' and is generally a question of fact." *Daniel*, 806 F.3d at 1226 (citations omitted).

Also relevant here, in *Wilson*, the Ninth Circuit stated, "California courts have generally rejected a broad obligation to disclose" and instead have held that "a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative representation or a safety issue." *Wilson*, 668 F.2d at 1141. Following *Wilson*, several federal district courts, including this one, have reaffirmed that a manufacturer's duty to affirmatively disclose information to consumers is confined to safety issues. *Wirth v. Mars Inc.*, No. SACV151470DOCKESX, 2016 WL 471234, at *3 (C.D. Cal. Feb. 5, 2016) (collecting cases); *see also Gray*, 2012 WL 313703, at *3 ("[A]lthough the authority is . . . divided, the weight of authority suggests that a 'manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.") (quoting *Oestreicher v. Alienware Corp.*, 322 Fed. Appx. 489, 493 (9th Cir. 2009)). In keeping with its recent ruling in *Wirth*, the Court concludes the *Wilson* rule applies in both product defect and non-product defect cases. *Wirth*, 2016 WL 471234, at *5.

Defendant argues Plaintiffs have failed to satisfy any of the *LiMandri* factors, have failed to sufficiently allege the omitted information is material, and have not adequately alleged an omission related to a safety issue as required under *Wilson*. Reply at 13–14, 16. The Court will address each issue raised by Defendant.

First, the Court concludes Plaintiffs have sufficiently pleaded a duty to disclose under the fourth *LiMandri* circumstance (which requires the existence of a material fact) – "partial representations that are misleading because some other material fact has not

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                              Date: April 18, 2016
                                                              Page 26

been sufficiently disclosed." [13] The partial representations at issue here are the warnings on Defendant's product packaging and website that there are certain risks associated with the product because it contains nicotine. Opp'n at 13; *see* FAC ¶ 64 ("Defendant's current packaging and advertising convey[] the impression that the product contains no meaningful health risks other than possibly those that are a direct result of nicotine."); *see also id.* ¶¶ 13, 65–66, 68. Plaintiffs assert Defendant's statements constitute partial representations because they imply nicotine was the sole toxin in Defendant's product and the sole health risk. Opp'n at 13.

Plaintiffs have sufficiently alleged the omission is material because, "had the omitted information been disclosed . . . [Plaintiffs] would have behaved differently" by not purchasing or paying less for the product. *See* FAC ¶ 112 ("The omitted information would have been material to a reasonable consumer in his or her decision as to whether to purchase and/or purchase Defendant's e-liquids at the price at which they were offered."); *see also id.* ¶ 9. Moreover, "[c]ourts have found as a matter of course that '[n]ondisclosures about safety considerations of consumer products are material.'" *Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL 454861, at *7 (C.D. Cal. Feb. 6, 2013) (quoting *In re Toyota Motor Corp.*, 754 F.Supp.2d 1145, 1173 (C.D. Cal. 2010)); *see also Daniel*, 806 F.3d at 1226 ("Alleged defects that create 'unreasonable safety risks' are considered material."). And here, as discussed below, the Court concludes Plaintiffs have adequately alleged omissions that pose safety risks.

The instant case is analogous to *In re NJOY, Inc. Consumer Class Action Litigation*, Case No. 14-00428-MMM (JEMx) (C.D. Cal. May 27, 2015), another case concerning e-cigarettes in which the plaintiffs alleged there was a duty to disclose based on partial representations made on e-cigarette packaging similar to the packaging at issue in this case.[14] Specifically, the *NJOY* plaintiffs argued the warning on the packaging was

---

[13] Because Plaintiffs adequately allege Defendant made a partial representation, the Court need not reach Plaintiffs' arguments concerning the other *LiMandri* circumstances.

[14] The warning at issue in *NJOY* states, in full:
WARNING: NJOY products are not smoking cessation products and have not been tested as such. The U.S. FDA has not approved NJOY products for any use and they are not intended to diagnose, cure, mitigate, treat, or prevent any disorder, disease, or physical or mental condition. NJOY products contain nicotine, a chemical known to the State of California to cause birth defects or other reproductive harm. Nicotine is addictive and habit forming, and it is very toxic by inhalation, in contact with the skin, or if swallowed. Ingestion of the non-vaporized concentrated ingredients in the cartridges can be poisonous. Physical effects of nicotine may include accelerated heart rate and increased blood pressure. If the cartridge is swallowed, seek medical assistance immediately. NJOY products are intended for use by adults of legal smoking age (18 or older in California), and not by children, women who are pregnant or breastfeeding, or persons with or at risk of heart disease, high blood pressure, diabetes, or taking medicine for depression or asthma. NJOY products may not be sold to minors. Identification of all persons under 26 will be required before purchase. Keep out of reach of children."
*NJOY*, Case No. 14-00428-MMM (JEMx), at 33.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                   Date: April 18, 2016
                                                                                                      Page 27

a partial representation "because by disclosing nicotine-related risks only, NJOY implied those were the sole health-related risks associated with NJOY e-cigarettes." *Id.* at 32–33; *see id.* at 34. The *NJOY* court concluded "[a] reasonable jury could find that disclosing nicotine-related risks while not disclosing other health-related risks was a half truth that could mislead a reasonable consumer," and therefore, the plaintiffs had adequately alleged a partial representation giving rise to a duty to disclose. *Id.* at 34. Like the *NJOY* court, this Court concludes Plaintiffs have adequately alleged a partial representation giving rise to a duty to disclose. *See id.*; *see also Herron*, 924 F. Supp. 2d at 1177; *see In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1193 (C.D. Cal. 2010).[15]

        Finally, the Court concludes Plaintiffs have satisfied *Wilson* by adequately alleging an omission that poses safety risks. The FAC contains allegations concerning the health hazards of AP and DA, and Plaintiffs contend Defendant's e-liquids contain DA and AP. *See, e.g.*, FAC ¶ 9 ("While DA and AP are safe to eat or drink, inhalation is known to cause certain lung conditions, including Bronchiolitis Obliterans . . . ."); *id.* ¶ 10 ("It is also known that DA and/or AP are contributing factors to chronic obstructive pulmonary disease . . . and emphysema."); *id.* ¶ 15 ("The Cloud9 test results showed that some of Defendant's line of products contain the highest levels of AP that have ever been shown in a laboratory test of e-liquids."); *id.* ¶ 56 ("The National Institute for Occupational Safety and Health . . . released a report dated August 12, 2011 stating the acceptable levels of DA and/or AP for e-liquids as 65 µg for day for AP and 137 µg per day for AP. Both Cloud9 and Five Pawn's test results show DA and AP levels that far exceed these limits. In particular, Absolute Pin tested at 40 µg/ml of DA and . . . 2,500 µg/ml of AP."); *id.* ¶¶ 51, 56, 68, 72–73, 83 113. Thus, the Court concludes Plaintiffs have adequately alleged omissions that present safety risks for consumers of Defendant's e-liquids.

        Based on the foregoing, the Court concludes Plaintiffs have sufficiently pleaded a duty to disclose. As such, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' CLRA, UCL, and FAL claims on this basis.

> **c.      New York General Business Law Claim, Indiana Deceptive Consumer Sales Act Claim, and Vermont Consumer Fraud Act Claim**

> **1.   GBL Claim**

---

[15] However, the Court notes Plaintiffs have only "adequately *pleaded* a duty to disclose and that the question of whether Defendant's alleged failure to disclose such facts was actually misleading is a question left for the finder of fact." *Goldsmith v. Allergan, Inc.,* No. CV 09-7088 PSG EX, 2011 WL 2909313, at *5 (C.D. Cal. May 25, 2011).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                    Date: April 18, 2016
                                                     Page 28

Plaintiffs also allege Defendant's conduct violated GBL § 349. *See* FAC ¶¶ 151–59.

GBL § 349 creates a private cause of action for any person injured by "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York. To state a claim under § 349, a plaintiff must allege: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Asghari*, 42 F. Supp. 3d at 1331 (citing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *Bosch v. LaMattina*, 901 F. Supp. 2d 394, 406 (E.D.N.Y. 2012). To be consumer-oriented, the conduct must have a "broad impact on consumers at large." *Id.* (quoting *U.W. Marx, Inc. v. Bonded Concrete, Inc.*, 776 N.Y.S.2d 617, 619 (2004) (internal quotation marks omitted)).

"An omission can give rise to a claim under § 349." *Henry v. Rehab Plus Inc.*, 404 F. Supp. 2d 435, 445 (E.D.N.Y. 2005) (citation omitted). An omission "becomes a misrepresentation only in a situation in which it renders other statements made by a defendant misleading." *Id.*

Defendant argues Plaintiffs have failed to state a claim under the GBL because they have not alleged Defendant made any statements which render other statements Defendant made misleading. Mot. at 19 (citing *Henry*, 404 F. Supp. 2d at 445). Defendant also contends Plaintiffs have not satisfied Rule 9(b)'s heightened pleading requirement. Mot. at 13; Reply at 11–12. The Court will address each argument in turn.

First, the Court concludes Plaintiffs' allegations of deceptive omissions are sufficient for the same reasons it found them sufficient to support Plaintiffs' California consumer protection claims. Above, the Court found the warnings on Defendant's product packaging and website could mislead a reasonable consumer and therefore constitute partial misrepresentations leading to a duty to disclose. The Court similarly concludes Plaintiffs' allegations concerning Defendant's disclosure of nicotine-related risks and omission of the presence and health risks of DA and AP are sufficient to state an omission giving rise to a claim under § 349. Accordingly, Defendant's Motion to Dismiss Plaintiffs' GBL claim on this basis is DENIED. *See Asghari*, 42. F. Supp. 3d at 1332.

The Court also finds Plaintiffs have stated their GBL claim with the requisite particularity. Above, the Court concluded it is "bound by the holding in *Kearns*," and therefore, Plaintiffs must plead their GBL claim with the particularity required under

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                Date: April 18, 2016
                                                                Page 29

Rule 9(b). *Gold*, 2015 WL 7888906, at *12. As such, the analysis conducted above for
the CLRA, UCL, and FAL claims "applies here with equal force." *Id.* Accordingly,
Defendant's Motion to Dismiss for failure to plead the omissions-based claims with
particularity is DENIED.

## 2. IDCSA Claim

Plaintiffs allege Defendant engaged in an "incurable deceptive act" in violation of
the IDCSA by failing to disclose the presence of DA and AP in its products even though
Defendant knew its products contained those toxins at dangerous levels. FAC ¶¶ 138–50.

"The IDCSA is a remedial statute designed 'to provide[] remedies to consumers
. . . for practices that the General Assembly deemed deceptive in consumer transactions."
*Hoopes v. Gulf Stream Coach, Inc.*, No. 1:10-CV-365, 2014 WL 4829623, at *11 (N.D.
Ind. Sept. 29, 2014) (citation omitted). The IDCSA is "to be liberally construed to protect
the consumer." *Id.* If a supplier engages in "deceptive acts," a consumer may file suit
pursuant to the IDCSA. *Id.* Under the IDCSA, an "incurable deceptive act . . . is one that
is 'done by a supplier as part of a scheme, artifice, or device with intent to defraud or
mislead." *Id.*

Defendant asserts Plaintiffs fail to state a claim under the IDSCA, including
because the IDCSA does not apply to non-disclosures. Mot. at 19. As a preliminary
matter, therefore, the Court must address the parties' dispute over whether the IDSCA
applies to deceptive omissions.

"[P]rior to July 2014, the IDCSA imposed liability only for discrete categories of
'deceptive acts'; there was no 'general fraud' provision, and the statute did not include
deceptive omissions." *Dicuio v. Brother Int'l Corp.*, No. CIV.A. 11-1447 FLW T, 2015
WL 3403144, at *26 (D.N.J. May 27, 2015) (citing *Lawson v. Hale*, 902 N.E.2d 267, 274
(Ind. App. 2009)). In 2014, the statute was amended to include "such a 'catch all'
provision, and to provide liability for omissions." *Id.* (citing 2014 Ind. Legis. Serv. P.L.
65-2014 (West)). However, in Indiana, "absent 'strong and compelling reasons,' statutes
will not be interpreted to apply retroactively." *Miller v. LaSalle Bank Nat. Ass'n*, 595
F.3d 782, 787 (7th Cir. 2010); *see also Metro Holding Co. v. Mitchell*, 589 N.E.2d 217,
219 (Ind. 1992). This Court, following other courts that have addressed this issue,
concludes "there are no strong and compelling reasons to think that the amendments to
the IDCSA were intended to apply retroactively." *Dicuio*, 2015 WL 3403144, at *26; *see
Hoopes*, 2014 WL 4829623, at *11 n.9 ("[T]he Court will analyze the claims under the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                    Date: April 18, 2016
                                                                      Page 30

version of the IDCSA in effect at the time of the incidents giving rise to the litigation and the time the suit was commenced.").[16]

Here, Plaintiffs allege Plaintiff Greene purchased Defendant's e-liquids "at a local store in Indianapolis, Indiana and on the Internet on the Five Pawns e-commerce store and on another online store called Giant Vapes in or about May 2014." FAC ¶ 27; *see also id.* ¶ 141. Plaintiffs further contend they, including Plaintiff Greene, would not have purchased, or would have paid less for, Defendant's e-liquids had Defendant disclosed the presence and hazards of DA and AP. *See id.* ¶ 26. Plaintiff Greene "ceased purchasing Defendant's products when the Cloud9 test results were posted on the internet." *Id.* ¶ 27. The Court is unable to glean from these allegations whether Plaintiff Greene only purchased Defendant's e-liquids in May 2014 or whether he purchased them on other occasions after May 2014 (until the Cloud9 test results were posted). Further, the FAC does not clearly indicate *when* the Cloud9 test results were posted on the internet. The parties also fail to address the retroactivity issue and whether the 2014 version of the IDCSA applies to Plaintiffs' claim. As such, the Court cannot determine when the "incident[] giving rise to the litigation" occurred, *Hoopes*, 2014 WL 4829623, at *11 n.9, and thus, which version of the IDSCA applies to Plaintiffs' claim.

To the extent Plaintiffs allege their omissions-based IDCSA claim is based on purchases made in May 2014, the Court concludes the claim is not actionable under the pre-2014 version of the IDCSA and therefore must be DISMISSED WITH PREJUDICE. *See Dicuio*, 2015 WL 3403144, at *27 ("Pociluyko's claim that Defendant 'fail[ed] to disclose known material facts' does not constitute a deceptive act under the IDSCA.") (citing *Lawson*, 902 N.E.2d at 274).[17]

However, to the extent the incident giving rise to the litigation occurred after the 2014 IDCSA amendments, Plaintiffs' IDCSA claim is DISMISSED WITHOUT PREJUDICE.

### 3. VCFA Claim

---

[16] The Seventh Circuit, discussing retroactivity in a different context, has explained "[t]he presumption against retroactivity reflects a concern about upsetting the expectations that the parties harbored when they engaged in the conduct *giving rise to* the suit, as opposed to their expectations at the time the suit *was filed*." *Kopec v. City of Elmhurst*, 193 F.3d 894, 903 (7th Cir. 1999); *see also Eco Mfg. LLC. v. Honeywell Int'l, Inc.*, 357 F.3d 649, 652 (7th Cir. 2003) ("A law is retroactive when it alters the legal consequences of completed acts. Changing the rules governing future behavior, by contrast, is a prospective application.") (citations omitted).

[17] *See also Hoopes*, 2014 WL 4829623, at *11 n.9; *Turbeville v. JPMorgan Chase Bank*, No. SA CV 10-01464 DOC, 2011 WL 7163111, at *10 (C.D. Cal. Apr. 4, 2011) ("[T]he [Indiana] Plaintiffs plead facts sufficient to substantiate a claim for fraud generally. But because the IDCSA does not contain a 'general fraud category . . . [the Court is] bound by its current language' and must dismiss Plaintiffs' IDSCA claim.") (citation omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                    Date: April 18, 2016
                                                                                                            Page 31

Plaintiffs allege Defendant engaged in unfair and deceptive practices in violation of the VCFA. FAC ¶¶ 161–70.

Pursuant to 9 V.S.A. § 2453(a), "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce" are unlawful. "A deceptive act or practice 'is a material representation, practice or omission likely to mislead a reasonable consumer.'" *Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671 (D. Vt. 2012) (citation omitted). To state a claim under the VCFA, a plaintiff must allege: "(1) defendants misrepresented or omitted information in a manner likely to mislead consumers; (2) the consumers interpreted the message reasonably under the circumstances; and (3) the misleading representation was material in that it affected the consumers' purchasing decision." *Id.* (citation omitted).

Defendant moves to dismiss Plaintiffs' VCFA claim, arguing "any alleged omission concerning AP or DA, based on Five Pawns' disclosure of nicotine, is not likely to mislead consumers, and is not material." Reply at 20. Defendant also contends Plaintiffs have not satisfied the heightened pleading requirement of Rule 9(b). Mot. at 13; Reply at 11–12.

Above, the Court concluded Plaintiffs, by contending they would have behaved differently had the omitted information been disclosed, *see* FAC ¶¶ 112, 9, sufficiently alleged Defendant's omission is material under California law. The Court similarly finds the omission is material under Vermont law; Plaintiffs adequately allege Defendant's omission "affected [Plaintiffs'] purchasing decision." *See id.* ¶ 167. Accordingly, Defendant's Motion to Dismiss Plaintiffs' GBL claim on this basis is DENIED.

The Court also finds Plaintiffs have stated their VCFA claim with the particularity required by Rule 9(b) for the same reasons set forth in the analysis conducted above for the CLRA, UCL, and FAL claims. Accordingly, Defendant's Motion to Dismiss for failure to plead the omissions-based claims with particularity is DENIED.

### 3.    Conduct Likely to Deceive a Reasonable Consumer

Defendant, contending all the state consumer protection statutes at issue require the alleged wrongful conduct be likely to deceive a reasonable consumer, argue Plaintiffs have failed to adequately allege any conduct that would be likely to deceive a reasonable consumer. Mot. at 21. Defendant argues the FAC should be dismissed on this basis. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 15-1859-DOC (DFMx)                                    Date: April 18, 2016
                                                                             Page 32

To find a violation under the California, New York, and Vermont consumer protection statutes,[18] the alleged wrongful conduct must be that which would deceive or mislead a "reasonable consumer." *See Williams*, 552 F.3d at 938 ("Appellants' claims under [the UCL, FAL, and CLRA] are governed by the 'reasonable consumer' test . . . [under which] Appellants must 'show that members of the public are likely to be deceived.") (citation omitted); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) ("The New York Court of Appeals has established an objective standard for determining whether acts or practices are materially deceptive or misleading "to a reasonable consumer acting reasonably under the circumstances."); *One Source Envtl., LLC v. M + W Zander, Inc.*, No. 2:12-CV-145, 2015 WL 7428572, at *12 (D. Vt. Nov. 20, 2015) (noting the VCFA "prohibits deceptive acts and practices in commerce, which a complainant must establish with proof of three elements: (1) the representation or omission at issue was likely to mislead consumers; (2) the consumer's interpretation of the representation was reasonable under the circumstances; and (3) the misleading representation was material in that it affected the consumer's purchasing decision."). "The question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012). In certain instances, however, "the Court can properly make this determination and resolve such claims based on its review of the product packaging." *Id.*

Plaintiffs argue they "plausibly allege that the omitted information, together with representations concerning the quality of Defendant's products and that the products contained nicotine, deceived a reasonable consumer into thinking that no health risks were posed by the products other than those from nicotine." Opp'n at 13 (citing FAC ¶¶ 18, 26, 62–88). To the extent the Court has not already addressed this issue, the Court concludes the question of whether a reasonable consumer would be misled by Defendant's product packaging "is a question of fact not suitable for resolution on a motion to dismiss." *Bruton v. Gerber Products Co.*, Case No. 12-cv-02412-LHK, 2014 WL 172111 at *11 (N.D. Cal. Jan. 15, 2014). The Court cannot conclude, as a matter of law "that members of the public are not likely to be deceived by the product packaging," and therefore, dismissal on this basis is inappropriate. *Hairston*, 2012 WL 1893818, at *4. Accordingly, the Court DENIES Defendant's Motion to Dismiss on this ground.

---

[18] The Court notes Defendant cites no authority indicating the IDCSA requires the alleged wrongful conduct be likely to deceive a reasonable consumer. Therefore, the Court will not address whether Plaintiffs' IDCSA claim should be dismissed on that ground.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                    Date: April 18, 2016
                                                     Page 33

### 4.    Disgorgement of Profits

In the Prayer for Relief, the FAC seeks to require Defendant "to disgorge or return all monies, revenues and profits obtained by means of any wrongful act or practice to Plaintiffs and the members of the Classes under each cause of action where such relief is permitted." FAC at 48. Defendant seeks dismissal of this request for disgorgement of profits, arguing "none of Plaintiffs' causes of action allow for disgorgement of profits." Mot. at 24. In their Opposition, Plaintiffs argue the Court should address this remedy at a later stage in the proceedings and argue the "remedy of restitutionary disgorgement appears to be available, at least in California." Opp'n at 20 n.8.

As a preliminary matter, particularly given Plaintiffs have cited no authority to the contrary, the Court finds it proper to address Plaintiffs' request for disgorgement at this stage in the proceedings. *See Reinhardt v. Gemini Motor Transport*, 869 F. Supp. 2d 1158, 1174 (E.D. Cal. 2012) ("[T]he Ninth Circuit has recently held that, when challenging a complaint's request for damages that are unavailable as a matter of law, Rule 12(b)(6) . . . is the proper mechanism.") (citing *Whittlestone, Inc. v. Hand-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010)); *see id.* at 1775 (dismissing claim for disgorgement of profits at the motion to dismiss stage).

The Court first turns to the availability of disgorgement under the UCL, FAL, and CLRA. "Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Henderson*, 2011 WL 1362188, at *8 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1145 (2003)).[19] "While restitution [i]s an available remedy under the UCL, disgorgement of money obtained through an unfair business practice is an available remedy in a representative action only to the extent that it constitutes restitution." *Id.* However, "*nonrestitutory* disgorgement is not a remedy under the UCL, FAL, or CLRA." *Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015) (emphasis added); *see also Henderson*, 2011 WL 1362188, at *8.

Generally, with "restitutionary disgorgement, the focus is on the plaintiff's loss" and is "typified by the situation where 'the disgorged money or property [came] from the

---

[19] The Court notes "[t]he restitutionary remedies of section 17203[UCL] and 17535[FAL], on which section 17203 is patterned, are identical and are construed in the same manner." *Henderson*, 2011 WL 1362188, at *8 (citing *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 n.10 (2000)). In addition, courts treat the restitution remedies provided under the UCL, FAL, and CLRA similarly. *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL 1526559, at *3 (C.D. Cal. Mar. 23, 2015) (citing *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                    Date: April 18, 2016
                                                                                Page 34

prospective plaintiff in the first instance.'" *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1013 (2005) (citation omitted). Restitutionary disgorgement "also refers to situations where it is not possible to restore the money to the specific direct victims of unfair practice." *Id.* (citation omitted). In contrast, "with nonrestitutionary disgorgement, the focus is the defendant's gain from the unfair practice; the plaintiff need not have suffered a loss." *Id.*; *see id.* at 1016 ("As was true in *Korea Supply*, the 'remedy sought by plaintiff in this case is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover from defendants.'") (citation omitted). Further, at least one California court has held "nonrestitutionary disgorgement of wrongfully obtained profits" is not an available remedy. *See Henderson*, 2011 WL 1362188 at *8 (discussing *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 462 (2005)).

From what the Court can glean from the FAC, the Court concludes Plaintiffs are attempting to obtain nonrestitutionary disgorgement. In *Henderson*, the plaintiffs sought "to recover money they spent on purchasing the products," but, as the court emphasized, "their request for restitution is broader and encompasses '*all* monies, revenues, and profits obtained by means of any wrongful act or practice,' not simply those obtained from Plaintiffs or putative class members." *Henderson*, 2011 WL 1362188, at *9. The *Henderson* court therefore concluded "Plaintiffs' prayer for damages is nonrestitutionary disgorgement, and as such, is not permissible under the FAL." *Id.* Here, Plaintiffs have included an identical statement in their Prayer for Relief. *See* FAC at 48 ("Plaintiffs . . . pray for a judgment: . . . Requiring Defendant to disgorge or return *all* monies, revenues and profits obtained by means of any wrongful act or practice . . . .") (emphasis added). Following the reasoning of the *Henderson* court, the Court concludes Plaintiffs' prayer for disgorgement, as currently pleaded, constitutes nonrestitutionary disgorgement, which is not permissible under the UCL, FAL, or CLRA. *See Henderson*, 2011 WL 1362188, at *9; *see also Reinhardt*, 869 F. Supp. 2d at 1175 (finding plaintiffs' request for "disgorgement of all revenues, earning, profits, compensation and benefits which may have been obtained by defendants as a result of such unlawful, unfair and/or fraudulent business practices" was a request for nonrestitutionary disgorgement of profits that was "unavailable as a matter of law" and dismissing the claim pursuant to 12(b)(6)); *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL 1526559, at *8 (C.D. Cal. Mar. 23, 2015).

Accordingly, to the extent Plaintiffs are requesting nonrestitutionary disgorgement under the UCL, FAL, and CLRA, the Court GRANTS Defendant's Motion and DISMISSES Plaintiffs' request for nonrestitutionary disgorgement WITH PREJUDICE.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                                    Date: April 18, 2016
                                                                                                 Page 35

The Court now turns to disgorgement of profits under the IDCSA, GBL, and VCFA. Other than generally arguing the Court should not address the availability of disgorgement as a remedy at a later stage in the proceedings, Plaintiffs do not address Defendant's arguments that disgorgement is not available under the IDCSA, GBL, and VCFA. Opp'n at 20 n.8. Rather, Plaintiffs state, "[t]he remedy of restitutionary disgorgement appears to be available, at least in California." *Id.* Given Plaintiffs' failure to respond to Defendant's argument and the lack of clarity as to whether Plaintiffs are seeking disgorgement under New York, Indiana, and/or Vermont law, the Court DISMISSES Plaintiffs' prayer for disgorgement under those laws WITHOUT PREJUDICE. In their amended pleading, Plaintiffs should clarify under what laws they are seeking disgorgement.

## IV.    Motion for More Definite Statement Under Rule 12(e)

In the event Plaintiffs' claims are not dismissed, Defendant moves for a more definitive statement under Rule 12(e). Mot. at 25; Reply at 25.

### A.    Legal Standard

Pursuant to Rule 12(e), "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Further, "[t]he motion must . . . point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e)

"A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her." *San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal.1996). Such a motion should be denied "where the information sought by the moving party is available and/or properly sought through discovery." *Famolare, Inc. v. Edison Bros. Stores, Inc*., 525 F. Supp. 940, 949 (E.D. Cal.1981). "A Rule 12(e) motion is more likely to be granted where the complaint is so general that ambiguity arises in determining the nature of the claim." *Sagan v. Apple Computer, Inc*., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

### B.    Discussion

Defendant argues a more definite statement is necessary here because "the FAC consists of a hodgepodge of general allegations, including studies and articles unrelated to vaping, and such allegations are not linked to any particular plaintiff." Mot. at 25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 15-1859-DOC (DFMx)                                  Date: April 18, 2016
                                                                              Page 36

        The Court concurs with Defendant that some confusion exists now that Plaintiffs,
in the Opposition, have asserted their claims are based on omissions in the sale of
Defendant's products (rather than on misrepresentations). *See* Opp'n at 3 ("Defendant's
arguments for dismissal are based, in large part, on a fundamental mischaracterization of
the FAC. . . . [W]hile the statements made by Defendant may be relevant to proof
regarding reasonable reliance and materiality and knowledge at a later stage in the case,
the claims in the FAC are predicated on omissions in the sale of Defendant's products,
which were underscored by misleading representations concerning nicotine in those
products.").[20] However, the Court cannot conclude the pleading is so vague or ambiguous
Defendant cannot possibly prepare a response. Further, Plaintiffs' allegations identify the
e-liquids' packaging and Defendant's website as the source of the actionable omissions.

        For the foregoing reasons, the Court DENIES Defendant's request for a more
definite statement. *See Sinclair v. Fox Hollow of Turlock Owners Ass'n*, No. 1:03-CV-
05439-OWW, 2011 WL 2632307, at *2 (E.D. Cal. June 28, 2011) ("[A] motion for a
more definite statement should not be granted unless the defendant literally cannot frame
a responsive pleading.") (quoting *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D.
Cal. 1996)).

**V.      Disposition**

        For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED IN
PART. Defendant's Motion to Dismiss is GRANTED as follows:

  • Plaintiffs' request for injunctive relief is DISMISSED WITHOUT
    PREJUDICE.

  • Plaintiffs' claim for breach of express warranty is DISMISSED WITHOUT
    PREJUDICE.

  • Plaintiffs' request for nonrestitutionary disgorgement under California law
    is DISMISSED WITH PREJUDICE. Plaintiffs' request for disgorgement
    under Indiana, Vermont, and New York law is DISMISSED WITHOUT
    PREJUDICE.

  • To the extent Plaintiffs allege their omissions-based IDCSA claim is based
    on purchases made in May 2014, Plaintiffs' IDCSA claim is DISMISSED

---

[20] *See also* Notice of Recent Authority Regarding Pending Motion to Dismiss ("To avoid any confusion of the
issues, Plaintiffs' claims here are based on Defendant's failure to disclose the presence and significant safety
concerns relating to its products. *Plaintiffs do not pursue any cause of action based on misrepresentations*.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 15-1859-DOC (DFMx)                              Date: April 18, 2016
                                                                          Page 37

     WITH PREJUDICE. However, to the extent the incident giving rise to the litigation occurred after the 2014 IDCSA amendments, Plaintiffs' IDCSA claim is DISMISSED WITHOUT PREJUDICE.

     Defendant's Motion to Dismiss Plaintiffs' CLRA, UCL, FAL, GBL, and VCFA claims for damages is DENIED as set forth above.

     Defendant's request for a more definite statement is DENIED.

     Plaintiffs may file an amended complaint **on or before May 9, 2016.**

     The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                          Initials of Deputy Clerk:  djg
CIVIL-GEN